**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Christina N. Mirzaie (SBN 333274)
cmirzaie@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ELIZABETH HENRIQUEZ,
individually and on behalf of all others
similarly situated,

                  Plaintiff,

    vs.

ALDI INC., a corporation,

                  Defendant.

Case No.

**CLASS ACTION COMPLAINT**

1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et seq.*
2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*
3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*
4. BREACH OF EXPRESS WARRANTY
5. BREACH OF IMPLIED WARRANTY
6. UNJUST ENRICHMENT

**DEMAND FOR JURY TRIAL**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Plaintiff Elizabeth Henriquez ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, bring this class action against Defendant ALDI Inc. ("Defendant" or "ALDI") and alleges as follows:

## NATURE OF THE ACTION

1.     ALDI falsely and deceptively advertises and labels its tuna products, including its Northern Catch Chunk Light Tuna in Water and Northern Catch Solid White Tuna Albacore in Water, as "DOLPHIN SAFE" (the "Products"). ALDI's false advertising scheme deceives millions of consumers into believing the Products are "DOLPHIN SAFE," meaning they are manufactured using fishing methods that neither kill nor harm dolphins. However, the grim reality is that the Products are sourced using fishing methods that seriously injure and kill thousands of dolphins and other marine life each year. ALDI knowingly and intentionally labels and advertises its Products as "DOLPHIN SAFE," to increase profits at the expense of sustainability concerned consumers and innocent marine life, while gaining an unfair economic advantage over their law-abiding competitors that sell truly "DOLPHIN SAFE" tuna products. *See* Defendant's Product packaging and official website, depicted in Exhibits 1-4, below.[1]

//
//
//
//
//
//
//

---

[1] Website descriptions and images of the Products were taken from Defendant's official website:
Exhibit 1 & 3: https://www.aldi.us/en/products/pantry-essentials/canned-foods/detail/ps/p/northern-catch-chunk-light-tuna-in-water/
Exhibit 2 & 4: https://www.aldi.us/en/products/pantry-essentials/canned-foods/detail/ps/p/northern-catch-solid-white-tuna-1/

**Exhibit 1: ALDI Northern Catch Chuck Light Tuna in Water: Can, Front View**



**Exhibit 2: ALDI Northern Catch Solid White Tuna Albacore in Water: Can, Front View**



**Exhibit 3: ALDI Northern Catch Chuck Light Tuna in Water: Website Description**



//
//
//
//
//
//
//
//
//
//
//

CLASS ACTION COMPLAINT

**Exhibit 4: ALDI Northern Catch Solid White Tuna Albacore in Water: Website Description**



2.      Defendant's "DOLPHIN SAFE" claims are false, misleading, deceptive, unfair, fraudulent, and unlawful under California's Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750, *et seq.*, Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, *et seq.*, and the False Advertising Law ("FAL"), 17500, *et seq.* Defendant has also been unjustly enriched and has breached its express and implied warranties about the Products. Defendant's false and deceptive claims are uniformly advertised through its labeling, packaging, and website. Through its false and deceptive advertising, Defendant has misled Plaintiff and other reasonable consumers into buying the Products at stores across California and the United States based on its material claims that the Products are created and manufactured in a manner that is "DOLPHIN SAFE."

3.      Plaintiff brings this action individually and on behalf of those similarly situated to represent a Nationwide Class and a California Class (described *infra*). Plaintiff seeks injunctive relief to cure Defendant's unlawful labeling and

advertising of the Products and restitution for money wrongfully acquired by Defendant.

## JURISDICTION

4.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

5.     Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and doing business in California.

## VENUE

6.     Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California, resides in this District, and purchased the Product within this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, label, packaging, and Internet advertisements, among other advertising.

## PARTIES

**A.   Plaintiff**

7.     **Plaintiff Henriquez.** The following is alleged based upon personal knowledge: (1) Plaintiff Elizabeth Henriquez ("Plaintiff") is, and at all times relevant hereto was, a citizen and resident of Los Angeles County, California. (2) Plaintiff purchased Northern Catch Chunk Light Tuna in Water from an ALDI store

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

in Los Angeles, CA in 2021. Plaintiff paid approximately $0.75 for the Product. (3) In making her purchase, Plaintiff relied upon the Product labeling, packaging, and advertising that the Products were "DOLPHIN SAFE." The Products were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. The Products' labeling and advertising led Plaintiff to believe that the Product was "DOLPHIN SAFE"—i.e., the tuna sourced for sale of the Product were caught using fishing methods that do not kill or injure dolphins. (4) At the time of purchase, Plaintiff did not know that the "DOLPHIN SAFE" representation was false—i.e., Plaintiff did not know that the Product was sourced from tuna caught using fishing methods that kill and injure dolphins. (5) If Plaintiff had known that the Products were not "DOLPHIN SAFE," then Plaintiff would not have purchased the Products, and certainly would not have paid a "premium" for such a valued perceived benefit. (6) Plaintiff continues to see the Products available for purchase and intends to purchase them again under the assumption that Defendant has cured its unlawful business practices and the "DOLPHIN SAFE" representations are in fact true —i.e., Defendant truthfully used fishing practices which do not kill or injure dolphins in the sourcing of the tuna used for the Products. (7) Plaintiff is not personally familiar with, and does not possess any specialized knowledge skill, experience, or education, in the manufacture of tuna products or commercial fishing methods and, therefore, Plaintiff has no way of determining whether Defendant is actually using "DOLPHIN SAFE" fishing methods as it claims. (8) Plaintiff is, and continues to be, unable to rely on the truth of the "DOLPHIN SAFE" attribute on the Products' labels.

8.      **Plaintiff's Likely Future Harm**. Plaintiff intends to purchase the Products again with the hope of consuming tuna products which, as advertised, are truly "DOLPHIN SAFE," despite the fact that they were once marred by false advertising and labeling. If by that time the Products are not improved by using

"DOLPHIN SAFE" fishing practices, as Plaintiff would reasonably, but incorrectly, assume, the Plaintiff is at risk of being deceived again. In that regard, Plaintiff is an average consumer who has no ability to know what fishing practices Defendant is actually using or whether those fishing practices pose no risk of harm to dolphins. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed its fishing practices such that Plaintiff may buy the Products again, believing they were no longer falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the "DOLPHIN SAFE" representations.

**B. Defendant**

9.      **Defendant ALDI.** Defendant ALDI Inc. is an Illinois corporation. Defendant maintains its principal place of business at 1200 North Kirk Road, Batavia, IL 60510. Defendant was and currently is doing business in the State of California at all relevant times. ALDI Inc., directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. ALDI Inc. is an owner, manufacturer, and/or distributor of the Northern Catch Tuna Product line and is a company that created and/or authorized the false, misleading, and deceptive labeling and packaging for the Products. The unfair, unlawful, deceptive, and misleading "DOLPHIN SAFE" representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout this District, California, and the nation by Defendant and its agents to deceive and mislead consumers therein into purchasing the Products and paying a premium for the falsely advertised Products' attributes.

10.     *Respondeat Superior*. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by

Defendant and its agents, and, accordingly, disseminated throughout the State of California and the nation by Defendant and its agents in order to deceive and mislead consumers into purchasing the Products.

**FACTUAL ALLEGATIONS**

**A.  Background**

11.   **Dolphins.** Dolphins are small-toothed cetaceans that prey on low-mid trophic level fishes and cephalopods. There are thirty-six species of dolphin, which are found in every ocean.[2] Like all predators, dolphins play an important role in keeping ecosystems balanced: "Without dolphins, the animals they prey on would increase in number, and their predators wouldn't have as much to eat. This would disrupt the natural balance in the food chain and could negatively affect other wildlife and the health of the ocean environment."[3] By dispersing nutrients and mixing water in stratified oceans and rivers, dolphins play a vital role in sustaining and maintaining all sea life.[4] Because billions of people depend on the ocean and oceanic fish for food, dolphins function to sustain human life as well. Additionally, dolphins are extremely intelligent animals. Indeed, dolphins may be Earth's second smartest creatures next to humans.[5] Despite their ecological importance and extreme intelligence, dolphins are disappearing at alarming rates. Among other factors, dolphins are threatened by the commercial fishing industry. In fact, sixteen species

---

[2] *Dolphins*, NATIONAL GEOGRAPHIC,
https://www.nationalgeographic.com/animals/mammals/facts/dolphins#:~:text=Dol phins%20are%20small%2Dtoothed%20cetaceans,or%20brackish%20waters%20alo ng%20coastlines

[3] *Bottlenose Dolphins: Our Smart, Sociable Stars of the Sea*, WWF,
https://www.wwf.org.uk/learn/wildlife/dolphins#:~:text=Without%20dolphins%2C %20the%20animals%20they,health%20of%20the%20ocean%20environment

[4] Jeremy Kiszka, Matthew S. Woodstock, & Michael R. Heithaus, *Functional Roles and Ecological Importance of Small Cetaceans in Aquatic Ecosystems*, FRONTIERS (Feb. 25, 2022),
https://www.frontiersin.org/articles/10.3389/fmars.2022.803173/full.

[5] David Grimm & Greg Miller, *Is a Dolphin a Person?*, SCIENCE (Feb. 21, 2010), https://www.science.org/content/article/dolphin-person.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

9

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of whales and dolphins are considered in danger of extinction due to human influences.[6] In recent years, consumers have become increasingly concerned about protecting the environment, including dolphins, through individual action, such as purchasing "DOLPHIN SAFE" tuna products, which are made from tuna harvested using a method of fishing that does not kill or harm dolphins. Thus, "DOLPHIN SAFE" tuna products, such as the Products in this case, are rapidly increasing in popularity due to their perceived positive ecological benefit.

12.   For decades, commercial fisheries across the globe have posed the greatest threat to marine wildlife and have decimated fish populations, wiping out ninety percent of all large fish. Today, the global tuna industry alone is worth roughly 42 billion dollars.[7] In addition to threatening fish species, commercial fisheries have also long endangered cetacean species (whales, dolphins, and porpoises), killing roughly 300,000 cetaceans each year.[8] As consumers have become more aware of the damaging effects of commercial fishing on both oceanic fish and mammal species alike, calls for efforts to curb the harmful effects of certain fishing practices have become more prevalent within the fishing industry.

13.   In 1990, Earth Island's International Marine Mammal Project ("IMMP") developed the "DOLPHIN SAFE" concept and label, specifically to be used for canned tuna, in response to the unsafe fishing practices that were being used to harvest tuna.[9] Now, more than 800 tuna companies display and adhere to

---

[6] *Endangered Species*, DOLPHIN RESEARCH CENTER, https://dolphins.org/endangered_species#:~:text=Overview-,Overview,to%20the%20Endangered%20Species%20Act

[7] Tom Levitt, *Overfishing Puts $42bn Tuna Industry at Risk of Collapse*, THE GUARDIAN
 (May 2, 2016), https://www.theguardian.com/sustainable-business/2016/may/02/overfishing-42bn-tuna-industry-risk-collapse.

[8] *Seaspiracy*, https://www.seaspiracy.org/facts.

[9] *What does Dolphin Safe Mean?,* INTERNATIONAL MARINE MAMMAL PROJECT, https://savedolphins.eii.org/news/what-does-dolphin-safe-mean.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

"DOLPHIN SAFE" practices.[10] According to IMMP, "DOLPHIN SAFE" means that "tuna [is] caught without deliberately encircling any dolphins with tuna nets during the entire trip of the tuna vessel;" this definition was codified into federal law under the Dolphin Conservation Consumer Education Act of 1990.[11] These standards were later broadened by the IMMP and Congress to ban tuna companies from using the label if *any* dolphins were *even* accidentally killed or seriously injured in the production of their tuna.[12]

14.    However, recently it has been discovered that some of the largest tuna companies in the industry are defrauding consumers by claiming that their products are "DOLPHIN SAFE," when they are not.[13] Many tuna products that tout the "DOLPHIN SAFE" claim are still made with tuna that is caught using fishing methods, like purse seines and longlines, which pose significant risks to dolphins and lead to large numbers of bycatch. Some scientists claim that bycatch is an "inescapable certainty" of commercial fishing operations.[14]

15.    Bycatch refers to the unintentional hooking or ensnaring of marine life.[15] Marine mammals such as dolphins and whales caught as a result of bycatch are unable to surface for air, causing suffocation and a painful death.[16] The following practices are associated with dolphin bycatch: "gillnets, purse seine nets, fish aggregating devices, and longlines."[17] Therefore, a company which uses fishing practices that results in incidental bycatch, cannot truthfully claim their products are "DOLPHIN SAFE."

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *How Safe is Dolphin-Safe Tuna, Really?*, NATIONAL GEOGRAPHIC, https://www.nationalgeographic.com/animals/article/how-dolphin-safe-is-canned-tuna.

[14] *Id*.

[15] *Id.*

[16] *Id.*

[17] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

16.   Purse seine fishing involves a large net that is used to circle an entire school of fish.[18] Once the fishing vessel locates the school of fish, the vessel circles the school with the net and the lead line is then pulled to create the "pursing" effect to close the net at the bottom, trapping both fish and other marine mammals, resulting in bycatch.[19]

17.   Longline fishing involves lines that can be as long as 62 miles that have as many as 10,000 baited hooks attached, and draws the line in every 12-24 hours, killing and harming numerous marine mammals.[20] A report from the National Resources Defense council states that scientists estimate <u>over 650,000 marine mammals are killed or seriously injured every year as a result of incidental bycatch</u>.[21]

18.   Despite what seems to be an already staggering number, the figure is likely *even* higher, since commercial fishermen are incentivized to underreport bycatch, which is facilitated by rampant lack of accountability and widespread unreliable reporting on bycatch. In fact, in 2005, less than half of the fishing vessels around the world recorded quantitative statistics on annual bycatch.[22] This problem

---

[18] *Fishing Gear: Purse Seines,* NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-purse-seines#:~:text=Sea%20turtles%20can%20be%20captured,sheer%20weight%20of%20the%20tow.

[19] *Id*.

[20] Fitzgerald KT. *Longline fishing (how what you don't know can hurt you).* TOP COMPANION ANIM MED., https://reader.elsevier.com/reader/sd/pii/S1938973613000834?token=A0D368FDAE809BCF8070D7833841EF076EB56241B3FBD0E4950EAA451915CA38BF978859BBB627D21426D0D24BF84934&originRegion=us-east-1&originCreation=20220809203830

[21] "*Net Loss: The Killing of Marine Mammals in Foreign Fisheries*," NATIONAL RESOURCES DEFENSE COUNCIL, Pg. 4, https://www.nrdc.org/sites/default/files/mammals-foreign-fisheries-report.pdf.

[22] Amanda Keledjian, et al., *Wasted Catch: Unsolved Problems in U.S. Fisheries*, OCEANA (2014), https://oceana.org/reports/wasted-catch-unsolved-problems-us-fisheries/.

holds true in the United States as well. Despite federal legislation such as the Magnuson-Stevens Act requiring detailed reporting on bycatch statistics by U.S. fisheries, there are too few unbiased reporters onboard fishing vessels to get an accurate metric of annual bycatch. Exacerbating this problem is the lack of governmental reporting. The U.S. National Marine Fisheries Service last provided an update to its U.S. National Bycatch Report in 2019, but this update was based on data from 2014 and 2015.[23] A recent report found that "*only four* out of hundreds of U.S. fisheries are meeting the recommended standards for the statistical accuracy and validity of their catch data, if they report data at all."[24]

19.    This lack of transparency, combined with the self-policing nature of the industry, allows major tuna producers and distributors like Defendant to reap the benefits of harmful fishing practices all the while advertising their Products to unsuspecting consumers as "DOLPHIN SAFE."

20.    **Dolphin Protection Consumer Information Act.**  Congress enacted the Dolphin Protection Consumer Information Act ("DPCIA") in order to protect marine mammals killed in the course of tuna fishing operations due to driftnet fishing.[25] Congress specifically enacted this statute regarding the labeling of tuna products because they believed "consumers would like to know if the tuna they purchase is falsely labeled as to the effect of the harvesting of the tuna on dolphins."[26] Pursuant to 16 U.S.C. Section 1385(d)(1), it is a violation of this act "for any producer, importer, exporter, distributor, or seller of any tuna product that is exported from or offered for sale in the United States to include on the label of that product the term 'dolphin safe' or any other term or - that falsely claims or suggests that the tuna contained in the product were harvested using a method of

---

[23] Lee R. Benaka, et al., *U.S. National Bycatch Report First Edition Update 3*, U.S. NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION (February 2019).

[24]  Keledjian, *supra* at 22.

[25] 16 U.S.C. § 1385(b)(1).

[26] 16 U.S.C. § 1385(b)(3).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

fishing that is not harmful to dolphins if the product contains tuna harvested on the high seas by a vessel engaged in driftnet fishing."[27]

21.    If the criteria set forth in Section 1385(d) is satisfied, then Section 1385(d)(3)(A) of the DPCIA identifies the dolphin safe mark or label that must be used if that particular producer chooses to advertise their product as "dolphin safe" (*see* Exhibit 5 [U.S. Dept. of Commerce Official "dolphin safe" logo]). Section 1385(d)(3)(C) specifically states that no other mark or label, other than the one set forward by subparagraph A, should be used to communicate a product is dolphin safe, unless: (i) no dolphins were killed or seriously injured in the sets or other gear deployments in which the tuna were caught; (ii) the label is supported by a tracking and verification program which is comparable in effectiveness to the program established under subsection (f); *and* (iii) the label complies with all applicable labeling, marketing, and advertising laws and regulations of the Federal Trade Commission, including any guidelines for environmental labeling."[28]

**Exhibit 5: U.S. Department of Commerce, Official "DOLPHIN SAFE" Logo.**[29]



---

[27] 16 U.S.C. § 1385(d)(1).

[28] 16 U.S.C. § 1385(d)(3)(C).

[29] Dolphin-Safe Tuna Labeling; Official Mark, 65 Fed. Reg. 34408 (June 29, 2000).

14

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

22.   **FTC Labeling Regulations.** Under Section 5 of the FTC's Consumer Deception Act prohibits "unfair or deceptive acts or practices in or affecting commerce."[30] Deceptive acts are any practices where a "representation, omission, or practice misleads or is likely to mislead the consumer, [a] consumer's interpretation of the representation, omission, or practice is considered reasonable under the circumstances; and [t]he misleading representation, omission, or practice is material."[31] Defendant's representation that its Product is "DOLPHIN SAFE" is misleading to Plaintiff and other consumers who reasonably interpret the label claim to mean no dolphins were killed, harmed, or injured in the manufacturing of the Products. Since Defendant uses fishing methods that are known to injure and kill dolphins , Defendant's representation that the Products are "DOLPHIN SAFE" therefore violates FTC labeling regulations and California's consumer protection laws.

23.   **Reasonable Consumers' Perception.** Reasonable consumers, like Plaintiff, interpret the "DOLPHIN SAFE" label to mean that no dolphins were killed, harmed, or injured in the manufacturing of the Products. Defendant takes advantage of the intentions of consumers to purchase tuna products safe for dolphins by falsely and deceptively using the "DOLPHIN SAFE" label for its non-dolphin-safe Products.

24.   Based on the inclusion of the "DOLPHIN SAFE" label, reasonable consumers believe that the Products do not contain tuna product harvested using fishing practices which kill or injure dolphins. This perception is consistent with standard dictionary definitions, regulatory definitions, and the California legislature's interpretation of environmental advertising claims.

---

[30] *"Federal Trade Commission Act Section 5: Unfair or Deceptive Acts or Practices,"* FEDERAL RESERVE, https://www.federalreserve.gov/boarddocs/supmanual/cch/200806/ftca.pdf.
[31] *Id.*

a. **Dictionary—Safe.** The Merriam-Webster standard dictionary defines "safe" as "free from harm or risk."[32]

b. **FTC Green Guides.** Notably, the FTC promulgated the Guides for the Use of Environmental Marketing Claims, codified at 16 C.F.R. 260.1, *et seq.* ("**Green Guides**"), to "help marketers avoid making environmental marketing claims that are unfair or deceptive" based on the FTC's "views on how reasonable consumers likely interpret [those] claims." *Id.* at § 260.1(a), (d). In its view, "[u]nqualified general environmental benefit claims . . . likely convey that the product . . . has specific and far-reaching environmental benefits and may convey that the item . . . has *no negative environmental impact*." *Id.* at § 260.4(b) (providing "*Eco-Friendly*" as an example) (emphasis added).

c. **California Legislature.** The California legislature codified the Green Guides to make it "unlawful for a person to make an untruthful, deceptive, or misleading environmental claim, whether explicit or implied." Cal. Bus. & Prof. Code § 17580.5. California viewed terms "on the label or container of a consumer good" like "environmental choice," "*ecologically friendly*," "*earth friendly*," "*environmentally friendly*," "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe," "environmentally lite," "green product," "*or any other like term*," to mean that the product "*is not harmful to*, or is beneficial to, *the natural environment*." *Id.* at §§ 17580(a) (emphasis added); *see also id.* at § 17581 (criminalizing such deceptive labeling claims).

d. The Merriam-Webster standard dictionary defines "environment" as "the complex of physical, chemical, and biotic factors (such as climate, soil, and *living things*) that act upon an *organism* or an *ecological*

---

[32] *Safe*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/safe

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*community* and ultimately determine its form and ***survival.***" (emphasis added). As previously and subsequently outlined, this case concerns tuna in Defendant's Products that are harvested using fishing methods that kill or cause harm to dolphins. Dolphins are a vital part of the natural environment not only because they are living things but because they keep ecosystems in balance, disperse nutrients, and mix water in stratified oceans and rivers.[33] Thus, in labeling its Products as "DOLPHIN SAFE" while simultaneously using longline and similarly harmful fishing methods to harvest tuna, Defendant is acting contrary to California law.

25.     **Consumers Prefer and Seek Dolphin-Safe Tuna.** Today, "dolphin unsafe" tuna has been driven out of the market, with 98% of canned tuna being packaged with some sort of "DOLPHIN SAFE" labeling.[34] By that measure, the push for dolphin-safe fishing methods should be deemed a success. Unfortunately, however, "DOLPHIN SAFE" labels have less to do with conservation and more to do with advancing special interests.[35]

26.     When presented with the option of choosing between "DOLPHIN SAFE" and dolphin unsafe tuna, American consumers overwhelmingly chose to purchase the former.[36] Studies on consumer behavior have found that dolphin safe labeling has, in fact, affected consumer behavior, and such labeling has contributed

---

[33] Kiszka, *supra* at 4.

[34] K. William Watson, *'Dolphin Safe' Labels on Canned Tuna Are a Fraud*, FORBES (April 29, 2015), https://www.forbes.com/sites/realspin/2015/04/29/dolphin-safe-labels-on-canned-tuna-are-a-fraud/?sh=17fca69e295e

[35] *Id.*

[36] *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 761 (9th Cir. 2007) (noting that as a result of consumer choice between dolphin-safe and dolphin-unsafe tuna products, "foreign sellers who did not adjust their fishing methods were quickly forced out of the market").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to an increase in the market share of canned tuna.[37] This research highlights the fact that Americans are willing to pay more in order to avoid personally contributing to the killing or harming of dolphins during tuna fishing. Consequently, manufacturers and distributors of "DOLPHIN SAFE" tuna, such as ALDI, have taken advantage of this demand for ethically sourced tuna without ensuring consumer concerns are met. Defendant's false labeling and advertising creates consumer confusion about dolphin safe methods and labels.

27.   **Other Courts Have Deemed Claims Regarding Similar Product Labels to Be Actionable.** Defendant is not the first tuna manufacturer to engage in deceptive practices only to find itself embroiled in controversy. Some of the largest tuna product manufacturers in the world have already faced class action lawsuits claiming that they defrauded consumers by advertising their tuna products as "DOLPHIN SAFE" despite using unsafe fishing methods.[38] For example, in *Gardner v. Starkist Co.*, Case No. 19-cv-02561-WHO (N.D. Cal. December 23, 2019), the plaintiff brought suit against the defendant pursuant in part to Civil Code Section 1750, California's Consumers Legal Remedy Act ("CLRA"), for falsely labeling its tuna product as "DOLPHIN SAFE" despite employing fishing practices that kill or harm dolphins. The court denied Starkist's Rule 12(b)(6) motion, ruling the product's dolphin safe claims misled consumers since defendant's fishing techniques (longlines, modern purse seines, and fish aggregating device), which include the same fishing methods used to source tuna for Aldi's Products, were known to cause dolphin deaths and injuries.

//

---

[37] *See* Mario F. Teisl, et al., *Can Eco-Labels Tune a Market? Evidence from Dolphin-Safe Labeling*, J. ENVIRON. ECON. MANAG., (2002).

[38] Rene Ebersole, *How 'Dolphin Safe' is Canned Tuna, Really?*, NATIONAL GEOGRAPHIC (Mar. 10, 2021), www.nationalgeographic.com/animals/article/how-dolphin-safe-is-canned-tuna#:~:text=The%20three%20largest%20U.S.%20tuna,and%20a%20commitment%20to%20sustainability.

CLASS ACTION COMPLAINT

**B.   Defendant's Products Are Not "DOLPHIN SAFE"**

28.   **The Products are Manufactured using Unsafe Fishing Methods Known To Kill and Harm Dolphins.** Defendant labels and advertises the Products as "DOLPHIN SAFE" directly on the Products' containers and official website (*see* Exhibits 1-4). However, Defendant's "DOLPHIN SAFE" representation is false and deceptive because the tuna in the Products is sourced using fishing methods that are known to kill and harm dolphins and other marine life.  Defendant identifies the fishing methods it uses to manufacture its Products on the back label: longline, purse seine (free school), and pole and line fishing. (*See* Exhibits 6-7).

**Exhibit 6: Northern Catch Chunk Light Tuna in Water**



**Exhibit 7: Northern Catch Solid White Tuna Albacore in Water**



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

29.   Plaintiff and the Class do not have a duty to inspect the Products' back labels or investigate beyond the front of the Products' packaging to determine whether the Products are truly "DOLPHIN SAFE." Plaintiff and the Class relied on the front label "DOLPHIN SAFE" claim when making their purchase decision and reasonably believed the tuna in the Products were harvested in a manner that do not harm or kill dolphins. And even if Plaintiff and the Class were aware of the fishing methods identified on the Products' back label, they do not have the expertise or specialized knowledge to know, understand, or expect that such fishing methods cause harm and death to dolphins in contradiction to the Products' "DOLPHIN SAFE" representations.

30.   **Longline Fishing.** ALDI identifies longline fishing as the catch method for the tuna in its Northern Catch Solid White Tuna Albacore in Water, as seen in Exhibit 7, *supra*. Longline fishing is one of the most damaging fishing methods to marine ecosystems and as much as thirteen percent of the world's tuna is caught using this method. Each day, longline fishing boats set out enough line to wrap the world five-hundred times.[39] Longline fishing involves casting out fishing lines that extend over sixty miles in length and contain thousands of hooks, which can ensnare birds, marine mammals like dolphins, and juvenile fish. Longline fishing also requires "backbreaking, dangerous, and relentless work . . . ."[40]

31.   Longline fishing has had a significant harmful impact on marine life. For example, it is estimated that between 1994 and 2002, the Hawaiian pelagic longline fleet resulted in the deaths and serious injuries of forty-eight whales and dolphins per year.[41] In 2016, the Hawaii and American Samoa longline fisheries

---

[39] See, *Seaspiracy*, *supra* at 8.

[40] *2017 Tuna Shopping Guide*, GREENPEACE, https://www.greenpeace.org/usa/oceans/tuna-guide/.

[41] Eric Gilman, Nigel Brothers, Geoff McPherson, & Paul Dalzell, *A Review of Cetacean Interaction with Longline Gear*, 8 J. CETACEAN RES. MANAGE. 215, 217 (2006).

were considered responsible for injuring eighty-nine out of 101 mammals that interacted with fisheries in these locations.[42]

32.    In fact, longline fishing methods are so harmful to dolphins and other "non-target" marine life, that experts and the World Wildlife Foundation ("WWF") have condemned their use. The International Seafood Sustainability Project has also estimated that the average bycatch rate for longline fishing is more than 20% of the total catch.[43]

33.    Greenpeace has listed ALDI among the bottom eleven tuna brands based on its use of longline fishing methods in the manufacturing of the Products.[44] Additionally, Greenpeace stated concern about ALDI's lack of transparency, its use of transshipment at sea, and concerns that some of the Products were sourced from stocks where there could be high risk of overfishing.[45] In Greenpeace's 2021 Tuna Scorecard, ALDI received failing grades in four out of six categories, including, traceability, tuna procurement policy, customer education/labelling, and human rights and labor.[46]

34.    **Purse Seine Fishing.** ALDI identifies purse seine (free school) fishing as the catch method for the tuna in its Northern Catch Chunk Light Tuna in Water, as seen in Exhibit 6, *supra*.  Purse seine fishing can easily catch dolphins along with

---

[42] Aino Ruusuvuori, *Fishery Related Injuries to Cetaceans off the Norwegian Coast* (2007) (B.A. thesis, Halmstad University) (Semantic Scholar) http://hh.diva-portal.org/smash/get/diva2:1191646/FULLTEXT02.pdf.

[43]*Longline*, INTERNATIONAL SEAFOOD SUSTAINABILITY FOUNDATION, https://www.iss-foundation.org/tuna-stocks-and-management/tuna-fishing/fishing-methods/longline/;  World Wildlife Foundation, www.worldwildlife.org/threats/bycatch

[44] *2017 Tuna Shopping Guide*, *supra* at 40.

[45] *Id.* (Transshipment is the practice of fishing vessels of offloading their products on other boats at sea, so that those vessels can continue fishing for months or years at a time. Transshipment is often associated with concerns about illegal fishing and human rights violations.)

[46] Josh Stride, *The High Cost of Cheap Tuna: U.S. Supermarkets, Sustainability, and Human Rights at Sea*, GREENPEACE (2021), p. 29.

21

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the targeted tuna school.[47] Historically, fishing vessels used a practice called "setting on dolphins," which involved using dolphins as a visual cue to lead the boat towards schooling fish.[48] "Once the netting has been set, encircled marine mammals cannot escape and can become entangled, injured, or stressed. Even with quick retrieval, marine mammals' sensitive bodies and internal organs cannot usually withstand the weight of the catch or the impact of being placed on the vessel."[49]

35.    Purse Seine fishing has had a devastating impact on the dolphin population. From 1960 to 1970, it is estimated that between 200,000 and 400,000 dolphins were killed annually as a result of the "setting on dolphins" practice for purse seine fishing.[50] This amount has likely increased as the demand for tuna products has risen.

36.    More recently, "the Western and Central Pacific Fisheries Commission has reviewed cetacean interactions in its purse seine fishery, estimating 281 false killer whale mortalities in 2009."[51] False killer whales are currently listed as a "Near Threatened" species according to the International Union for Conservation of Nature and Natural Resources Red List of Threatened Species.[52]

37.    Like the Defendant, other tuna manufacturers try to justify the use of purse seine fishing methods by differentiating a "free schooling" method versus a Fish Aggregating Devices ("FAD") method. The free schooling purse seine fishing method involves using visual cues, like searching for seabirds or dolphins that hunt

---

[47] *Fishing Gear: Purse Seines, supra* at 18.
[48] *Id.*
[49] *Id.*
[50] *"Net Loss: The Killing of Marine Mammals in Foreign Fisheries," supra* at 22, pg. 9.
[51] *Id.* at 19.
[52] *False Killer Whales,* IUCN RED LIST, https://www.iucnredlist.org/species/18596/145357488

schools of fish, and directing the vessel towards them to deploy the net.[53] FAD purse seine fishing methods involve a floating object, under which fish and marine mammals congregate, that the vessel then deploys its nets around.[54] Ultimately any fishing method that involves a net cannot be truly "DOLPHIN SAFE."[55]

38.    The free-school purse seine fishing method is not "DOLPHIN SAFE." Historically, dolphins were used to find these free-schools of tuna in a practice called "setting on dolphins."[56] That is because of the unique relationship between dolphins and tuna. For example, "[a]long the western coast of the Americas, dolphin species are often followed by yellowfin tuna. . . ."[57] When purse seine nets are released around the free-schooling tuna, there is an entanglement risk to the dolphins that are often found with those schools of tuna.[58] Entanglement is the greatest threat surrounding net fishing.[59] Dolphins get tangled in the nets and drown before they are able to get free.[60] Additionally, if the dolphin manages to get free from the net, the ropes can cause lacerations that can lead to death soon thereafter.[61]

---

[53] *Purse Seine,* BYCATCH MANAGEMENT INFORMATION SYSTEM, https://www.bmis-bycatch.org/fishing-gear/purse-seine#:~:text=A%20purse%20seine%20is%20a,through%20rings%20along%20the%20bottom.

[54] *Id.*

[55] Alex Renton, *Time to Change Your Tuna?*, THE GUARDIAN (Aug. 18, 2008), https://www.theguardian.com/lifeandstyle/wordofmouth/2008/aug/18/greenpeacejohnwesttunatinne#:~:text=If%20you%20really%20want%20to,to%20the%20different%20fishing%20methods.

[56] *Fishing Gear: Purse Seines*, *supra* at 18.

[57] Fiona Mulhern, *The Tuna Dolphin Tragedy*, INTERNATIONAL MARINE MAMMAL PROJECT (2022), https://savedolphins.eii.org/news/the-tuna-dolphin-tragedy

[58] Katie Pavid, *Whales and dolphins are getting stuck in fishing nets around the UK*, NATURAL HISTORY MUSEUM (February 6, 2019), https://www.nhm.ac.uk/discover/news/2019/february/whales-and-dolphins-are-getting-stuck-in-fishing-nets-around-the.html

[59] *Id.*

[60] *Id.*

[61] *Id.*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

39.  **Monofilament Lines and Circle Hooks.** Monofilament, or nylon, lines are used in the commercial fishing industry. Monofilament lines are used for both the mainline (the longline) and branchlines (which hang off the main longline). Circle hooks are fishing hooks that are curved back into a circular shape, which decreases the likelihood that the hooks will be swallowed by fish and cetaceans alike.[62] According to its Seafood Buying Policy, Defendant claims that it gives preference to suppliers using longlines with "circle hooks with mono-filament lines," yet none of Defendant's longline suppliers, detailed *infra*, identify that they use monofilament lines or circle hooks. These methods are also not "Dolphin Safe" because they do not prevent dolphin bycatch or harm to dolphins. [63,64,65,66]

[62] *Circle hooks - benefits and tips*, DEPARTMENT OF PRIMARY INDUSTRIES, https://www.dpi.nsw.gov.au/fishing/recreational/fishing-skills/catch-and-release/circle-hooks-benefits-and-tips

[63] *ALDI US Sustainable Seafood Policy*, ALDI, https://corporate.ALDI.us/fileadmin/fm-dam/Corporate_Responsibility2/ALDI_US_Seafood_Buying_Policy__2016_update__FOR_WEBSITE_1_.PDF

[64] *Tuna Bycatch – A Case for Circle Hooks*, WWF (2011), https://wwf.panda.org/wwf_news/?202335/Tuna-Bycatch--A-Case-for-Circle-Hooks

[65] *See Albacore Indian Ocean: China Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5317; *Albacore Indian Ocean: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5319; A*lbacore Indian Ocean: Indonesia Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/1835; *Albacore Indian Ocean: Indonesia Handlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/6199; *Albacore Indian Ocean: Indonesia Trolling Lines*, FISH SOURCE, https://www.fishsource.org/fishery_page/6850; *Albacore South Atlantic: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5321

[66] *See Albacore South Pacific: China Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2175; *Albacore South Pacific: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2181; *Albacore South Pacific: China Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5118; *Albacore South Pacific: Fiji Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2209; *Albacore South Pacific: Taiwan Longlines*, FISH SOURCE,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

40.   Fishing practices that harm dolphins are not limited to the Pacific Ocean. Marine conservation organizations estimate that between 6,000 and 10,000 dolphins are killed every year off the western coast of France.[67] Most of the dolphins caught during the hauling process usually die by the time they reach the fishing vessel; those that survive the initial catch are usually killed by the fishermen before being thrown overboard back into the sea.[68]

41.   In addition to the dangers posed by entanglement in fishing gear, *ingestion* of fishing gear is often lethal for cetaceans because it can damage the animals' interior organs. In a study of bottlenose dolphins, seven out of twelve ingestion cases lead to the death of the animal.[69]

42.   The economic costs associated with marine mammal depredation of longlines (fish removed from fishing gear by predators during hauling) have led fishermen to harass and kill dolphins by shooting them, using explosives, or otherwise employing harmful measures to avoid depredation and gear damage.[70] Besides the obvious dangers of serious injury and death that such practices impose on dolphin pods globally, they also have the potential to alter the distribution of dolphin populations, forcing them away from their usual feeding grounds and negatively impacting the fitness of entire pods (e.g., lowering the rates of successful reproduction and increasing the pods' susceptibility to diseases).[71]

43.   **Pole and Line Fishing**. ALDI identifies pole and line fishing, in addition to longline fishing, as the catch method for the tuna in its Northern Catch Solid White Tuna Albacore in Water, as identified in Exhibit 7, *supra*. Pole and line

---

https://www.fishsource.org/fishery_page/5120; *Albacore South Pacific: Vanuatu Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5305
[67] *About Operation Bycatch*, SEA SHEPHERD, https://www.seashepherdglobal.org/our-campaigns/dolphin-bycatch/learn-more/
[68] *Id.*
[69] Ruusuvuori, *supra* at 42.
[70] *Id.*
[71] *Id.*

CLASS ACTION COMPLAINT

fishing involves catching one fish at a time.[72] Often, a fishing vessel will pump water off the end of the boat along with bait fish to work up a school of tuna into a feeding frenzy that causes them to bite anything they see.[73] Fishermen then stand at the back of the boat with poles and flick fish into the boat that bite their lines.[74] Handlines do not require the use of a pole or a reel, but are instead pulled in by hand.[75] Each line has a single baited hook and it is up the to the fisherman to use his strength to pull in one fish at a time.[76] Hook and line is a general term to describe fishing methods that involve any sort of fishing that involves a line and hook.[77] It can include the use of a pole or by hand.[78] Pole and line fishing only accounts for ten percent of tuna caught today.[79] It is more labor intensive and expensive than other commercial fishing methods.[80] Defendant does not indicate how much of its tuna for the Northern Catch Solid White Tuna Albacore in Water is sourced using the pole and line method compared to the other methods it uses, but globally this method only makes up seven percent of all tuna caught.[81]

44.   **Bycatch**. "Bycatch" refers to marine life unintentionally caught and often killed during commercial fishing for a different species. Marine mammals

---

[72] *Pole and Line*, MARINE STEWARDSHIP COUNCIL, https://www.msc.org/what-we-are-doing/our-approach/fishing-methods-and-gear-types/pole-and-line
[73] *Id.*
[74] *Id.*
[75] *Handline*, SOURING TRANSPARENCY PLATFORM, https://sourcingtransparencyplatform.org/index.php/gear-types/handline
[76] *Id.*
[77] *Fishing Gear Types 101: Longlines & Hook and Line*, MONTEREY BAY FISHERIES TRUST, https://montereybayfisheriestrust.org/stories/gear-types/longlines
[78] *Id.*
[79] Amy McDermott, *Attention shoppers: "Pole and line" is today's eco-friendliest label for canned tuna*, OCEANA, https://oceana.org/blog/attention-shoppers-pole-and-line-todays-eco-friendliest-label-canned-tuna/
[80] *Id.*
[81] *In pole-and-line fishing, tuna are caught one-by-one using a hook attached to a line and pole*, INTERNATIONAL SEAFOOD SUSTAINABILITY FOUNDATION, https://www.iss-foundation.org/tuna-stocks-and-management/tuna-fishing/fishing-methods/pole-line/

such as Risso's dolphins, bottlenose dolphins, and false killer whales are often entangled or hooked on longline gear and consequently injured or killed. Such injuries include, but are not limited to, lacerations, puncture wounds, exhaustion, and drowning.[82] The average bycatch rate for longlines is more than twenty percent of the total catch.[83]

45.    Up to 40% of all fish caught worldwide are designated as "bycatch" and are subsequently killed or significantly injured before being returned to the water.[84] Marine mammals such as dolphins and whales caught as bycatch are unable to surface for air, causing suffocation and painful death.[85] This troubling number of bycatch results in the death of roughly 300,000 dolphins and whales each year,[86] the vast majority of which are dolphins.[87]

46.    Commercial fishermen are incentivized to underreport bycatch, which is facilitated by rampant lack of accountability and widespread unreliable reporting on bycatch. In fact, in 2005, less than half of the fishing vessels around the world recorded quantitative statistics on annual bycatch.[88]

---

[82] *Fishing Gear: Pelagic Longlines*, NOAA FISHERIES, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-pelagic-longlines#:~:text=Risks%20to%20Marine%20Mammals,-Marine%20mammals%20are&text=Risso's%20dolphins%2C%20bottlenose%20dolphins%2C%20and,wounds%2C%20exhaustion%2C%20and%20drowning

[83] *Longline*, *supra* at 43.

[84] *See Bycatch: A Sad Topic,* WWF, https://www.fishforward.eu/en/project/by-catch/; *A Third Assessment of Global Marine Fisheries Discards*, FOOD AND AGRICULTURE ORGANIZATION OF THE UNITED NATIONS (2018), https://www.fao.org/documents/card/en/c/CA2905EN/; Dirk Zeller, et at., *Global Marine Fisheries Discards: A Synthesis of Reconstructed Data*, 19 FISH AND FISHERIES 1, 30-39 (June 26, 2017).

[85] *Id.*

[86] *Catching Fish, Not Flukes and Flippers: A Global Effort to Reduce Whale and Dolphin Bycatch*, WORLD WILDLIFE FOUNDATION, https://wwf.panda.org/discover/knowledge_hub/endangered_species/cetaceans/threats/bycatch/?

[87] Ebersole, *supra* at 38.

[88] Keledjian, *supra* at 22.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

47.   This problem holds true in the United States as well. Despite federal legislation such as the Magnuson-Stevens Act requiring detailed reporting on bycatch statistics by U.S. fisheries, there are too few unbiased reporters onboard fishing vessels to get an accurate metric of annual bycatch.

48.   Exacerbating this problem is the lack of governmental reporting. The U.S. National Marine Fisheries Service last provided an update to its U.S. National Bycatch Report in 2019, but this update was based on data from 2014 and 2015.[89]

49.   A recent report found that "only four out of hundreds of U.S. fisheries are meeting the recommended standards for the statistical accuracy and validity of their catch data, if they report data at all.[90]"

50.   This lack of transparency, combined with the self-policing nature of the industry allows major tuna producers and distributors like Defendant to reap the benefits of harmful fishing practices all the while advertising their products to unsuspecting consumers as "DOLPHIN SAFE."

51.   **Lack of Transparency in Tracking Tuna.** Defendant does not have a traceability program available for its Products in California or the United States.[91]

52.   In 2015, the Sustainable Fisheries Partnership started a reporting framework called the Ocean Disclosure Project.[92] The Sustainable Fisheries Partnership is a group working to "rebuild depleted fish stocks and reduce the environmental and social impacts of fishing and fish farming."[93] The Ocean Disclosure Project encourages participating organizations to voluntarily disclose their sustainability performance,[94] doing nothing more than compiling the data with

---

[89] Lee R. Benaka, et al., *U.S. National Bycatch Report First Edition Update 3*, U.S. NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION (February 2019), p. v.
[90]  Keledjian, *supra* at 22.
[91] *Seafood*, ALDI US, https://corporate.aldi.us/en/corporate-responsibility/sustainability/seafood/
[92] *About Us*, OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/about-us
[93]  Sustainable Fisheries Partnership, https://sustainablefish.org/
[94] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

no outside verification.[95] Defendant participates in the Ocean Disclosure Project, where it indicates that it uses twelve Albacore tuna fisheries and eleven Skipjack tuna fisheries, the two species of tuna used in its Products.[96]

53.   The Ocean Disclosure Project collects information specific to the fishery. A fishery is a geographic area that is associated with certain species sought by commercial fishing entities.[97] Within each fishery, vessels can be identified by the flag they fly.[98] Those country flags determine more information about the practices of the vessels flying them in that particular fishery. Some of the information included about each fishery is general to the fishery, like its general strengths and weaknesses in performance across several factors as a whole group, but there can also be more information specific to the country of the vessels within the fishery.[99]

54.   The Ocean Disclosure Project collects facts about environment and biodiversity which includes bycatch information.[100] Often, they also collect information about how the fishery is doing in regards to observer coverage. Observer coverage can be either human or electronic monitoring devices on a fleet that records scientific data and ensures the fisheries comply with all rules and regulations.[101] According to Resolution 11/04 of the Indian Ocean Tuna

[95] *How ODP Works,* OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/how-odp-works
[96] *Seafood*, *supra* at 91.
[97] *What are Fisheries?,* NOAA, https://coast.noaa.gov/data/SEAMedia/Presentations/PDFs/Grade%205%20Unit%205%20Lesson%204%20What%20are%20fisheries.pdf
[98] *How ODP Works,* OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/how-odp-works
[99] *See generally* https://www.fishsource.org/fishery_page/2732
[100] *Id.*
[101] *Observer Coverage*, INTERNATIONAL SEAFOOD SUSTAINABILITY FOUNDATION, https://www.iss-foundation.org/glossary/observer-coverage/#:~:text=Observer%20coverage-,Observer%20coverage,with%20fishing%20rules%20and%20regulations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Commission, a minimum of *five percent* per fishing method by fleet is required.[102] Applying this five percent standard, <u>out of the 5.2 million tons of tuna caught in 2018, only 260,000 tons were caught with observer verified practices</u>.[103]

55.   Additionally, the Ocean Disclosure Project will share any Fishery Improvement Projects ("FIPs") that vessels and organizations in that fishery are involved in. FIPs follow a guideline from the Conservation Alliance for Seafood Solutions.[104]

56.   The Conservation Alliance for Seafood Solutions is a collection of over 100 organizations across the globe "working together to improve the sustainability and responsibility of seafood supply chains."[105] According to the Conservation Alliance for Seafood Solutions, FIPs are "a multi-stakeholder effort to address environmental or social challenges in a fishery."[106] FIPs are conducted as a way for fisheries to improve their standards in hopes of achieving certification from the Marine Stewardship Council ("MSC").[107]

57.   ALDI gets approximately two-thirds of all its wild-caught fish, which includes tuna, and seafood from fisheries that do not have any sustainability or

---

[102] *FAOLEX Database*, FOOD AND AGRICULTURE ORGANIZATION OF THE UNITED NATIONS, https://www.fao.org/faolex/results/details/en/c/LEX-FAOC165340/
[103] *Netting Billions 2020: A Global Tuna Valuation*, PEW, https://www.pewtrusts.org/en/research-and-analysis/reports/2020/10/netting-billions-2020-a-global-tuna-valuation
[104] *What's Included?*, OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/whats-included
[105] CONSERVATION ALLIANCE FOR SEAFOOD SOLUTIONS, https://solutionsforseafood.org/
[106] *Fishery Improvement Project Guidelines*, CONSERVATION ALLIANCE FOR SEAFOOD SOLUTIONS, https://solutionsforseafood.org/our-work/fishery-improvement-projects-guidelines/
[107] *Guidelines for Supporting Fishery Improvement Project*, CONSERVATION ALLIANCE FOR SEAFOOD SOLUTIONS, https://solutionsforseafood.org/wp-content/uploads/2021/10/Conservation-Alliance-for-Seafood-Solutions-Guideines-for-Supporting-Fishery-Improvement-Projects-Jan-2021.pdf

environmental certifications from the MSC.[108] The remaining one-third of the source fisheries that are certified are being certified to low standards. The MSC is a non-profit organization that aims to set standards for sustainable fishing. Although the MSC purports that their blue fish label provides an "assurance" that the seafood product "came from a certified sustainable fishery,"[109] there is growing concern among industry watchdogs that the bar for MSC approval has been dropped to low: "critics suggest the [MSC acceptance] bar has been dropped unacceptably low in order to satisfy ever-growing market demand by getting more (generally large industrial) fisheries into the program . . . [c]oncerns around lowering of the bar have resulted in several objections to recent fishery certifications and in published critiques of the MSC's Standard and its application."[110]

58. **Fisheries that supply tuna for ALDI's Northern Catch Solid White Tuna Albacore in Water**. Albacore tuna is the species of tuna used in the Northern Catch Solid White Tuna Albacore in Water Product. *See* Exhibit 7, *supra*. The Ocean Disclosure Project identifies the fisheries that Defendant uses to supply the Albacore tuna in its Products by their "Tuna Species – Location – Vessel Flag – Fishing Method," as follows:[111]

    a. **Albacore – Indian Ocean – China – Longlines**. This fishery uses logbooks on its vessels as its method for reporting bycatch, but admits

---

[108] *Buy Sustainable Seafood*, MARINE STEWARDSHIP COUNCIL, https://www.msc.org/what-you-can-do/buy-sustainable-seafood

[109] *Learn More*, MARINE STEWARDSHIP COUNCIL, https://www.msc.org/en-us?gclid=CjwKCAjwiJqWBhBdEiwAtESPaJ8EaNNatf0Rvn3DjAXptZNtUrLRsGScWsFCmKpEMUMXwk0qg5CIwRoCLpwQAvD_BwE.

[110] Amy Hammond & Callum Roberts, *Why The Marine Stewardship Council Needs an Independent Review*, ETHICAL CONSUMER (July 26, 2021), https://fcf.com.tw/wp-content/uploads/2021/12/1-FCF-Tuna-Sustainability-Policy_v3.1-FCF-T-R-E-001.pdf.

[111] *ALDI US*, OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/companies/aldi-us

CLASS ACTION COMPLAINT

that the records for bycatch are not high quality.[112] This fishery only maintains observer coverage on vessels right above five percent, the minimum required by Resolution 11/04.[113] They claim to be involved with bycatch mitigation initiatives from the ISSF, but have yet to develop or adopt any of the National Plan of Actions for specific bycatch species.[114]

b. **Albacore – Indian Ocean – Taiwan – Longlines**. This fishery currently requires catch data to be provided daily in an electronic logbook.[115] Additionally this fishery requires vessels to install Vessel Monitoring Systems and conducts random inspections on vessels.[116] However, since 2014, these vessels only have between five to nine percent observer coverage.[117] Longlines, a fishing method known to kill and harm dolphins as described *supra*, is the only fishing method used in this fishery for tuna.[118] This fishery has no certifications.[119]

c. **Albacore – Indian Ocean – Indonesia – Longlines**. This fishery requires all vessels above 5GT (Gross Tonnage) to submit logbooks to port authority and all vessels above 30GT to be equipped with Vessel Monitoring Systems.[120] However, this fishery currently has less than one percent observer coverage and at the one port that conducts inspections,

[112] *Albacore Indian Ocean: China Longlines*, Fɪsʜ Sᴏᴜʀᴄᴇ, https://www.fishsource.org/fishery_page/5317
[113] *Id.*
[114] *Id.*
[115] *Albacore Indian Ocean: Taiwan Longlines*, Fɪsʜ Sᴏᴜʀᴄᴇ, https://www.fishsource.org/fishery_page/5319
[116] *Id.*
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *Albacore Indian Ocean: Indonesia Longlines*, Fɪsʜ Sᴏᴜʀᴄᴇ, https://www.fishsource.org/fishery_page/1835

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

only fifty percent of landings were being sampled.[121] This fishery has no certifications.[122]

d. **Albacore – Indian Ocean – Indonesia – Handlines and Pole-Lines**. This fishery requires all vessels above 5GT to submit logbooks to port authority and all vessels above 30GT to be equipped with Vessel Monitoring Systems.[123] However, this fishery currently has less than one percent observer coverage and at the one port that conducts inspections, only fifty percent of landings were being sampled.[124] In 2019, this fishery had 341 total registered vessels, of which 264 were longliners and 77 were purse seiners, meaning no vessel was registered that utilized fishing methods not harmful to dolphins.[125] This fishery is not involved with any FIPs, nor has any certifications.[126]

e. **Albacore – Indian Ocean – Indonesia – Trolling Lines**. This fishery requires all vessels above 5GT to submit logbooks to port authority and all vessels above 30GT to be equipped with Vessel Monitoring Systems.[127] However, this fishery currently has less than one percent observer coverage and at the one port that conducts inspections, only fifty percent of landings were being sampled.[128] In 2019, this fishery had 341 total registered vessels, 264 were longliners and 77 were purse seiners; no vessel was registered with as trolling lines only.[129] Trolling

---

[121] *Id.*

[122] *Id.*

[123] *Albacore Indian Ocean: Indonesia Handlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/6199

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] *Albacore Indian Ocean: Indonesia Trolling Lines*, FISH SOURCE, https://www.fishsource.org/fishery_page/6850

[128] *Id.*

[129] *Id.*

CLASS ACTION COMPLAINT

line fishing is when a vessel pulls several baited lines behind the vessel.[130] Trolling line fishing does not prevent dolphin bycatch or harm to dolphins since with any hook and line fishing method, marine animals may catch onto the baited hooks which then become embedded in their mouths or elsewhere.[131] This fishery is not involved with any FIPs, nor has any certifications.[132]

f.  **Albacore – South Atlantic – Taiwan – Longlines**. Very little is reported about this fishery in relation to bycatch. It is noted that observer coverage is low at only five percent and there are reports of interactions with threatened and endangered species.[133]

g.  **Albacore – South Pacific/IATTC – China – Longlines**. It is reported that this fishery follows the Western Central Fisheries Commission's management measures which include sections on bycatch mitigation.[134] However, there can be no assessment of bycatch rates because scarce data is reported to be able to differentiate by member.[135] It is reported as a weakness that there is low observer coverage.[136]

h.  **Albacore – South Pacific/IATTC – Taiwan – Longlines**. It is reported that this fishery follows the Western Central Fisheries Commission's management measures which include sections on bycatch mitigation.[137]

---

[130] *Trolling Lines*, FOOD AND AGRICULTURE ORGANIZATION OF THE UNITED NATIONS, https://www.fao.org/fishery/en/geartype/235/en

[131] *Trolling*, FISH COUNT, http://fishcount.org.uk/fish-welfare-in-commercial-fishing/capture/trolling

[132] *Albacore Indian Ocean: Indonesia Trolling Lines, supra* at 130.

[133] *Albacore South Atlantic: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5321

[134] *Albacore South Pacific: China Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2175

[135] *Id.*

[136] *Id.*

[137] *Albacore South Pacific: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2181

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

However, there can be no assessment of bycatch rates because scarce data is reported to be able to differentiate by member.[138] It is reported as a weakness that there is low observer coverage.[139] This fishery has no certifications.[140]

i. **Albacore – South Pacific/WCPFC – China – Longlines.** It is reported that this fishery follows the Western Central Fisheries Commission's management measures which include sections on bycatch mitigation.[141] However, there can be no assessment of bycatch rates because scarce data is reported to be able to differentiate by member.[142] A suggested improvement for this fishery is to make sure it at least meets minimum requirements for observer coverage and bycatch reporting.[143]

j. **Albacore – South Pacific/WCPFC – Fiji – Longlines.** It is reported that this fishery follows the Western Central Fisheries Commission's management measures which include sections on bycatch mitigation.[144] However, there can be no assessment of bycatch rates because scarce data is reported to be able to differentiate by member.[145] It is also noted that reporting is vulnerable to errors and verification issues because it is paper based and there is limited observer coverage, sometimes even less than five percent.[146]

---

[138] *Id.*

[139] *Id.*

[140] *Id.*

[141] *Albacore South Pacific: China Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5118

[142] *Id.*

[143] *Id.*

[144] *Albacore South Pacific: Fiji Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2209

[145] *Id.*

[146] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

k.  **Albacore – South Pacific/WCPFC – Taiwan – Longlines.** It is reported that this fishery follows the Western Central Fisheries Commission's management measures which include sections on bycatch mitigation.[147] However, this fishery accounts for a high volume of bycatch, peaking at 65,602 megatons in 2019, with eight different species reported.[148]

l.  **Albacore – South Pacific/WCPFC – Vanuatu – Longlines.** It is reported that this fishery follows the Western Central Fisheries Commission's management measures which include sections on bycatch mitigation.[149] However, there can be no assessment of bycatch rates because scarce data is reported to be able to differentiate by member.[150] It is also noted that reporting is vulnerable to errors and verification issues because it is paper based and there is limited observer coverage, sometimes even less than five percent.[151]

59.  **Fisheries that supply tuna for ALDI's Northern Catch Chunk Light Tuna in Water**. Skipjack tuna is the species of tuna used in the Northern Catch Chunk Light Tuna in Water Product. *See* Exhibit 6, *supra*. The Ocean Disclosure Project identifies the fisheries that Defendant uses to supply the Skipjack tuna used in its Products by their "Tuna Species – Location – Vessel Flag – Fishing Method," as follows:[152]

a.  **Skipjack – Indian Ocean – Indonesia – Pole-lines**. This fishery reports that there are only a few pole and line studies conducted so data

---

[147] *Albacore South Pacific: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5120
[148] *Id.*
[149] *Albacore South Pacific: Vanuatu Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5305
[150] *Id.*
[151] *Id.*
[152] *ALDI US*, OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/companies/aldi-us

CLASS ACTION COMPLAINT

is limited and the number of vessels using pole and line is unbalanced to the amount of production.[153] It is reported that this fishery is only partially compliant with submission of mandatory statistics.[154] Additionally, it has an observer coverage less than five percent.[155] This fishery has no certifications.[156]

b. **Skipjack – Indian Ocean – Maldives – Pole-lines.** This fishery is reported to pole-line fish around FADs, which can lead to bycatch.[157] Additionally, scientists and researchers are unable to draw credible conclusions on dolphin and other marine bycatch because there is a lack of scientific data on interactions with non-target species.[158] This fishery is not part of any FIPs and has one certification from the MSC.[159]

c. **Skipjack –Western and Central Pacific Ocean – Indonesia – Pole-lines**. This fishery has seen a decline in registered pole-line vessels from thirteen vessels in 2018 to zero vessels in 2019.[160] Additionally, this fishery is not implementing the full observer program as is required and is breaching several regulations on the conservation of marine mammal bycatch, which would include dolphins.[161]

d. **Skipjack –Western and Central Pacific Ocean – China – FAD-free Purse Seine.** This fishery requires logs to be kept about catches of protected marine mammals but it is filled out only by the master of the

---

[153] *Skipjack Tuna Indian Ocean: Indonesia Pole-lines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2729

[154] *Id.*

[155] *Id.*

[156] *Id.*

[157] *Skipjack Tuna Indian Ocean: Maldives Pole-lines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2732

[158] *Id.*

[159] *Id.*

[160] *Skipjack Tuna Western and Central Pacific Ocean: Indonesia Pole-lines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2737

[161] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

vessel which could lead to inaccuracy and under reporting.[162] This fishery is currently in violation of reporting transshipments and being over catch limits.[163] Despite its violations, this fishery is part of one FIP and has two MSC certifications, further demonstrating that such certifications are inconsequential.[164]

e. **Skipjack –Western and Central Pacific Ocean – Kiribati – FAD-free Purse Seine.** This fishery is part of the Western Central Pacific Fisheries Commission.[165] Currently, the Western Central Pacific Fisheries Commission has no body that is monitoring and assessing the reported interactions with marine mammals.[166]

f. **Skipjack –Western and Central Pacific Ocean – South Korea – FAD-free Purse Seine.** This fishery is part of the Western Central Pacific Fisheries Commission.[167] This fishery has reported incidental catching of marine mammals, and not all were released alive.[168] Additionally the data is not presented in a way that allows for fishery wide estimates.[169]

g. **Skipjack –Western and Central Pacific Ocean – Marshall Islands – FAD-free Purse Seine.** This fishery is part of the Western Central Pacific Fisheries Commission.[170] This fishery combines its FAD-free

---

[162] *Skipjack Tuna Western and Central Pacific Ocean: China Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5455

[163] *Id.*

[164] *Id.*

[165] *Skipjack Tuna Western and Central Pacific Ocean: Kiribati Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5056

[166] *Id.*

[167] *Skipjack Tuna Western and Central Pacific Ocean: South Korea Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5052

[168] *Id.*

[169] *Id.*

[170] *Skipjack Tuna Western and Central Pacific Ocean: Marshall Island Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5057

and FAD purse seine bycatch data.[171] This fishery is not involved in any FIPs and has no MSC certifications.[172]

h. **Skipjack –Western and Central Pacific Ocean – Nauru – FAD-free Purse Seine.** This fishery is part of the Western Central Pacific Fishery Commission.[173] Currently, the Western Central Pacific Fishery Commission has no body that is monitoring and assessing the reported interactions with marine mammals.[174]

i. **Skipjack –Western and Central Pacific Ocean – Solomon Islands – FAD-free Purse Seine.** This fishery was found to be in breach of the obligation to have Video Monitoring Systems installed on its fishing fleets.[175] This fishery is required to report on catches and interactions with certain marine mammals, however, there is no body or committee that reviews the data, nor does the fishery separate out FAD-free versus FAD purse seine fishing data.[176] This fishery is not involved in any FIPs and has one certification from the MSC.[177]

j. **Skipjack –Western and Central Pacific Ocean – Taiwan – FAD-free Purse Seine.** This fishery is part of the Western Central Pacific Fishery Commission.[178] This fishery is not being assessed on their compliance with conservation of marine mammals, which would include dolphins.[179]

---

[171] *Id.*

[172] *Id.*

[173] *Skipjack Tuna Western and Central Pacific Ocean: Nauru Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5058

[174] *Id.*

[175] *Skipjack Tuna Western and Central Pacific Ocean: Solomon Islands Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5061

[176] *Id.*

[177] *Id.*

[178] *Skipjack Tuna Western and Central Pacific Ocean: Taiwan Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5051

[179] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

k. **Skipjack –Western and Central Pacific Ocean – United States – FAD-free Purse Seine**. This fishery is part of the Western Central Pacific Fishery Commission.[180] This fishery reports combine FAD-free and FAD purse seine fishing of all interactions with marine mammals.[181] Additionally, this data is not being assessed on their compliance with conservation of marine mammals, which would include dolphins.[182]

60.   Unlike Defendant, other tuna brands that sell their Products in California and the United States, such as Starkist Co., allow consumers to easily enter a number associated with a tuna product on their website and track the source of their specific batch of tuna.[183]

61.   Defendant's suppliers also fail to keep accurate records of their effects on cetaceans and marine life. For example, Global Dialogue on Seafood Sustainability ("GDST"), an international, business-to-business platform that established the first ever global industry standards for seafood traceability, claims that Defendant is an adopter and endorser.[184] However, the GDST does not currently have a mechanism to independently verify the validity of claims made by tuna fisheries pertaining to their compliance with and implementation of GDST standards.[185]

62.   **Many Oversight Organizations Are Funded By and Partner with Destructive Fisheries.** Defendant claims that all of their suppliers must have an active memberships in the International Seafood Sustainability Foundation

---

[180] *Skipjack Tuna Western and Central Pacific Ocean: United States Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5054
[181] *Id.*
[182] *Id.*
[183] *Trace My Starkist*, STARKIST, https://starkist.com/about-starkist/corporate-responsibility/trace-my-starkist
[184] *GDST Adopters & Endorsers*, GLOBAL DIALOGUE ON SEAFOOD TRACEABILITY, https://traceability-dialogue.org/gdst-adopters-endorsers/
[185] *GDST Standards and Materials*, GLOBAL DIALOGUE ON SEAFOOD TRACEABILITY, https://traceability-dialogue.org/what-is-the-global-dialogue/

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(ISSF).[186] The ISSF is a partnership among global scientists, tuna processors, and the WWF, with the aim to "undertake science-based initiatives for the long-term sustainability of tuna stocks, reduction of by-catch and promotion of ecosystem health."[187] Although the ISSF claims to be committed to long-term conservation and sustainable use of global tuna fisheries, as noted by Greenpeace, the ISSF is actually "nothing more than a front for giant tuna companies."[188]

63.    The ISSF was founded in 2009, a time when environmental organizations and consumers alike were putting more pressure on the tuna industry to change its destructive practices. The eight founding members of the ISSF were all "tuna industry giants," who, at the time of the foundation's finding, controlled fifty percent of the global tuna market between them. Since its founding, ISSF has consistently been funded by the corporations that it claims to oversee, receiving hundreds of thousands of dollars in donations from these "tuna industry giants."[189]

64.    Despite requiring suppliers to have an active ISSF membership, Defendant's use of longlines and other well-known, dolphin-harming fishing techniques, demonstrates that an ISSF membership is inconsequential and has no bearing on Defendant's false and deceptive "DOLPHIN SAFE" representations.

65.    Defendant's "DOLPHIN SAFE" label is also false and deceptive because large corporations like Aldi cannot source all of its tuna using the pole and

---

[186] *ALDI USA Sustainable Seafood Policy*, ALDI, https://corporate.aldi.us/fileadmin/fm-dam/Corporate_Responsibility/Supply_chain/ALDI_USA_Sustainable_Seafood_Policy_2021.pdf

[187] *Tuna 101*, BUMBLE BEE, https://www.bumblebee.com/seafood-school/tuna-101/#:~:text=The%20ISSF%20mission%20is%20to,Organizations%20(RFMO)%20scientific%20committees.

[188] *How the International Seafood Sustainability Foundation (ISSF) Environmental Action*, GREENPEACE, https://www.greenpeace.org/usa/oceans/sustainable-seafood/how-international-seafood-sustainability-foundation-blocks-environmental-action/.

[189] *Id.*

line method, for instance, which entails catching fish one at a time.[190,191,192,193] Yet despite this, Defendant promises "DOLPHIN SAFE" tuna while simultaneously employing fishing methods that are known to kill and harm dolphins.

66. **Defendant's Northern Catch Tuna "DOLPHIN SAFE" Logo is False and Deceptive.** Defendant's "DOLPHIN SAFE" logo (*see* Exhibits 1-4) is not the official logo set forth by the U.S. Department of Commerce (*see* Exhibit 8 [Defendant's "DOLPHIN SAFE" mark]).

67. Because Defendant uses its own "DOLPHIN SAFE" logo on the Products rather than the official "DOLPHIN SAFE" logo of the U.S. Department of Commerce, Defendant is subject to subsection 16 U.S.C. Section 1385(d)(3)(C) of the Dolphin protection Consumer Information Act ("DPCIA").

68. Pursuant to 16 U.S.C. Section 1385(d)(3)(C), it is a violation of the Dolphin Protection Consumer Information Act to use a "DOLPHIN SAFE" label on food products, unless (1) no dolphins were killed or seriously injured during the fishing process, (2) the company employs a tracking and verification program, and (3) the label conforms to all other advertising and labeling regulations governed by the Federal Trade Commission.[194]

**C.** **Defendant Misled Plaintiff and Other Reasonable Consumers Who Relied on the Material and False "DOLPHIN SAFE" Claim to Their Detriment**

69. **Material.** The false advertising claims were and are material to reasonable consumers, including Plaintiff, in deciding to purchase the Products.

---

[190] McDermott, *supra* at 81.

[191] Katherine Sullivan, *'Seaspiracy' Dives Deep Into 'Bycatch' and 'Dolphin-Safe' Tuna Scandals*, PETA BLOG (Mar. 26, 2021), https://www.peta.org/blog/seaspiracy-what-is-bycatch-is-dolphin-safe-tuna-really-safe/

[192] Renton, *supra* at 55.

[193] Kameron Schroeder, *Dolphin Safe Tuna: The Illusion of a Feel-Good Conservation Story*, DUKE (Apr. 19, 2017), https://sites.nicholas.duke.edu/statsreview/dolphin-safe-tuna-the-illusion-of-a-feel-good-conservation-story/.

[194] 16 U.S.C. §§1385(d)(3)(C) and (f).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

70. **Reliance.** Plaintiff and reasonable consumers relied and rely on Defendant's false advertising claims in making the decision to purchase the Products.

71. **Consumers Lack Knowledge of Falsity.** At the time Plaintiff and reasonable consumers purchased the Products, they did not know, and had no reason to know, that the Products' false advertising claims on the label and packaging were, in fact, false, misleading, deceptive, and unlawful as set forth herein.

72. **Misrepresentation/Omission.** The "DOLPHIN SAFE" representations materially misrepresented the Products as using fishing practices that do not kill or injure dolphins, and Defendant failed to adequately inform reasonable consumers, including Plaintiff, that the Products were not in fact dolphin safe.

73. **Defendant's Knowledge.** Defendant knew, or should have known, that the "DOLPHIN SAFE" representation was false, misleading, deceptive, and unlawful, at the time that it advertised the Products using the "DOLPHIN SAFE" representations, and Defendant intentionally and deliberately used the "DOLPHIN SAFE" representations on the Products' labeling, packaging, and advertising to cause Plaintiff and similarly situated consumers to believe that the Products are made using fair and sustainable fishing practices that do not kill or cause harm to dolphins. The conspicuousness of the challenged representation on the Products' labels and repeated use of the challenged representation in advertisements demonstrate Defendant's awareness of the materiality of said representations and understanding that consumers prefer and are motivated to buy tuna products that contain tuna harvested by methods that do not harm dolphins. Generally, manufacturers and marketers repeat marketing messages to emphasize and characterize a brand or product line. Similarly, they reserve the front primary display panel of labels on consumer products of similar dimensions for the most important and persuasive information that they believe will motivate consumers to buy the products. Defendant, as the manufacturer, manufactured the Products using

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

harmful and unfair fishing practices. Defendant, as the manufacturer, had exclusive control over the "DOLPHIN SAFE" label inclusion on the Products' labels and in their advertisements. Defendant is and was, at all times, statutorily required to ensure the manufacturing of its Products did not in fact harm, injure, or kill any dolphins in order to be "DOLPHIN SAFE." Thus, Defendant knew, or should have known, at all relevant times, that the "DOLPHIN SAFE" label was and is false and deceptive. Defendant further knew that reasonable consumers, including Plaintiff, were and are misled into buying the Products based on the mistaken belief that the challenged "DOLPHIN SAFE" representation is true.

74.     **Detriment.** Plaintiff and reasonable consumers would not have purchased the Products, or would have purchased the Products on different terms, if they had known the truth—that the "DOLPHIN SAFE" representations are false, and the Products are sourced using fishing methods that kill and injure dolphins. Accordingly, based on Defendant's material misrepresentations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**D.   No Adequate Remedy at Law**

75.     **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.   **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 to 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representation ("Dolphin Safe"), across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements related to representations and omissions made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).  Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

products from third-party retailers or provide adequate pre-lawsuit notice prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representation. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products Challenged Representation is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is unable at present to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of future Product sales, and quantities of future Product sales.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d.  **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e.  **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against non-California Defendants, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims would bar recovery for non-California members of the Class.

f.  **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is the first pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine all available and unavailable remedies, including legal and equitable, for Plaintiff(s)'s individual claims and any certified class or subclass. Plaintiff(s) therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies exist for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

76. Plaintiff does not seek to impose additional or conflicting labeling, testing, or warning requirements as it relates to the "DOLPHIN SAFE" claim; rather, Plaintiff seeks to cure Defendant's deceptive labeling of the Products as "DOLPHIN SAFE," which is not mandated by the FDA. *See* 16 U.S.C. § 1385 (no provisions requiring the inclusion of a "DOLPHIN SAFE" label claim on tuna

products). The FDA has not promulgated regulations requiring environmental claims such as "DOLPHIN SAFE" on canned tuna products, let alone one that would conflict with enjoining Defendant's misleading use of this claim. As such, Plaintiff is not seeking to impose labeling requirements that differ from any established by Congress or the FDA.

## CLASS ALLEGATIONS

77.   **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); or in the alternative;

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").

> ("Nationwide Class" and "California Subclass," collectively, "Class").

78.   **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

79.   **Reservation of Rights to Amend Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

80. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

81. **Numerosity:** Members of the Class are so numerous that individual joinder is impracticable. On information and belief, the Class consists of tens of thousands of purchasers (if not more) dispersed throughout California and the United States. Accordingly, it would be impracticable to join all members of the Class before the Court.

82. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

83. **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

   a. Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice in violation of California Civil Code Section 1750, *et seq.*;

   b. Whether Defendant used deceptive representations in connection with the sale of the Products in violation of California Civil Code Section 1750, *et seq.*;

   c. Whether Defendant represented the Products have characteristics that they do not have in violation of California Civil Code Section 1750, *et seq.*;

   d. Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of California Civil Code Section 1750, *et seq.*;

e.  Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code Section 17500, *et seq.*; Whether Defendant knew or by the exercise of reasonable care should have known its advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

f.  Whether Defendant made false and misleading representations in its advertising and labeling of the Products in violation of Business and Professions Code Section 17500, *et seq.*;

g.  Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

h.  Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

i.  Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.  Whether Defendant's conduct constitutes a breach of express warranty;

k.  Whether Defendant's conduct constitutes a breach of implied warranty;

l.  Whether Defendant was unjustly enriched by its deceptive conduct;

m.  Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

n.  How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received?

84.  **Typicality**: Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Product. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

85. **Adequacy**: Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

86. **Superiority and Substantial Benefit**: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. A class action would be more efficient and manageable for at least the following reasons:

    a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys their ill-gotten gains;

    c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

e.   This action presents no difficulty that would impede their management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

87.   **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

88.   **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

89.   **Manageability.** The trial and litigation of Plaintiff's claims are manageable. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

90.   Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

## <u>COUNT ONE</u>

### Violation of California Consumers Legal Remedies Act,

### California Civil Code 1750, *et seq*.

### *(brought on behalf of the California Subclass)*

91.   Plaintiff repeats and re-alleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

92.   Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent the Class as defined in Paragraph 77.

93.   The Class consists of thousands of persons or more, the joinder of whom is impracticable.

94.   There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, as set forth hereinabove.

95.   The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

96.   The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Products; and (2) advertising, labeling, and packaging the Products with intent not to sell them as advertised.

97.   Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Products as having characteristics which they do not have, e.g., labeling and advertising the Products as being "DOLPHIN SAFE." In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

98.   Defendant knew or should have known, through the exercise of reasonable care, that the Products' labeling and advertising were misleading.

//

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

99.   Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

100.  Defendant's labeling and advertising of the Products were material factors in Plaintiff's decision to purchase the Products. Based on Defendant's labeling and advertising of the Products, Plaintiff reasonably believed that she was purchasing Products that were manufactured using methods that were safe for dolphins. In actuality, the Products were manufactured using methods that kill and injure dolphins. Had she known the truth of the matter, Plaintiff would not have purchased the Products.

101.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff and the Class paid for Products that were different from what they were reasonably expecting when they decided to make their respective purchases. Plaintiff and the Class would not have purchased the Products had they known the claims were false.

102.  Defendant's false and misleading labeling and advertising should be enjoined due to its false, misleading and/or deceptive nature.

103.  By letter dated February 11, 2022, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

104.  Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the label and advertising claim challenged herein.

105.  Plaintiff shall be irreparably harmed if such an order is not granted. Plaintiff also seeks restitution.

//

//

**COUNT TWO**

**Violation of California False Advertising Law,**

**Business & Professions Code 17500,** *et seq.*

*(brought on behalf of the California Subclass)*

106. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

107. Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17500, *et seq.*, individually and on behalf of the Class.

108. California's False Advertising Law, California Business and Profession Code Section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

109. Defendant knowingly spread misleading claims regarding the Products as a means to mislead the public that the Products are manufactured in a manner that is safe for dolphins.

110. Defendant controlled the labeling, packaging, production, and advertising of the Products. Defendant knew or should have known, through the exercise of reasonable care, that its "DOLPHIN SAFE" representations and omissions about the Products were untrue, deceptive, and misleading.

111. Defendant's actions of advertising and displaying misleading claims and falsely labeling the Products "DOLPHIN SAFE" on each Product label are highly likely to deceive consumers in regard to the actual nature of these products.

112. Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

113.  Pursuant to Business & Professions Code Section 17535, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unlawful business practice. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant in amount to be determined by trial.

114.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff and the Class purchased the Products in reliance upon the claims by Defendant that the Products were "DOLPHIN SAFE." Plaintiff would not have purchased the Products if she had known that the claims and advertising as described herein were false.

<u>**COUNT THREE**</u>

**Violation of California Unfair Competition Law,**

**Business & Professions Code Section 17200,** *et seq.*

*(brought on behalf of the California Subclass)*

115.  Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

116.  Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17200, *et seq.*, on their own behalf and on behalf of the Class.

117.  The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice."  Cal. Bus & Prof. Code § 17200.

**A. "Unfair" Prong**

118.  Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.,* a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

119.  Defendant's actions of advertising and labeling the Products as being "DOLPHIN SAFE" are false, misleading, and deceptive.

120.  Defendant's actions of falsely advertising its Products as "DOLPHIN SAFE" cause injuries to consumers.

121.  Through false, misleading, and deceptive advertising and labeling of the Products, Defendant seeks to take advantage of consumer's desires for products that are dolphin safe, while reaping the financial benefits of manufacturing the Products in manner that kills and injures dolphins.

122.   When Defendant claims that the Products are "DOLPHIN SAFE," it provides false promises to consumers, which reduces consumer choice. This also increases the cost to consumers because the unfair business practice allows Defendant to produce the Products more inexpensively, which in turn, stifles competition in the marketplace of manufacturers who incur additional costs in manufacturing a competing product that is truthfully advertised as "DOLPHIN SAFE" because it is sourced from tuna caught using fishing methods which do not kill or injure dolphins.

123.  Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

124.  Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. In doing so, the courts "weigh the utility of the Defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F. 3d 1152, 1169 (9th Cir. 2012).

125.  Defendant's false promise results in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

126.  Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

127.  Defendant's labeling and advertising of the Products is false, deceptive, misleading, and unreasonable, and constitutes an unfair business practice within the meaning of California Business & Professions Code Section 17200.

128.  There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the safety of dolphins in the manufacturing of the Products.

129.  All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

130.  Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and labeling of the Products.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

131.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products had she known that the Products were not created in a dolphin safe manner, or certainly would not have paid a premium.

### B. "Fraudulent" Prong

132.  California Business and Professions Code Section 17200, *et seq.* considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992).

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

133.  Defendant's advertising and labeling of the Products as "DOLPHIN SAFE" is likely to deceive members of the public into believing that the Products are actually dolphin safe when they are manufactured using methods that kill and injure thousands of dolphins annually.

134.  Defendant's advertising and labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

135.  Defendant knew or should have known of its fraudulent conduct.

136.  As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

137.  There were reasonably available alternatives to further Defendant's legitimate business interests. Defendant could have advertised and labeled the Products without making the false and deceptive "DOLPHIN SAFE" statements.

138.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

139.  Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

140.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that the Products were not sold as advertised.

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

141.  **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the "DOLPHIN SAFE" representation.

### C. "Unlawful" Prong

142.  California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

143.  Defendant's advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.,* California Business and Professions Code Section 17500, *et seq.*

144.  Defendant's packaging, labeling, and advertising of the Products as being "DOLPHIN SAFE" are false, deceptive, misleading, unfair, unlawful, and unreasonable.

145.  Defendant knew or should have known of its unlawful conduct.

146.  **Violations of Bus. & Prof. Code 17580,** *et seq.* **(Environmental Advertising).** Section 17580.5 makes it "unlawful for a person to make an untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied," and defines environmental marketing claims consistent with the Green Guides. The Green Guides caution marketers that "[i]t is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit," and warns marketers that such claims, for example, lead consumers to believe that the seller's wares have no negative environmental impact. 16 C.F.R. § 260.4. Similarly, section 17580 also identifies several examples of environmental labeling claims that are interpreted to mean that the product will not harm the environment, including: "environmental choice," "ecologically friendly," "earth friendly," "environmentally friendly," "ecologically sound,"

"environmentally sound," "environmentally safe," "ecologically safe," "environmentally lite," "green product," and similar terms. Indeed, section 17581 not only criminalizes such deceptive marketing claims, but authorizes the Court to award monetary penalties. The Merriam-Webster standard dictionary defines "environment" as "the complex of physical, chemical, and biotic factors (such as climate, soil, and living things) that act upon an organism or an ecological community and ultimately determine its form and survival." As previously and subsequently outlined, this case concerns the use of fishing methods that are known to kill or cause harm to dolphins. Dolphins are a vital part of the natural environment not only because they are living creatures but because they keep ecosystems in balance, disperse nutrients, and mix water in stratified oceans and rivers.  Thus, in labeling and advertising its Products as "DOLPHIN SAFE" while simultaneously using longline and similarly harmful fishing methods to harvest tuna, Defendant is violating California law.

147.  As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

148.  There were reasonably available alternatives to further Defendant's legitimate business interests. Defendant could have truthfully labeled and advertised the Products.

149.  All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

150.  Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Plaintiff and the Class also seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff

restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

151. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that Defendant deceived consumers into believing the Products were "DOLPHIN SAFE."

## COUNT FOUR

### Breach of Express Warranty
### *(brought on behalf of the Class)*

152. Plaintiff repeats and re-alleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

153. Defendant expressly warrants that the Products are "DOLPHIN SAFE," meaning they were sourced from fishing methods that are safe for dolphins and do not kill or harm dolphins.  Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

154. By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the challenged "DOLPHIN SAFE" representation.

155. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

156.  Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the "DOLPHIN SAFE" advertising and label claims.

157.  As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT FIVE

### Breach of Implied Warranty

### *(brought on behalf of the Class)*

158.  Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

159.  Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

160.  Defendant is a merchant with respect to the Products, as it manufactures, distributes, and sells the Products nationwide.

161.  In order to be merchantable, goods must conform to the promises or affirmations of fact made on the container or labeling.

162.  Defendant breached the implied warranty of merchantability to Plaintiff and the Class in that the labels of the Products promised and affirmed that the Products were "DOLPHIN SAFE," meaning they were sourced using fishing methods which do not kill or injure dolphins.

163.  Contrary to the promise and affirmation of fact, the Products do not conform to the challenged "DOLPHIN SAFE" representations and, therefore, Defendant breached its warranties about the Products and their qualities.

164.  As a direct and proximate result of Defendant's breach of its implied warranty, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  amount to be proven at trial.

2  165.  Defendant did not exclude or modify the Products' implied warranty of

3  merchantability.

4  166.  Plaintiff and the Class are therefore entitled to recover all available

5  remedies for said breach.

6  ## COUNT SIX

7  ### Restitution Based On Quasi-Contract/Unjust Enrichment

8  ### (*brought on behalf of the Class*)

9  167.  Plaintiff repeats and re-alleges the allegations set forth above and

10  incorporates the same as if set forth herein at length.

11  168.  Plaintiff brings this cause of action individually and on behalf of the

12  members of the Class against Defendant.

13  169.  By means of Defendant's wrongful conduct alleged herein, Defendant

14  knowingly sold the Products to Plaintiff and members of the Class in a manner that

15  was unfair, unconscionable, and oppressive.

16  170.  Defendant knowingly received and retained wrongful benefits and funds

17  from Plaintiff and members of the Class. In so doing, Defendant acted with

18  conscious disregard for the rights of Plaintiff and members of the Class.

19  171.  As a result of Defendant's wrongful conduct as alleged herein,

20  Defendant has been unjustly enriched at the expense of, and to the detriment of,

21  Plaintiff and members of the Class.

22  172.  Defendant's unjust enrichment is traceable to, and resulted directly and

23  proximately from, the conduct alleged herein.

24  173.  Under the common law doctrine of unjust enrichment, it is inequitable

25  for Defendant to be permitted to retain the benefits it received, without justification,

26  from selling the Product to Plaintiff and members of the Class in an unfair,

27  unconscionable, and oppressive manner. Defendant's retention of such funds under

28  such circumstances constitutes unjust enrichment.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

174.  The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

175.  Plaintiff and members of the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

a. **Certification**: For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief**: For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. **Injunction**: For an order enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement**: For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Attorneys' Fees & Costs**: For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f. **Pre/Post-Judgment Interest**: For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

g. **All Just & Proper Relief**: For such other and further relief as the Court deems just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff demand a jury trial on all triable issues.

DATED: August 25, 2022                    **CLARKSON LAW FIRM, P.C.**

/s/ Bahar Sodaify
Ryan J. Clarkson, Esq.
Bahar Sodaify, Esq.
Christina N. Mirzaie, Esq.

*Attorneys for Plaintiff*

66

CLASS ACTION COMPLAINT