**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Christina N. Mirzaie (SBN 333274)
cmirzaie@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH HENRIQUEZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>ALDI INC., a corporation,<br><br>        Defendant. | Case No. 2:22-cv-06060-JLS-JEM<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et seq.*<br><br>2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br><br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br><br>4. BREACH OF EXPRESS WARRANTY<br><br>5. BREACH OF IMPLIED WARRANTY<br><br>6. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION .................................................................. 3

II.   JURISDICTION ................................................................... 5

III.  VENUE ................................................................................ 5

IV.   PARTIES ............................................................................. 6

V.    FACTUAL ALLEGATIONS ................................................ 8

    A.    Overview of "Dolphin Safe" Tuna ................................ 8

    B.    Dolphin Safety Legislation ......................................... 13

    C.    Defendant's "Dolphin Safe" Representations ................ 17

    D.    The Fishing Methods Utilized to Source the Tuna in Defendant's Products Render Defendant's "Dolphin Safe" Representations False and Deceptive ...................................................... 30

    E.    Defendant's Traceability Representations ..................... 47

    F.    Defendant's "Dolphin Safe" Representations are False, Deceptive, and Misleading to Plaintiff and Other Reasonable Consumers .......... 48

    G.    Defendant Misled Plaintiff and Other Reasonable Consumers Who Relied on the Material and False "Dolphin Safe" Representations to Their Detriment ...................................................... 53

    H.    No Adequate Remedy at Law ...................................... 55

VI.   CLASS ALLEGATIONS .................................................... 59

    COUNT ONE ....................................................................... 63

    COUNT TWO ...................................................................... 66

    COUNT THREE ................................................................... 67

    A.    "Unfair" Prong ............................................................ 68

    B.    "Fraudulent" Prong ..................................................... 70

    C.    "Unlawful" Prong ....................................................... 71

    COUNT FOUR ..................................................................... 73

    COUNT FIVE ....................................................................... 74

    COUNT SIX ......................................................................... 75

PRAYER FOR RELIEF ............................................................. 76

JURY TRIAL DEMANDED ....................................................... 77

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Elizabeth Henriquez ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, bring this class action against Defendant Aldi Inc. ("Defendant" or "Aldi"). Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## I. INTRODUCTION

1.      Through its false and deceptive labeling and advertising scheme, Aldi promises consumers that its "Dolphin Safe" tuna products, including its Northern Catch Chunk Light Tuna in Water and Northern Catch Solid White Tuna Albacore in Water (the "Products"), are sustainably sourced in a manner that does not harm or kill dolphins, thereby setting itself to a higher standard than required under the Dolphin Protection Consumer Information Act ("DPCIA") (16 U.S.C. § 1385). Aldi knowingly and intentionally makes these promises about its Products while utilizing unsustainable fishing methods that are known to harm and kill dolphins in order to increase profits at the expense of environmentally concerned consumers and innocent marine life, and to gain an unfair economic advantage over its law-abiding competitors that sell truly "Dolphin Safe" tuna.

2.      As consumers become more environmentally conscious of how their purchasing decisions impact the environment, consumers value, and are willing to pay more for seafood with sustainable and eco-positive attributes, such as sustainably sourced "Dolphin Safe" tuna products.[1] However, the grim reality is that such

---

[1] Robert J. Johnston & Cathy A. Roheim, *A Battle of Taste and Environmental Convictions for Ecolabeled Seafood: A Contingent Ranking Experiment*, 31 JOURNAL OF AGRIC. AND RESOURCE ECON. (August 2006), https://www.jstor.org/stable/40987319.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

attributes have less to do with conservation and more to do with companies, like Aldi, pursuing their own special interests.[2]

3.     For Aldi to gain market share in the tuna product marketplace, an industry worth roughly $42 billion dollars[3] with 98% of canned tuna being packaged with some sort of "Dolphin Safe" labeling,[4] Aldi has set its "Dolphin Safe" tuna Products to a higher standard than required by the DPCIA through its various representations and promises of dolphin safety and sustainability, including: (1) affixing its own unique "Dolphin Safe" logo on the Products' labels, packaging, and official website; (2) advertising that the fishing methods used to source the tuna in the Products, purse seine (free school) or longline, pole and line, are sustainable and "Dolphin Safe"; (3) promising to consumers on its official website and social media that its tuna sourcing methods are sustainable; (4) implementing its own unique "Wild Caught" logo on the Products' label to support its sustainability representations; (5) promising "100%" responsible sourcing for all its seafood products; and (6) highlighting its involvement in organizations like the International Seafood Sustainability Foundation, the Seafood Task Force, and the Ocean Disclosure Project, to perpetuate its dolphin-safe promise.

4.     Plaintiff herein alleges that Defendant's "Dolphin Safe" representations are false, misleading, deceptive, unfair, fraudulent, and unlawful under California's Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750, *et seq.*, Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, *et seq.*, and the False Advertising Law ("FAL"), 17500, *et seq.* Defendant has also been unjustly enriched and has breached its express and implied warranties about the Products. Defendant's false and deceptive claims are uniformly advertised through its

---

[2] K. William Watson, '*Dolphin Safe' Labels on Canned Tuna Are a Fraud*, FORBES (April 29, 2015), https://www.forbes.com/sites/realspin/2015/04/29/dolphin-safe-labels-on-canned-tuna-are- a-fraud/?sh=17fca69e295e.

[3] Tom Levitt, *Overfishing Puts $42bn Tuna Industry at Risk of Collapse*, THE GUARDIAN, May 2, 2016, https://www.theguardian.com/sustainable-business/2016/may/02/overfishing-42bn-tuna-industry-risk-collapse.

[4] Watson, *supra* note 2.

FIRST AMENDED CLASS ACTION COMPLAINT

labeling, packaging, advertising, and online. Through its false and deceptive advertising, Defendant has misled Plaintiff and other reasonable consumers into buying the Products at stores across California and the United States based on its material claims that the Products are sourced and manufactured in a manner that is "Dolphin Safe."

5.      Plaintiff brings this action individually and on behalf of those similarly situated to represent a Nationwide Class and a California Class (described *infra*). Plaintiff seeks injunctive relief to cure Defendant's unlawful labeling and advertising of the Products and restitution for money wrongfully acquired by Defendant.

## II.   **JURISDICTION**

6.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

7.      Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and doing business in California.

## III.  **VENUE**

8.      Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California, resides in this District, and purchased the Product within this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

but not limited to, label, packaging, and Internet and social media advertisements, among other advertising.

## IV.  **PARTIES**

9.  **Plaintiff Elizabeth Henriquez.** The following is alleged based upon personal knowledge: (1) Plaintiff is, and at all times relevant hereto was, a citizen and resident of Los Angeles County, California. (2) Plaintiff purchased Northern Catch Chunk Light Tuna in Water from an Aldi store in Los Angeles, CA in 2021. Plaintiff paid approximately $0.75 for the Product. (3) In making her purchase, Plaintiff relied upon Defendant's "Dolphin Safe" promises and representations on the Product's labeling, packaging, and advertising. Plaintiff believed that Defendant used fishing methods that did not harm or kill dolphins and was unaware that the Products were not "Dolphin Safe" as Defendant represented and promised. The Product was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. The Product's "Dolphin Safe" labeling and advertising representations led Plaintiff to believe that the tuna sourced for sale of the Product were caught using fishing methods that do not kill or harm dolphins. (4) At the time of purchase, Plaintiff did not know that the "Dolphin Safe" representation was false—i.e., Plaintiff did not know that the tuna sourced for the Product was caught using fishing methods that kill and injure dolphins. (5) If Plaintiff had known that the Products were not "Dolphin Safe," then Plaintiff would not have purchased the Products, and certainly would not have paid a "premium" for such a valued perceived benefit. (6) Plaintiff continues to see the Products available for purchase and intends to purchase them again under the assumption that Defendant has cured its unlawful business practices and the "Dolphin Safe" representations are in fact true —i.e., Defendant truthfully used sustainable fishing practices which do not kill or harm dolphins in the sourcing of the tuna used for the Products. (7) Plaintiff is not personally familiar with, and does not possess any specialized knowledge skill, experience, or education, in the manufacture of tuna

FIRST AMENDED CLASS ACTION COMPLAINT

products, commercial fishing methods, or dolphin feeding practices, and, therefore, Plaintiff has no way of determining whether Defendant's Products are actually "Dolphin Safe" as it promises. (8) Plaintiff is, and continues to be, unable to rely on the truth of the "Dolphin Safe" representations.

10. **Plaintiff's Likely Future Harm**. Plaintiff intends to purchase the Products again with the hope of consuming tuna products which, as represented, are truly "Dolphin Safe," despite the fact that they were once marred by false advertising and labeling. If by that time the Products are not improved by using "Dolphin Safe" fishing practices, as Plaintiff would reasonably, but incorrectly, assume, then Plaintiff is at risk of being deceived again. In that regard, Plaintiff is an ordinary consumer who has no ability to know what fishing practices Defendant is actually using or whether those fishing practices kill or injure dolphins. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed its fishing practices such that Plaintiff may buy the Products again, believing they were no longer falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the "Dolphin Safe" representations.

11. **Defendant Aldi.** Defendant Aldi Inc. is an Illinois corporation. Defendant maintains its principal place of business at 1200 North Kirk Road, Batavia, IL 60510. Defendant was and currently is doing business in the State of California at all relevant times. Aldi Inc., directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Aldi Inc. is an owner, manufacturer, and/or distributor of the Northern Catch Tuna Product line and is a company that created and/or authorized the false, misleading, and deceptive labeling and packaging for the Products. The unfair, unlawful, deceptive, and misleading "Dolphin Safe" representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout this District, California, and the nation by Defendant

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and its agents to deceive and mislead consumers therein into purchasing the Products and paying a premium for the falsely advertised Products' attributes.

12. ***Respondent Superior***. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the State of California and the nation by Defendant and its agents in order to deceive and mislead consumers into purchasing the Products.

## V.   FACTUAL ALLEGATIONS

### A.   Overview of "Dolphin Safe" Tuna

13. For decades, commercial fisheries across the globe have posed the greatest threat to marine wildlife, wiping out 90% of all large fish and endangering cetacean species (dolphins, whales, and porpoises), killing roughly 300,000 cetaceans each year.[5] As consumers have become more aware of the damaging effects of commercial fishing on both oceanic fish and mammal species alike, calls for efforts to curb the harmful effects of certain fishing practices have become more prevalent within the fishing industry.

14. Development of modern fishing techniques and technology such as monofilament fishing line in the early 1960s made it possible for fisheries to expand their fishing practices.[6] Replacing fibrous fishing line with stronger more durable monofilament fishing line allowed commercial longline fishermen to move from short sets of a few dozen hooks, to longlines that currently average 28 miles long with thousands of hooks attached.[7] Once set, these lines can stay in the water for hours,

---

[5] *Seaspiracy*, SEASPIRACY, https://www.seaspiracy.org/.

[6] *Fishing Line*, NEW WORLD ENCYCLOPEDIA, https://www.newworldencyclopedia.org/entry/Fishing_line.

[7] *Fishing Gear: Pelagic Longlines*, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-pelagic-longlines.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

resulting in overfishing and significant bycatch—or the capture of unintended species, like dolphins.[8]

15.   Purse seine fishers also benefited from the new fishing line technology, and were able to set nets around entire schools of fish in one go.[9] These new nets were able to reach up to 6,500 feet in length and 650 feet in depth, making purse seine a non-selective fishing method that captures everything it surrounds including protected species.[10] Fishermen in the Eastern Tropical Pacific Ocean ("ETP") noticed that dolphins and tuna frequently swam together, with the dolphins swimming on top of the tuna.[11] Using these new long purse seine nets, fishermen would herd the dolphins and encircle both the dolphins and the tuna swimming underneath them, along with any other animals in the area, then seal the bottom to enclose the animals and hoist them on board to harvest the tuna. Fishermen who used to catch tuna one at a time by rod, line, and baitless hook were suddenly able to catch large quantities of tuna. By the end of the 1960s, between 250,000 and 500,000 dolphins were dying in the ETP due to these fishing methods.[12]

16.  In 1972, Congress enacted the Marine Mammal Protection Act ("MMPA"), based on its finding that some marine mammals are in danger of depletion or extinction, and set forth intent to conserve marine mammals.[13] Congress recognized a need to encourage development of international arrangements for research on and conservation of marine mammals, stating that conservation and

---

[8] *Id.*

[9] Kenneth Brower, *The Destruction of Dolphins*, THE ATLANTIC MONTHLY (July 1989), https://www.theatlantic.com/past/docs/issues/89jul/dolphin.htm.

[10] *Fishing Gear: Purse Seine*, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-purse-seines.

[11] Lisa T. Balance, et al., *A History of the Tuna-Dolphin Problem: Successes, Failures, and Lessons Learned*, FRONT. MAR. SCI. (Nov. 23, 2021), https://www.frontiersin.org/articles/10.3389/fmars.2021.754755/full.

[12] *Id.*

[13] 16 U.S.C. §1361, *et seq.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

protection of marine mammals and their habitats is necessary to ensure continuing availability of marine mammals and marine mammal products that move in international and interstate commerce and affect marine ecosystems.[14] Congress also recognized that marine mammals are of international significance, and laid out congressional intent to protect them with sound policies of resource management, with the primary objective of maintaining the health and stability of the marine ecosystem and when possible, maintain an optimum sustainable population.[15]

17. Dolphins—small-toothed cetaceans that prey on low-mid trophic level fishes and cephalopods—in particular, needed imminent protection as unsustainable tuna fishing practices continued to pose a major threat to dolphin safety and, consequently, the ecosystem.[16] Like all predators, dolphins play an important role in keeping ecosystems balanced: "Without dolphins, the animals they prey on would increase in number, and their predators wouldn't have as much to eat. This would disrupt the natural balance in the food chain and could negatively affect other wildlife and the health of the ocean environment."[17] By dispersing nutrients and mixing water in stratified oceans and rivers, dolphins play a vital role in sustaining and maintaining all sea life.[18] Further, because billions of people depend on the ocean and oceanic fish for food, dolphins function to sustain human life as well. Dolphins, who are extremely

---

[14] 16 U.S.C. §1361(5)-(6)
[15] *Id.*
[16] *Threats to Dolphins & Whales*, DOLPHIN RESEARCH AUSTRALIA INC., https://www.dolphinresearchaustralia.org/learn-about-dolphin-whales/threats-to-dolphins/.
[17] *Bottlenose Dolphins: Our Smart, Sociable Stars of the Sea*, WWF, https://www.wwf.org.uk/learn/wildlife/dolphins#:~:text=Without%20dolphins%2C%20the%20animals%20they,health%20of%20the%20ocean%20environment.
[18] Jeremy Kiszka, et al., *Functional Roles and Ecological Importance of Small Cetaceans in Aquatic Ecosystems*, FRONTIERS (Feb. 25, 2022), https://www.frontiersin.org/articles/10.3389/fmars.2022.803173/full.

FIRST AMENDED CLASS ACTION COMPLAINT

intelligent animals, may very well be the Earth's second smartest creatures next to humans.[19]

18.  Yet, despite their ecological importance and extreme intelligence, dolphins are disappearing at alarming rates, and are particularly threatened by today's commercial fishing industry. In fact, sixteen species of whales and dolphins are considered in danger of extinction due to human influences.[20]

19.  For instance, in 1988, video footage taken by an undercover biologist working with Earth Island Institute aired on National U.S. television depicting the capture of dolphins in purse seine tuna fishing nets, sparking national concern for dolphin safety from consumers and environmental organizations.[21] A narrator voices over the footage, explaining that the dolphins are encircled and unable to escape because of exhaustion, unwillingness to leave their pod and young, and devices that impact their safety and ability to use sonar.[22] The nets were set in the ETP where, at the time, almost 25% of the worlds yellowfin tuna were sourced.[23]

20.  Galvanized by the release of this footage, a host of environmental groups, including Earth Island Institute, launched a boycott of canned tuna to stop the killing of dolphins.[24]

//

---

[19] David Grimm & Greg Miller, *Is a Dolphin a Person?*, SCIENCE (Feb. 21, 2010), https://www.science.org/content/article/dolphin-person.

[20] *Endangered Species*, DOLPHIN RESEARCH CENTER, https://dolphins.org/endangered_species#:~:text=Overview-Overview,to%20the%20Endangered%20Species%20Act.

[21] Brower, *supra* note 9.

[22] Liz Allen, *"Dolphin-Safe" Tuna Label*, FORBES (Apr. 28, 2021), https://www.forbes.com/sites/allenelizabeth/2021/04/28/the-origin-of-the-dolphin-safe-tuna-label/?sh=7c36b6943c11.

[23] James Joseph, *The Tuna-Dolphin Controversy in the Eastern Pacific Ocean: Biological, Economic, and Political Impacts*, 25 OCEAN DEVELOPMENT AND INTERNATIONAL LAW 1 (1994), https://www.tandfonline.com/doi/abs/10.1080/00908329409546023.

[24] Louis Sahagun, *Protests Urge Tuna Boycott Over Killings of Dolphins*, LOS ANGELES TIMES (April 12, 1988).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

21.   The first widespread manifestation of consumer concern over dolphin deaths came with the canned-tuna boycott, which caused seafood producers to realize that dolphin safety was material to consumers' purchasing decisions and something they valued.[25] Consumers were choosing to purchase sustainably sourced dolphin-safe tuna and other seafood products over those that lacked these environmental attributes.[26] This shifted market demand for producers to supply sustainably sourced dolphin-safe products which created a price premium that consumers were willing to pay to obtain such eco-friendly products.[27]

22.   In response to the increase in consumer demand for dolphin-safe tuna in 1990, the MMPA was amended to adopt the Dolphin Protection Consumer Information Act ("DPCIA"), in part resulting from recognition that consumers wanted to know if the tuna they purchased was dolphin-safe.[28] As fully explained *infra*, this amendment established an official "Dolphin Safe" label (depicted in **Exhibit 1**, *infra*), outlining situations in which it would be a violation of 15 U.S.C. §45 to label a tuna product with either the official "Dolphin Safe" label, the term "Dolphin Safe" or any mark or label depicting dolphins or marine mammals.[29]

23.   As consumers have become more aware of the damaging effects of commercial fishing on both oceanic fish and mammal species alike, calls for efforts to curb the damaging effects of unsustainable, harmful commercial fishing practices have become more prevalent in the fishing industry. Recently it has been discovered

---

[25] Lorraine Mitchell, *Dolphin-Safe Tuna Labeling*, AGRICULTURAL ECONOMIC REPORT (AER-793) 2 (January 2001), https://www.ers.usda.gov/webdocs/publications/41203/18892_aer793f.pdf?v=9767.6.

[26] Johnston & Roheim, *supra* note 1.

[27] Chin-Hwa Jenny Sun, et al., Will American Consumers Pay More for Eco-friendly Labeled Canned Tuna? Estimating US Consumer Demand For Canned Tuna Varieties Using Scanner Data, 79 MARINE POLICY 62 (May 2017), https://doi.org/10.1016/j.marpol.2017.02.006.

[28] *Id.*

[29] 16 U.S.C. §1385, *et seq.*

FIRST AMENDED CLASS ACTION COMPLAINT

that some of the largest tuna companies in the industry are defrauding consumers by claiming their products are "Dolphin Safe," when they are not.[30] Many tuna products, including Aldi's Products,  that tout the "Dolphin Safe" claim are still made with tuna caught using unsustainable fishing methods, like purse seines and longlines, which are known to kill and injure dolphins and lead to large numbers of bycatch.

**B.     Dolphin Safety Legislation**

24.    For 50 years now, Congress has undertaken legislative efforts to conserve marine mammal populations.[31] Legislation began in partial response to concern from scientists and the general public about the danger of extinction of marine mammals as a result of human activities.[32] Recognizing that the health and stability of the marine ecosystem is both directly and indirectly threatened by fisheries, habitat loss, and human activities, efforts to improve the threatened status of many marine mammals have been undertaken.[33] By setting forth a national policy "to prevent marine mammal species and population stocks from diminishing, as a result of human activities, beyond the point at which they cease to be significant functioning elements of the ecosystems of which they are a part," Congress has paved the way for great progress in marine conservation.[34] Despite their efforts, human activity such as commercial fishing continues to threaten marine ecosystems and the animals that rely on them.[35]

---

[30] *How Safe is Dolphin-Safe Tuna, Really?,* NATIONAL GEOGRAPHIC, https://www.nationalgeographic.com/animals/article/how-dolphin-safe-is-canned-tuna.

[31] *Marine Mammal Protection Act, Celebrating 50 Years*, MARINE MAMMAL COMMISSION, https://www.mmc.gov/about-the-commission/our-mission/marine-mammal-protection-act/.

[32] *Id*.

[33] *Id*.

[34] *Id*.

[35] *Threatened and Endangered Species,* MARINE BIO, https://www.marinebio.org/conservation/marine-conservation-biology/threatened-endangered-

FIRST AMENDED CLASS ACTION COMPLAINT

25.     **Marine Mammal Protection Act.** In 1972, Congress enacted the MMPA and established congressional intent to protect all marine mammals, recognizing that certain species are in danger of extinction or depletion as a result of man's activities. The primary objective of the MMPA is maintaining the health and stability of the marine ecosystem and when possible, maintain an optimum sustainable population.[36] Amongst the species threatened by human activities are many species of dolphins.[37]

26.     **Dolphin Protection Consumer Information Act and the Creation of the "Dolphin Safe" Logo.**  On the heels of boycotts by environmental groups and consumers in response to video footage showing dolphins dying in fishing gear, Congress enacted the DPCIA in 1990. Congress recognized that dolphins and other marine mammals were frequently killed during fishing operations. This Act, which establishes a Federal minimum set of requirements to label a product "Dolphin Safe," was adopted because Congress recognized that "consumers would like to know if the tuna they purchase is falsely labeled as to the effect of the harvesting of the tuna on dolphins."[38] The DPCIA makes it a violation of 15 C.F.R. 45 to label tuna or tuna products "Dolphin Safe" using either the official "Dolphin Safe" mark depicted in **Exhibit 1,** or any other mark or label depicting dolphins, porpoises, or marine mammals in an attempt to communicate that the tuna product is "Dolphin Safe" unless certain minimum requirements are met.[39]

27.     Requirements for use of a mark or label depicting a dolphin to communicate to consumers that the product is "Dolphin Safe" without violating 15 C.F.R. 45 are set forth in 16 U.S.C. 1385 and codified under 50 C.F.R. §216, subpart

---

species/#:~:text=Marine%20animals%20teetering%20above%20extinction,of%20sa wfishes%20and%20blue%20whales.

[36] 16 U.S.C. §1361 *et seq.*

[37] *Threats,* WORLD WILDLIFE FUND, https://wwf.panda.org/discover/knowledge_hub/endangered_species/cetaceans/threa ts/.

[38] 16 U.S.C. § 1385(b)(3)

[39] 16 U.S.C. §1385(d)(1); *see also* 50 C.F.R. §216.90 *et seq.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

H. The tuna cannot have been caught using driftnets.[40] If caught in the ETP using a large purse seining vessel, a captain must certify that no nets were intentionally deployed to encircle dolphins and that no dolphins were seriously injured or killed in the specific sets in which the tuna were caught, tracking and verification documentation be submitted to the National Oceanic and Atmospheric Administration ("NOAA"), and if imported, requires an independent observer be aboard during the entire trip.[41] Tuna caught outside the ETP on a purse seine vessel require the tuna to be accompanied by a written statement by a captain certifying that no fishing gear was intentionally deployed to encircle dolphins during the voyage on which the tuna was harvested.[42]

28.   For tuna caught using other fishing methods, to use the official label without violating 15 C.F.R. 45, a captain of the fishing vessel who has completed the National Marine Fisheries Service Tuna Tracking and Verification Program training must certify that no fishing gear was intentionally deployed on or used to encircle dolphins, and that no dolphins were killed in the specific set or gear deployment in which the tuna was caught.[43]

29.   If the criteria set forth in Section 1385(d) is satisfied, then Section 1385(d)(3)(A) of the DPCIA identifies the dolphin safe mark or label that must be used if that particular producer chooses to advertise their product as "dolphin safe" (*see* **Exhibit 1** [U.S. Dept. of Commerce Official "dolphin safe" logo]) without violating 15 C.F.R. 45. Section 1385(d)(3)(C) specifically states that no other mark or label, other than the one set forward by subparagraph A, should be used to communicate a product is dolphin-safe, unless: (i) no dolphins were killed or seriously injured in the sets or other gear deployments in which the tuna were caught; (ii) the label is supported by a tracking and verification program which is comparable in

---

[40] 50 C.F.R. §216.91(a)(3); *see also* 16 U.S.C. §1385(d)(1)(b)(ii)
[41] *Id*.
[42] 16 U.S.C. 1385(d)(1)(B)
[43] 50 C.F.R. §216.91(a)(3)(iii)(a)-(b)

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

effectiveness to the program established under subsection (f); *and* (iii) the label complies with all applicable labeling, marketing, and advertising laws and regulations of the Federal Trade Commission, including any guidelines for environmental labeling."[44]

**Exhibit 1**[45]



30.    Under the DPCIA, it is an FTCA violation to label tuna products "Dolphin Safe" or use any other term or mark unless the requirements as outlined herein are met. The DPCIA and FTCA create a minimum set of requirements for use of the dolphin-safe label, and do not create a substantive right for use of any such label, regardless of any other laws or regulations.

31.    **FTC Labeling Regulations.** Section 5 of the FTC's Consumer Deception Act prohibits "unfair or deceptive acts or practices in or affecting commerce."[46] Deceptive acts are any practices where a "representation, omission, or practice misleads or is likely to mislead the consumer, [a] consumer's interpretation of the representation, omission, or practice is considered reasonable under the circumstances; and [t]he misleading representation, omission, or practice is

---

[44] 16 U.S.C. § 1385(d)(3)(C).

[45] Dolphin-Safe Tuna Labeling; Official Mark, 65 Fed. Reg. 34408 (June 29, 2000).

[46] Federal Trade Commission Act Section 5: Unfair or Deceptive Acts or Practices, https://www.federalreserve.gov/boarddocs/supmanual/cch/200806/ftca.pdf.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

material."[47] Defendant's representation that its Product is "Dolphin Safe" is misleading since Defendant uses fishing practices known to kill and seriously injure dolphins.

32.    This Complaint centers around Defendant's misleading "Dolphin Safe" promises and representations that exceed the DPCIA requirements and how Defendant breached those promises in violation of California's consumer protection laws and common law.

### C.    Defendant's "Dolphin Safe" Representations

33.    Defendant attempts to set itself apart from other major retailers who carry "Dolphin Safe" tuna products by introducing to consumers its own "Dolphin Safe" tuna Products through an extensive marketing campaign premised on its dolphin safety and sustainability promises that exceed DPCIA requirements, as follows:

- Defendant includes its own unique "Dolphin Safe" logo on its Products' packaging and official website (*see* **Exhibits 2-5**, *infra*);

- Defendant promises that its Products are "Dolphin Safe" throughout its Products' packaging, advertising, and official website (*see* **Exhibits 2-6**, *infra*);

- Defendant promises the fishing methods utilized to source the tuna in its Products is sustainable and dolphin-safe (*see* **Exhibits 9 and 10**);[48]

- Defendant displays its own unique "Wild Caught" logo on its Products' packaging and official website in support of its sustainability representations that it "[e]xclude[s] illegally caught fish," "[r]educe[s]

---

[47] *Id*.
[48] ALDI Seafood Buying Policy, ALDI, https://corporate.aldi.us/fileadmin/fm-dam/Corporate_Responsibility/Supply_chain/ALDI_USA_Sustainable_Seafood_Policy_2021.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

by-catch," [m]inimize[s] impact on the ecosystem," and "[i]mprove[s] traceability throughout the entire supply chain"[49] (*see* **Exhibits 2-5,** *infra*);

- Defendant makes sustainability promises on its social media regarding its seafood products, which include the Products. On its Instagram profile (@aldiusa), Defendant emphasizes its commitment to sustainability by claiming that, in "sourcing responsibly," it has "[i]ncreased supply chain transparency through a partnership with the Ocean Disclosure Project." On its Twitter account, Defendant indicates: "We pride ourselves on a smart, sustainable approach to sourcing products for our customers …" (see Exhibit 6, 8, infra);[50]

- Defendant promises on its "Aldi US Seafood Buying Policy" webpage, "to source 100% of [its] fresh, frozen and shelf-stable fish and seafood products from responsible sources," which includes the Products;[51]

- Defendant claims that its tuna suppliers participate in the International Seafood Sustainability Foundation ("ISSF"), which promises to prioritize the long-term conservation and sustainable use of tuna stocks, illegal fishing prevention, reducing bycatch, and promoting ecosystem health;[52]

- Defendant promotes its participation in the Sustainable Fisheries Partnership ("SFP"),[53] a "leading non-government organization" in

---

[49] *Id.*

[50] ALDI USA @ALDIUSA, TWITTER (April 22, 2018), https://twitter.com/aldiusa/status/988070043639582721?s=46&t=nqeMfOurWSoKsXkm80gt9w&fbclid=IwAR29Jpwdj-CdNlZfymZJeJCu3Ouq82WmapsRwqh4G6RPXwaO4475ep9jXoU.

[51] ALDI Seafood Buying Policy: Responsible Sourcing Commitment, ALDI, https://corporate.aldi.us/fileadmin/fm-dam/Corporate_Responsibility/Supply_chain/ALDI_USA_Sustainable_Seafood_Policy_2021.pdf.

[52] *Id.*

[53] *Mobilize the Seafood Supply Chain* (2022), SUSTAINABLE FISHERIES PARTNERSHIP https://sustainablefish.org/how-we-work/mobilize-the-seafood-supply-chain/.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

"sustainable fishing" that "acts as our independent advisor to continuously improve our Seafood Buying Policy…."[54]

- Defendant advertises that it is a member of the Seafood Task Force ("STF"), an industry-led group that purportedly aims to drive greater business confidence for global seafood buyers purchasing from Asia by tackling fishing practices in Thailand's seafood supply chain[55] whose "aim is to achieve clean seafood supply chains from vessel to retailer;"[56]

- Defendant touts its participation in the Ocean Disclosure Project ("ODP"),[57] an organization that publishes voluntarily disclosed wild caught seafood sourcing information to the public on behalf of paying participants such as seafood companies, retailers, suppliers, and manufacturers in order to "[i]ncrease[] seafood transparency," to further promote its sustainability representations;[58]

- Defendant promises responsible sourcing and tracing for all its seafood products, including the Products.[59]

34. **The Products' "Dolphin Safe" Label Representations.** Defendant labels and promises on every can of the Products that it is "Dolphin Safe" and incorporates its own "Dolphin Safe" logo. The Products also have their own dedicated

---

[54] ALDI Seafood Buying Policy, *supra* note 48.

[55] Seafood Task Force, THE SEAFOOD ALLIANCE FOR LEGALITY AND TRACEABILITY ("SALT"), https://www.salttraceability.org/effort/seafood-task-force/#:~:text=The%20Seafood%20Task%20Force%20(formerly,Thai%20processors%20and%20 feed%20companies.

[56] ALDI Seafood Buying Policy: Cooperation with Partners, ALDI, https://corporate.aldi.us/fileadmin/fm-dam/Corporate_Responsibility/Supply_chain/ALDI_USA_Sustainable_Seafood_Policy_2021.pdf.

[57] *Ocean Disclosure Project: Transparency in Seafood*, SUSTAINABLE FISHERIES PARTNERSHIP, https://sustainablefish.org/tools-science-services/ocean-disclosure-project/.

[58] *About Us*, OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/about-us.

[59] ALDI Seafood Buying Policy, *supra* note 48.

19

webpage on Defendant's website, where the Products are advertised as "Dolphin Safe." *See* **Exhibits 2-5**, *infra*.[60]

**Exhibit 2**



**Exhibit 3**



---

[60] Website descriptions and images of the Products were taken from Defendant's official website:
Exhibit 2 & 4: https://www.aldi.us/en/products/pantry-essentials/canned-foods/detail/ps/p/northern-catch-chunk-light-tuna-in-water/.
Exhibit 3 & 5: https://www.aldi.us/en/products/pantry-essentials/canned-foods/detail/ps/p/northern-catch-solid-white-tuna-1/.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibit 4**



**Exhibit 5**



FIRST AMENDED CLASS ACTION COMPLAINT

35. **Defendant's Sustainablity Representations In Support Of Its "Dolphin Safe" Promise.** Defendant makes representations of sustainable tuna fishing and sourcing practices to further support its heightened "Dolphin Safe" promise. Pursuant to its "Seafood Buying Policy," Defendant expressly promises reaching its goal to sustainably source its seafood from wild fisheries by "[s]ourcing only from suppliers that share [its] commitment to sustainability and transparency," "[r]efusing to source from any fishery and/or vessel found to have contributed to Illegal, Unreported and Unregulated (IUU) fishing," "[i]ncreasing the number of seafood products that come from sustainable sources and decreasing the number of seafood products that does not meet Aldi US criteria as responsibly sourced," and its commitment to "responsible sourcing."[61] Defendant also represents that it "actively partners" with the SFP, an organization that engages and supports seafood supply chains in "rebuilding depleted fish stocks and reducing the environmental impacts of fishing and fish farming."[62] Defendant further represents that the SFP provides Defendant "with information to assess the sustainability of the seafood products [they] offer and identify any necessary improvements."[63] Despite these representations, and unbeknownst to consumers, Defendant's suppliers utilize unsustainable fishing methods known to kill and harm dolphins to source the tuna in the Products.

36. Defendant also indicates in its Seafood Buying Policy webpage that it is a member of the STF, an industry-led group that purportedly aims to drive greater business confidence for global seafood buyers purchasing from Asia by tackling fishing practices in Thailand's seafood supply chain[64] whose "aim is to achieve clean

---

[61] ALDI Seafood Buying Policy: Responsible Sourcing Commitment, *supra* note 51.
[62] ALDI Seafood Buying Policy: Cooperation with Partners, *supra* note 56.
[63] *Id*.
[64] Seafood Task Force, THE SEAFOOD ALLIANCE FOR LEGALITY AND TRACEABILITY ("SALT"), https://www.salttraceability.org/effort/seafood-task-force/#:~:text=The%20Seafood%20Task%20Force%20(formerly,Thai%20processors%20and%20 feed%20companies.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

seafood supply chains from vessel to retailer."[65] The STF however acknowledges "the complexity of fishing supply chain, and issues surrounding labor and illegal fishing in seafood supply chains,"[66] which *prevents* "100%" transparency in the seafood industry. To achieve supply chain transparency, a company must know what is happening throughout every step of its supply chain.[67] Defendant cannot truthfully represent full transparency in its seafood supply chain due to issues surrounding transparency in the fishing industry.[68]

37.     Defendant further advertises that all of its suppliers must have an active memberships in the ISSF.[69] The ISSF is a partnership among global scientists, tuna processors, and the World Wildlife Fund, with the aim to "undertake science-based initiatives for the long-term sustainability of tuna stocks, reduction of by-catch and promotion of ecosystem health."[70] Although the ISSF claims to be committed to long-term conservation and sustainable use of global tuna fisheries, the ISSF is actually "nothing more than a front for giant tuna companies," according to Greenpeace.[71]

38.     The ISSF was founded in 2009, a time when environmental organizations and consumers alike were putting more pressure on the tuna industry to change its

---

[65] ALDI Seafood Buying Policy: Cooperation with Partners, *supra* note 56.

[66] *Aims and Objectives*, SEAFOOD TASK FORCE, https://www.seafoodtaskforce.global/aims-objectives/.

[67] *Fake my Catch*, GREENPEACE, https://www.greenpeace.org/usa/wp-content/uploads/2022/08/FakeMyCatch_EN.pdf.

[68] *The Task Force's Overarching Objective Is - Supply Chain Oversight*, SEAFOOD TASK FORCE, https://www.seafoodtaskforce.global/aims-objectives/.

[69] *ALDI USA Sustainable Seafood Policy*, ALDI, https://corporate.aldi.us/fileadmin/fm-dam/Corporate_Responsibility/Supply_chain/ALDI_USA_Sustainable_Seafood_Policy_2021.pdf.

[70] *Tuna 101*, BUMBLE BEE, https://www.bumblebee.com/seafood-school/tuna-101/#:~:text=The%20ISSF%20mission%20is%20to,Organizations%20(RFMO)%20scientific%20committees.

[71] *How the International Seafood Sustainability Foundation (ISSF) Environmental Action*, GREENPEACE, https://www.greenpeace.org/usa/oceans/sustainable-seafood/how-international-seafood-sustainability-foundation-blocks-environmental-action/.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

destructive practices. The eight founding members of the ISSF were all "tuna industry giants," who, at the time of the foundation's finding, controlled fifty percent of the global tuna market between them. Since its founding, ISSF has consistently been funded by the corporations that it claims to oversee, receiving hundreds of thousands of dollars in donations from these "tuna industry giants."[72]

39.   Despite requiring suppliers to have an active ISSF membership, Defendant's use of longlines and purse seine nets, which are well-known, harmful fishing techniques, to source the tuna in the Products, demonstrates that an ISSF membership is inconsequential and has no bearing on Defendant's false and deceptive "Dolphin Safe" representations.

40.   On Defendant's "Sustainability" webpage, under "Seafood," Defendant claims that it has "disclosed [its] seafood sourcing through a public profile on the Ocean Disclosure Project  website."[73] The ODP is a reporting framework created by the SFP, which encourages participating organizations to voluntarily disclose their sustainability performance, doing nothing more compiling the data with no outside verification. In addition, a participating organization must pay a fee to participate in the ODP.[74] As explained further *infra*, the ODP reveals Defendant's tuna suppliers engage in unsustainable fishing methods known to kill and harm dolphins.

41.   **Defendant's Sustainability Representations on Social Media.** Defendant advertises its sustainable seafood sourcing practices on its social media accounts in furtherance of its heightened "Dolphin Safe" promise. Defendant's official "Aldi USA" Instagram account features a "Sustainability" profile highlight where it advertises and promises "Sourcing Responsibly – incorporate more

---

[72] *Id.*

[73] *Seafood*, ALDI, https://corporate.aldi.us/en/corporate-responsibility/sustainability/seafood/.

[74] *How ODP Works*, OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/how-odp-works.

FIRST AMENDED CLASS ACTION COMPLAINT

sustainable and ethical buying practices to support our communities and our planet,"[75] with "*[i]ncreased supply chain transparency through a partnership with the Ocean Disclosure Project*,"[76] and "*[e]stablished new responsible sourcing requirements for [their] food products containing fish and seafood ingredients.*"[77] *See* **Exhibits 6** and **7,** *infra*.[78]

42.    On Defendant's official "Aldi USA" Twitter account, Defendant promises: "We pride ourselves on a smart, sustainable approach to sourcing products for our customers, every day and especially on Earth Day. Learn more about our certifications on our website: http://bit.ly/2JekBMf." *See* **Exhibit 8**, *infra*. Despite its representations and promises of increased transparency and sustainable sourcing, Defendant fails to incorporate a transparent tracking system for the tuna in the Products and sources its tuna through suppliers that utilize unsustainable fishing methods known to harm and kill dolphins.

//
//
//
//
//
//
//
//
//
//
//

---

[75] ALDI US (@aldiusa), INSTAGRAM,
https://www.instagram.com/stories/highlights/18054203074061497/.
[76] *Id*.
[77] *Id*.
[78] *ALDI USA 2022 Corporate Responsibility Progress Report*, ALDI,
https://corporate.aldi.us/en/corporate-responsibility/progress-report/.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibit 6**




//
//
//
//
//
//
//
//
//

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265



## Exhibit 7

### Sourcing responsibly

**GOALS:**

- 100% of our Barissimo coffee products, including everyday items and ALDI Finds, will be certified as sustainably sourced by 2025.
- Strengthen our requirements to source all fresh, frozen, farmed and wild seafood from fisheries that are third-party certified as sustainable or from Fishery Improvement Projects (FIPs) by the end of 2025.
- Commit to eliminate deforestation in our high-priority supply chains by the end of 2030.
- Convert to Roundtable on Sustainable Palm Oil (RSPO)-certified palm oil derivatives and fractions for all nonfood products by the end of 2024.
- Use recycled or certified cotton to produce ALDI-exclusive apparel and home textile products by 2025.

**PROGRESS**

 53% of everyday ALDI coffee products come from sustainable sources.

 100% of everyday items made of wood or pulp are certified as sustainably sourced from well-managed forests.

 100% of Simply Nature-branded products come from sustainable sources.

 100% of the palm oil used in private label products is certified sustainable by the RSPO.

 Increased supply chain transparency through a partnership with the Ocean Disclosure Project.

 Established new responsible sourcing requirements for our food products containing fish and seafood ingredients.

**PARTNERING WITH SUPPLIERS TO OFFER PRODUCTS THAT DO GOOD FOR PEOPLE AND THE PLANET**

We're doing this so shoppers can feel confident their purchases positively impact people, land and communities. Our PARTNERSHIPS WITH FAIR TRADE USA, FAIRTRADE AMERICA AND RAINFOREST ALLIANCE certify that select ALDI products are certified fair trade and sustainably sourced to help farmers and community development projects across the globe. For example, a coffee farmer in Peru, who was navigating challenges such as drying and storing beans properly, used community development funds to help reinvent his infrastructure and improve the quality of his coffee.

We also provided funds for a farmer in Colombia who was strained by worker health issues and poor wastewater management to upgrade his coffee processing setup and improve worker livelihoods.* Learn more about our supply chain efforts here.

*Funds used on projects are not limited to premium earned from a single retailer and/or in a single year.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibit 8**



43.    **Defendant's "Wild Caught" Claim .**  Consumers prefer and perceive "Wild Caught" fish to be more sustainable and environmentally friendly then farmed fish.[79] Aware of this fact, Defendant advertises that its Products are "Wild Caught" directly on its Products' labels and official website using its own unique logo to further perpetuate its sustainability and dolphin-safe promises in excess of the DPCIA

---

[79] Anna Claret, et al., *Consumer Beliefs Regarding Farmed versus Wild Fish* (April 2014),
https://www.researchgate.net/publication/261443423_Consumer_beliefs_regarding_farmed_versus_wild_fish.

FIRST AMENDED CLASS ACTION COMPLAINT

requirements. Defendant also claims that its "Wild Caught" products (which includes the Products) "[e]xclude[s] illegally caught fish," "[r]educe[s] by-catch," [m]inimiz[es] impact on the ecosystem," and "[i]mprov[es] traceability throughout the entire supply chain"[80] (*see* **Exhibits 2-5,** *infra*). As detailed *infra*, these representations are misleading because Defendant's suppliers utilize unsustainable fishing methods known to injure and kill dolphins, that result in significant bycatch, and harm other marine animals.

> **D.    The Fishing Methods Utilized to Source the Tuna in Defendant's Products Render Defendant's "Dolphin Safe" Representations False and Deceptive**

44.    Defendant represents to consumers that its Products are "Dolphin Safe" by representing that its tuna is sustainably sourced in a manner that does not harm or kill dolphins. Yet, these representations are false and deceptive because the manufacturing of the Products involve unsustainable fishing practices that are known to kill and harm dolphins and other marine life.

45.    **The Fishing Methods Used to Source Tuna for the Products are Unsustainable and Not "Dolphin Safe."** Sustainable fishing "guarantees there will be populations of ocean and freshwater wildlife in the future."[81] As seafood demand has grown and advances in technology have expanded, certain fishing practices deplete fish populations, leading to unsustainable fishing practices.[82] These unsustainable fishing practices include longlines and purse seines, which are the same fishing practices used to source the tuna in the Products, and result in overfishing, significant bycatch, and harming and killing of unintended species, like dolphins.[83]

---

[80] Seafood Buying Policy, *supra* note 48.

[81] *Sustainable Fishing*, NATIONAL GEOGRAPHIC SOCIETY, https://education.nationalgeographic.org/resource/sustainable-fishing.

[82] *Id*.

[83] *Id*.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Consumers reasonably believe that tuna products that are represented as sustainably sourced dolphin-safe tuna do not contribute to the harm or death of dolphins.

46.   Defendant recognizes the importance consumers place on purchasing tuna products that are sustainably sourced, making sustainability representations on its Product packaging, social media, and dedicating an entire webpage to notify its consumers about its purported sustainable fishing practices.   Yet, Defendant's representations of dolphin safety and sustainability (*see* **Exhibits 2-8**, *supra* and *infra*), deceives Plaintiff and other consumers to reasonably believe that the tuna in the Products are sustainably sourced using fishing methods safe for dolphins, when, in reality, the fishing methods utilized are unsustainable and known to seriously harm and kill dolphins.[84, 85]

47.   As identified on the back of the Products' packaging, purse seine (free school) or longline, pole and line fishing methods are used to source the tuna in the Products. *See* **Exhibits 9-10**, *infra*.

**Exhibit 9**



---

[84] *Dolphin-Friendly Fishing 7 Viewing Tips*, Sarasota Dolphin Research Program, https://sarasotadolphin.org/wp-content/uploads/2020/09/Dolphin-Friendly-Tips-1.pdf.

[85] *Bottlenose Dolphins – Increase in Depredatory (Stealing) Behavior and Deaths Associated with Recreational Fishing Gear*, NOAA (Oct. 2006), https://nmssanctuaries.blob.core.windows.net/sanctuaries-prod/media/archive/dolphinsmart/pdfs/dolphin_dep.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**Exhibit 10**



48.  **Purse Seine Fishing.** Defendant identifies that the purse seine (free school) fishing method is utilized to catch the tuna in its Northern Catch Chunk Light Tuna in Water (*see* **Exhibit 9,** *supra*).  Purse Seine fishing is unsustainable and has had a devastating impact on the dolphin population. Purse seine fishing easily catches dolphins along with the targeted tuna school.[86] Historically, fishing vessels used a practice called "setting on dolphins," which involved using dolphins as a visual cue to lead the boat towards schooling fish.[87] "Once the netting has been set, encircled marine mammals cannot escape and can become entangled, injured, or stressed. Even with quick retrieval, marine mammals' sensitive bodies and internal organs cannot usually withstand the weight of the catch or the impact of being placed on the vessel."[88]

//

//

//

//

---

[86] *Fishing Gear: Purse Seines, supra* note10.
[87] *Id.*
[88] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

49.     From 1960 to 1970, it is estimated that between 200,000 and 400,000 dolphins were killed annually as a result of the "setting on dolphins" practice for purse seine fishing.[89] This amount has increased as the demand for tuna products has risen.

50.     To further demonstrate the unsustainable and harmful impact purse seine fishing has on marine life, "the Western and Central Pacific Fisheries Commission reviewed cetacean interactions in its purse seine fishery, estimating 281 false killer whale mortalities in 2009."[90] False killer whales are currently listed as a "Near Threatened" species according to the International Union for Conservation of Nature and Natural Resources Red List of Threatened Species.[91]

51.     Defendant and other tuna manufacturers try to justify the use of purse seine fishing methods by differentiating a "free schooling" method versus a Fish Aggregating Devices ("FAD") method. The free schooling purse seine fishing method involves using visual cues, like searching for seabirds or dolphins that hunt schools of fish, and directing the vessel towards them to deploy the net.[92] FAD purse seine fishing methods involve a floating object, under which fish and marine mammals congregate, that the vessel then deploys its nets around.[93]

52.     Any fishing method that involves a net cannot be truly sustainable and "Dolphin Safe." [94] When purse seine nets are released around the free-schooling tuna,

[89] *Net Loss: The Killing of Marine Mammals in Foreign Fisheries*, National Resources Defense Council (January 2014), https://www.nrdc.org/sites/default/files/mammals-foreign-fisheries-report.pdf.
[90] *Id.* at 19.
[91] *False Killer Whales,* IUCN RED LIST, https://www.iucnredlist.org/species/18596/145357488.
[92] *Purse Seine,* BYCATCH MANAGEMENT INFORMATION SYSTEM, https://www.bmis-bycatch.org/fishing-gear/purse-seine#:~:text=A%20purse%20seine%20is%20a,through%20rings%20along%20the%20bottom.
[93] *Id.*
[94] Alex Renton, *Time to Change Your Tuna?*, THE GUARDIAN (Aug. 18, 2008), https://www.theguardian.com/lifeandstyle/wordofmouth/2008/aug/18/greenpeacejohnwesttunatinne#:~:text=If%20you%20really%20want%20to,to%20the%20different%20fishing%20methods.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

there is an entanglement risk to the dolphins that are often found with those schools of tuna.[95] Entanglement is the greatest threat surrounding net fishing, and occurs in both free-school purse seine and FAD purse seine fishing.[96] Dolphins get tangled in the nets and drown before they are able to get free.[97] Additionally, if the dolphin manages to get free from the net, the ropes can cause lacerations that can lead to death soon thereafter.[98]

53. **Longline Fishing**. Defendant identifies longline fishing as one of the fishing methods employed to catch the tuna in its Northern Catch Solid White Tuna Albacore in Water (*see* **Exhibit 10,** *supra*). Longline fishing is one of the most damaging fishing methods to dolphins and marine ecosystems.[99] Each day, longline fishing boats set out enough line to wrap the world five-hundred times.[100] Longline fishing involves casting out fishing lines that extend over sixty miles in length and contain thousands of hooks, which can ensnare birds, marine mammals, and juvenile fish. Longline fishing also requires "backbreaking, dangerous, and relentless work."[101]

54. Longline fishing is an unsustainable method of fishing that is known to kill and seriously harm various dolphin species.[102] Longline fishing has been recognized as an unsustainable fishing practice because it is indiscriminate in that it

[95] Katie Pavid, *Whales and dolphins are getting stuck in fishing nets around the UK*, NATURAL HISTORY MUSEUM (February 6, 2019), https://www.nhm.ac.uk/discover/news/2019/february/whales-and-dolphins-are-getting-stuck-in-fishing-nets-around-the.html.
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Why Bumble Bee Tuna Should Concern You (Hint: It's Human Rights and Destructive Fishing)*, GREENPEACE, (Mar. 19, 2020) https://www.greenpeace.org/usa/why-bumble-bee-tuna-should-concern-you-hint-its-human-rights-and-destructive-fishing/.
[100] Seaspiracy, *supra* note 5.
[101] *2017 Tuna Shopping Guide*, GREENPEACE, https://www.greenpeace.org/usa/oceans/tuna-guide/.
[102] *Fishing Gear: Pelagic Longlines, supra* note 7.

34

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

attracts and snags a wide array of non-target marine life, known as bycatch, including dolphins, sharks, seals, sea turtles, sea birds, and other marine mammals.[103]

55.    Interactions with longlines for these non-target marine animals have been known to cause injury and death.[104] The average longline is set at 28 miles long.[105] The NOAA lists dolphins, bottlenose dolphins, and several species of whales as having been documented as longline bycatch, with injuries including lacerations, puncture wounds, exhaustion, and drowning.[106]

56.    In addition to the dangers posed by entanglement in fishing gear, *ingestion* of fishing gear is often lethal for cetaceans because it can damage the animals' interior organs. In a study of bottlenose dolphins, seven out of twelve ingestion cases lead to the death of the animal.[107]

57.    Furthermore, the economic costs associated with marine mammal depredation of longlines (fish removed from fishing gear by predators during hauling) have led fishermen to harass and kill dolphins by shooting them, using explosives, or otherwise employing harmful measures to avoid depredation and gear damage.[108] Besides the obvious dangers of serious injury and death that such practices impose on dolphin pods globally, they also have the potential to alter the distribution of dolphin populations, forcing them away from their usual feeding grounds and negatively

---

[103] Timothy B. Werner, et al., *Mitigating Bycatch and Depredation of Marine Mammals in Longline Fisheries* ICES JOURNAL OF MARINE SCIENCE: JOURNAL DU CONSEIL, 72(5), 1576-1586, https://academic.oup.com/icesjms/article/72/5/1576/781679.
[104] *Id.*
[105] *Fishing Gear: Pelagic Longlines*, *supra* note 7.
[106] *Id.*
[107] Anino Ruusuvuori, *Fishery Related Injuries to Cetaceans Off the Norwegian Coast*, HALMSTAD UNIVERSITY SCHOOL OF BUSINESS, ENGINEERING, AND SCIENCE (2017), http://www.diva-portal.org/smash/record.jsf?pid=diva2%3A1191646&dswid=-1768.
[108] *Id.*

impacting the fitness of entire pods (e.g., lowering the rates of successful reproduction and increasing the pods' susceptibility to diseases).[109]

58.   Greenpeace has listed Aldi among the bottom eleven tuna brands based on its use of longline fishing methods in the manufacturing of the Products.[110] Additionally, Greenpeace stated concern about Aldi's lack of transparency, its use of transshipment at sea, and concerns that some of the Products were sourced from stocks where there could be high risk of overfishing.[111] In Greenpeace's 2021 Tuna Scorecard, Aldi received failing grades in four out of six categories, including, traceability, tuna procurement policy, customer education/labeling, and human rights and labor.[112] Greenpeace's consumer hub also ranks Aldi's seafood sustainability poorly, rating them at only 60% for transparency, only a 3% increase from their transparency score of 57% in 2014.[113,114] Aldi's 3% sustainability increase is based on Greenpeace's determination that Aldi has provided some sustainability labeling on its point-of-purchase packaging and online, and does not state that it has actually improved its sustainability practices. [115]

59.   **Pole and Line Fishing**. Defendant identifies pole and line fishing, in addition to longline fishing, as one of the fishing methods utilized to source the tuna

---

[109] *Id.*

[110] 2017 Tuna Shopping Guide, *supra* note 101.

[111] *Id.* (Transshipment is the practice of fishing vessels of offloading their products on other boats at sea, so that those vessels can continue fishing for months or years at a time. Transshipment is often associated with concerns about illegal fishing and human rights violations.)

[112] Josh Stride, *The High Cost of Cheap Tuna: U.S. Supermarkets, Sustainability, and Human Rights at Sea*, GREENPEACE at 29 (2021), https://www.greenpeace.org/usa/reports/2021-tuna-retailer-scorecard-the-high-cost-of-cheap-tuna/.

[113] Wayback Machine: Seafood Sustainability at ALDI, ALDI (December 25, 2014), https://web.archive.org/web/20141225044337/http://seafood.greenpeaceusa.org/stores/aldi/.

[114] Seafood Sustainability at ALDI,  GREENPEACE, seafood.greenpeaceusa.org/stores/aldi.

[115] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

in its Northern Catch Solid White Tuna Albacore in Water (see **Exhibit 10**, *supra*). Globally, pole and line fishing makes up only eight percent of all tuna caught.[116] Pole and line fishing involves catching one fish at a time.[117] Often, a fishing vessel will pump water off the end of the boat along with bait fish to work up a school of tuna into a feeding frenzy that causes them to bite anything they see.[118] Fishermen then stand at the back of the boat with poles and flick fish into the boat that bite their lines.[119] Defendant fails to indicate how much of its tuna for the Northern Catch Solid White Tuna Albacore in Water is sourced using the pole and line method compared to the other methods it uses, nor does it provide any means for consumers to find or confirm this information. Considering the economics of the pole and line method, and how large of a company Aldi is, most of the tuna in the Products is sourced using the longline method.

60.   **Bycatch**. "Bycatch" refers to the unintentional hooking or ensnaring of marine life.[120] Marine mammals such as dolphins caught as a result of bycatch are unable to surface for air, causing suffocation and a painful death.[121] Both fishing methods utilized by Defendant to source the tuna in its Products, longline and purse seine net fishing, are known for high rates of dolphin and other marine life bycatch.[122]

61.   Marine mammals such as Risso's dolphins, bottlenose dolphins, and false killer whales are often entangled or hooked on longline gear and consequently injured or killed. Such injuries include, but are not limited to, lacerations, puncture wounds,

---

[116] *In pole-and-line fishing, tuna are caught one-by-one using a hook attached to a line and pole*, INTERNATIONAL SEAFOOD SUSTAINABILITY FOUNDATION, https://www.iss-foundation.org/tuna-stocks-and-management/tuna-fishing/fishing-methods/pole-line/.

[117] *Pole and Line*, MARINE STEWARDSHIP COUNCIL, https://www.msc.org/what-we-are-doing/our-approach/fishing-methods-and-gear-types/pole-and-line.

[118] *Id.*

[119] *Id.*

[120] *Id.*

[121] *Id.*

[122] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

exhaustion, and drowning.[123] The average bycatch rate for longlines is more than twenty percent of the total catch.[124]

62.    Up to 40% of all fish caught worldwide are designated as "bycatch" and are subsequently killed or significantly injured before being returned to the water.[125] This troubling number of bycatch results in the death of roughly 300,000 dolphins and whales each year,[126] the vast majority of which are dolphins.[127]

63.    Longline fishing, for example, involves lines that can be as long as 62 miles that have as many as 10,000 baited hooks attached, and draws the line in every 12-24 hours, killing and harming numerous marine mammals, including dolphins.[128] Purse Seine nets can reach 6,500 feet in length and 650 feet in depth, making purse seine a non-selective fishing method that captures everything it surrounds including species that can die before they can be released or disentangled, like dolphins.[129] A report from the National Resources Defense council states that scientists estimate over

---

[123] *Fishing Gear: Pelagic Longlines*, *supra* note 7.

[124] *Longline*, INTERNATIONAL SEAFOOD SUSTAINABILITY FOUNDATION, https://www.iss-foundation.org/tuna-stocks-and-management/tuna-fishing/fishing-methods/longline/.

[125] Bycatch: A Sad Topic; Food and Agriculture Organization of the United Nations, A Third Assessment of Global Marine Fisheries Discards (2018), WWF; *see also* Dirk Zeller, et at., Global Marine Fisheries Discards: A Synthesis of Reconstructed Data, 19:1 FISH AND FISHERIES 30-39 (June 26, 2017).

[126] *Catching Fish, Not Flukes and Flippers: A Global Effort to Reduce Whale and Dolphin Bycatch,* WWF, https://wwf.panda.org/discover/knowledge_hub/endangered_species/cetaceans/threats/bycatch/.

[127] Rene Ebersole, *How 'Dolphin Safe' is Canned Tuna, Really?*, NATIONAL GEOGRAPHIC (Mar. 10, 2021), www.nationalgeographic.com/animals/article/how-dolphin-safe-is-canned-tuna#:~:text=The%20three%20largest%20U.S.%20tuna,and%20a%20commitment%20to%20sustainability.

[128] Kevin T Fitzgerald, *Longline fishing (how what you don't know can hurt you)*, TOP COMPANION ANIM. MED. (November 28, 2013), doi:10.1053/j.tcam.2013.09.006.

[129] *Fishing Gear: Purse Seine, supra* note 10.

FIRST AMENDED CLASS ACTION COMPLAINT

650,000 marine mammals including dolphins are killed or seriously injured every year as a result of incidental bycatch.[130]

64.   Despite what seems to be an already staggering number, the figure is likely even higher, since commercial fishermen are incentivized to underreport bycatch, which is facilitated by rampant lack of accountability and widespread unreliable reporting on bycatch. In fact, in 2005, less than half of the fishing vessels around the world recorded quantitative statistics on annual bycatch.[131] This problem holds true in the United States as well. Despite federal legislation such as the Magnuson-Stevens Act requiring detailed reporting on bycatch statistics by U.S. fisheries, there are too few unbiased reporters onboard fishing vessels to get an accurate metric of annual bycatch. Exacerbating this problem is the lack of governmental reporting. The U.S. National Marine Fisheries Service last provided an update to its U.S. National Bycatch Report in 2019, but this update was based on data from 2014 and 2015.[132] A recent report found that "*only four* out of hundreds of U.S. fisheries are meeting the recommended standards for the statistical accuracy and validity of their catch data, if they report data at all." [133]

65.   This lack of transparency, combined with the self-policing nature of the industry allows major tuna producers and distributors like Defendant to reap the benefits of harmful fishing practices all the while falsely promising to consumers that its Products are sustainably sourced "Dolphin Safe" tuna.

---

[130] *Net Loss: The Killing of Marine Mammals in Foreign Fisheries*, National Resources Defense Council (January 2014), https://www.nrdc.org/sites/default/files/mammals-foreign-fisheries-report.pdf.

[131] Amanda Keledjian, et al., *Wasted Catch: Unsolved Problems in U.S. Fisheries*, OCEANA (2014), available at https://oceana.org/reports/wasted-catch-unsolved-problems-us-fisheries/.

[132] Lee R. Benaka, et al., *U.S. National Bycatch Report First Edition Update 3*, U.S. NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION (February 2019).

[133]   Keledjian, *supra* note 131.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

66.   **Defendant's Tuna Suppliers.**   All of the tuna in Defendant's Products are sourced from fisheries  that utilize unsustainable fishing methods, longline and purse seine, that are known to harm and kill dolphins.[134] Defendant also gets approximately one-third of all its wild-caught fish, which includes tuna, from source fisheries that are certified to low standards. [135] In fact, according to the ODP, many of the fisheries from which Defendant sources its fish are not certified, and many are deemed not well managed.[136] Defendant's suppliers also fail to keep accurate records of their effects on cetaceans and marine life. For example, Global Dialogue on Seafood Sustainability ("GDST"), an international, business-to-business platform that established the first ever global industry standards for seafood traceability, claims that Defendant is an adopter and endorser.  However, the GDST does not currently have a mechanism to independently verify the validity of claims made by tuna fisheries pertaining to their compliance with and implementation of GDST standards.

67.   Albacore is the species of tuna in the Northern Catch Solid White Tuna Albacore in Water Product (*see* **Exhibit 10**, *supra*). According to ODP, of the eight fisheries Defendant sources its albacore tuna from, none have received a sustainability rating of "well managed."[137] In fact, four of those fisheries are classified as "needs improvement," one is rated as "sustainability not rated," and only one is rated as simply "managed."[138] Regarding certification of these fisheries, only one is part of the Fishery Improvement Project ("FIP"), a multi-stakeholder effort to address

---

[134] *See supra* at section D.
[135] *ALDI US*, OCEAN DISCLOSURE PROJECT, https://oceandisclosureproject.org/companies/aldi-us.
[136] *Id.*
[137] *Id.*
[138] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

environmental or social challenges in a fishery.[139] The rest of these fisheries are listed as "Not certified or in a FIP."

68.   Some fisheries are known to have issues with low observer coverage. The "observer effect," where fishermen fish in different locations or underreport bycatch when observers are not onboard to monitor activities, is a major problem associated with low or inconsistent observer coverage.[140]

69.   The ODP identifies the fisheries that Defendant uses to supply the albacore in its Products by their "Tuna Species – Location – Fishery Countries – Fishing Method – Certification or Improvement Project – Sustainability Ratings," as follows: [141]

a.   **Albacore – Indian Ocean – China, Taiwan – Longlines – Not Certified or in a FIP – Needs Improvement**. According to the Indian Ocean Tuna Commission, over 90% of albacore is currently being caught almost exclusively using drifting longliners and the remaining catches are recorded using industrial purse seines, which as detailed *supra*, are unsustainable fishing methods known to harm and kill dolphins.[142] There are risks (i.e., bycatch) to marine mammals (dolphins), seabirds, sea turtles, and sharks with this fishery.[143] This fishery has no certifications.[144]

b.   **Albacore – Indian Ocean – Indonesia – Longlines – FIP – Needs Improvement**. According to the latest stock assessment in 2019, catches in recent years are consistently exceeding the maximum sustainable yield

[139] *Id.; Fishery Improvement Projects*, MARINE STEWARDSHIP COUNCIL, https://www.msc.org/for-business/fisheries/developing-world-and-small-scale-fisheries/fips.
[140] Keledjian, *supra* note 131.
[141] *Id.*
[142] *Albacore Indian Ocean*, FISH SOURCE, https://www.fishsource.org/stock_page/853.
[143] *ALDI US*, OCEAN DISCLOSURE PROJECT, *supra* note 135.
[144] *Id.*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

41

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(MSY) level.[145] There is no total allowable catch (TAC) and quota allocation management system in place to enforce catch reductions, thereby exposing dolphins and other marine animals to harmful fishing practices and bycatch.[146]

c. **Albacore – South Atlantic – Taiwan – Longlines – Not Certified or in a FIP – Managed.** There are no formally adopted target or limit reference points and harvest control rules. Interactions with protected, endangered and threatened species along with sharks and other fish have been reported.[147] Longline fishing, as detailed *supra*, is harmful to dolphins and frequently results in dolphin entanglement.

d. **Albacore – South Pacific / IATTC – China, Taiwan – Longlines – Not Certified or in a FIP – Sustainability Not Rated.** The Inter-American Tropical Tuna Commission ("IATTC") works towards the long-term conservation and sustainable management of tuna and other fish in the ETP.[148] Without a sustainability rating, certification, or participation in a FIP, this fishery is also known to pose a bycatch risk to dolphins and other ocean animals.[149]

e. **Albacore – South Pacific/WCPFC – China, Fiji – Longlines – FIP – Managed.** It is reported that this fishery follows the Western Central Fisheries Commission's management measures which include sections on bycatch mitigation.[150] However, there is known low observer coverage in this fishery, which means it is lacking in oversight to properly collect

---

[145] *Albacore Indian Ocean: Indonesia Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/1835.

[146] *Id*.

[147] *Albacore South Atlantic: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/5321.

[148] *Homepage*, IATTC, https://www.iattc.org/.

[149] *ALDI US*, OCEAN DISCLOSURE PROJECT, *supra* at 135.

[150] *Albacore South Pacific: China Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2175

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

bycatch data.[151] There can be no assessment of bycatch rates because scarce data is reported to be able to differentiate by member.[152]

    f.  **Albacore – South Pacific/WCPFC – China, Fiji, Taiwan, Vanuatu – Longlines – Not Certified or in a FIP – Needs Improvement**. This fishery faces the same issues as the one listed immediately prior. It also purports to follow the Western Central Fisheries Commission's management measures.[153] However, again there can be no assessment of bycatch rates because reports of bycatch amounts and composition for other than main species are scarce and inconsistent and issues of monitoring have led to misreporting and illegal transshipment at sea at this fishery.[154]

70. Skipjack tuna is the species of tuna used in the Northern Catch Chunk Light Tuna in Water Product. *See* **Exhibit 9**, *supra*. Out of eight fisheries Defendant sources its skipjack tuna from, none have received a sustainability rating of "well managed."[155] None are certified as needing no improvement, nor are any identified as participating in a FIP, which helps fisheries work towards better sustainability.[156] The ODP identifies the fisheries that Defendant uses to supply the skipjack tuna used in its Products by their "Tuna Species – Location – Vessel Flag – Fishing Method," as follows:[157]

    a.  **Skipjack –Western and Central Pacific Ocean/ WCPFC – China – FAD-free Purse Seine – Not Certified or in a FIP – Managed.** This fishery requires logs to be kept about catches of protected marine

---

[151] *Id.*

[152] *Id.*

[153] *Albacore South Pacific: Taiwan Longlines*, FISH SOURCE, https://www.fishsource.org/fishery_page/2181.

[154] Albacore South Pacific, FISH SOURCE, https://www.fishsource.org/stock_page/1002.

[155] *Id.*

[156] Fishery Improvement Projects, *supra* note 139.

[157] *ALDI US*, OCEAN DISCLOSURE PROJECT, *supra* note 135.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

mammals, but it is filled out only by the master of the vessel which could lead to inaccuracy and underreporting.[158] Inaccurate reporting can often lead to underreporting of bycatch of species, such as dolphins. This fishery is currently in violation of reporting transshipments and being over catch limits.[159]

b. **Skipjack –Western and Central Pacific Ocean – Kiribati – FAD-free Purse Seine – Not Certified or in a FIP – Managed.** This fishery is part of the Western Central Pacific Fisheries Commission.[160] Currently, the Western Central Pacific Fisheries Commission has no body that is monitoring and assessing the reported interactions with marine mammals.[161] There are risks (i.e., bycatch) to marine mammals (dolphins), seabirds, sea turtles, and sharks with this fishery.[162]

c. **Skipjack –Western and Central Pacific Ocean – South Korea – FAD-free Purse Seine – Not Certified or in a FIP – Managed.**  This fishery is part of the Western Central Pacific Fisheries Commission.[163] This fishery has reported notable bycatch issues, and suggestions for improvement of it include implementing monitoring at sea to ensure compliance with existing bycatch requirements as well as adopting practice measures to minimize the entanglement of non-target species.[164]

d. **Skipjack –Western and Central Pacific Ocean – Marshall Islands – FAD-free Purse Seine – Not Certified or in a FIP – Managed.** This

---

[158] *Skipjack Tuna Western and Central Pacific Ocean: China Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5455.

[159] *Id*.

[160] *Skipjack Tuna Western and Central Pacific Ocean: Kiribati Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5056.

[161] *Id*.

[162] *ALDI US*, OCEAN DISCLOSURE PROJECT, *supra* 135.

[163] Skipjack Tuna Western and Central Pacific Ocean: South Korea Purse Seine, FISH SOURCE, https://www.fishsource.org/fishery_page/5052.

[164] *Id*.

FIRST AMENDED CLASS ACTION COMPLAINT

fishery is part of the Western Central Pacific Fisheries Commission.[165] This fishery combines its FAD-free and FAD purse seine bycatch data, making it impossible to determine the impact of one over the other.[166] This fishery is not involved in any FIPs and has no certifications.[167] There are risks (i.e., bycatch) to marine mammals (dolphins), seabirds, sea turtles, and sharks with this fishery.[168]

e. **Skipjack –Western and Central Pacific Ocean – Nauru – FAD-free Purse Seine – Not Certified or in a FIP – Managed.** This fishery is part of the Western Central Pacific Fishery Commission.[169] Currently, the Western Central Pacific Fishery Commission has no body that is monitoring and assessing the reported interactions with marine mammals.[170] There are risks (i.e., bycatch) to marine mammals (dolphins), seabirds, sea turtles, and sharks with this fishery.[171]

f. **Skipjack –Western and Central Pacific Ocean – Solomon Islands – FAD-free Purse Seine – Not Certified or in a FIP – Managed.** This fishery was found to be in breach of the obligation to have Video Monitoring Systems installed on its fishing fleets.[172] This fishery is required to report on catches and interactions with certain marine mammals, however, there is no body or committee that reviews the data, nor does the fishery separate out FAD-free versus FAD purse seine

---

[165] *Skipjack Tuna Western and Central Pacific Ocean: Marshall Island Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5057.

[166] *Id.*

[167] *Id.*

[168] *ALDI US*, OCEAN DISCLOSURE PROJECT, *supra* note 135.

[169] *Skipjack Tuna Western and Central Pacific Ocean: Nauru Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5058.

[170] *Id.*

[171] *ALDI US*, OCEAN DISCLOSURE PROJECT, *supra* note 135.

[172] *Skipjack Tuna Western and Central Pacific Ocean: Solomon Islands Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5061

45

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

fishing data.[173]   However, both FAD-free and FAD purse seine fishing are unsustainable fishing methods because they pose entanglement risks for dolphins.[174] This fishery is not involved in any FIPs.[175]

g. **Skipjack –Western and Central Pacific Ocean – Taiwan – FAD-free Purse Seine – Not Certified or in a FIP – Managed.** This fishery is part of the Western Central Pacific Fishery Commission.[176] This fishery is not being assessed on their compliance with conservation of marine mammals, which would include dolphins.[177] Both FAD-free and FAD purse seine fishing are unsustainable fishing methods because they pose an entanglement risk for marine life, including dolphins.[178]

h. **Skipjack –Western and Central Pacific Ocean – United States – FAD-free Purse Seine – Not Certified or in a FIP – Managed**. This fishery is part of the Western Central Pacific Fishery Commission.[179] This fishery reports combine FAD-free and FAD purse seine fishing of all interactions with marine mammals.[180] Both fishing methods are unsustainable because they pose an entanglement risk for marine wildlife, including dolphins.[181] Additionally, this data is not being assessed on their compliance with conservation of marine mammals, which would include dolphins.[182]

71.   The many issues relating to sustainability, fishing methods, transparency, legality, and data collection associated with the fisheries from which

---

[173] *Id.*

[174] Pavid, *supra* note 95.

[175] *Id.*

[176] Skipjack Tuna Western and Central Pacific Ocean: Taiwan Purse Seine, FISH SOURCE, https://www.fishsource.org/fishery_page/5051.

[177] *Id.*

[178] Pavid, *supra* note 95.

[179] *Skipjack Tuna Western and Central Pacific Ocean: United States Purse Seine*, FISH SOURCE, https://www.fishsource.org/fishery_page/5054

[180] *Id.*

[181] Pavid, *supra* note 95.

[182] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant sources the tuna in its Products render its sustainability and "Dolphin Safe" representations false and deceptive.

### E.      Defendant's Traceability Representations

72.    In the seafood sector, effective traceability can be defined as the ability to identify the origin of the product and sources of input materials, as well as the ability to conduct backward and forward tracking using recorded information to determine the specific location and history of the product.[183] Under its "Traceability" section in its Seafood Buying Policy, Defendant expressly promises beyond the requirements of the DPCIA its commitment to "regularly collect[] data from seafood suppliers on fishing methods" "to support responsible sourcing and continuous improvement,"[184] and that its "suppliers assure the traceability of all seafood products delivered to [them]."[185] Defendant further promises that it "aspire[s] to —establish a consistent monitoring system to assure that all seafood products can be tracked through the supply chain."[186] Yet, as discussed fully, *infra,* Defendant and its suppliers cannot trace their tuna due to data issues and supply chain complexities that the seafood organizations Defendant is involved in have acknowledged. None of Defendant's "Traceability" representations provide consumers with information that would allow them to track the tuna in the Products, nor does it disclose the fact that the fishing methods used by its suppliers are unsustainable and hazardous to dolphins.

73.    Defendant does not have any publicly accessible traceability program in place for its Products in California or the United States that can be used by consumers to verify these representations. Unlike Aldi in the United States, Aldi South Germany

---

[183] *Traceability - is your seafood really what is says on the tin?,* ASC AQUA, https://www.asc-aqua.org/aquaculture-explained/is-the-asc-a-credible-standard/traceability-is-your-seafood-really- what-it-says-on-the-tin/.

[184] ALDI Seafood Buying Policy: Traceability, ALDI, *supra* at 48.

[185] *Id.*

[186] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and Hofer KG[187]—a grocery chain in Austria that is also part of the Aldi Süd group, a chain based in Germany—have established traceability platforms for their seafood.[188] Defendant introduced the Aldi Transparency Code (ATC) for their fish products, which allows consumers to use the tracking code (i.e., QR code) on the products packaging to trace back to the where the fish product was sourced.[189] Aldi Nord also has implemented a similar traceability method.[190] Defendant fails to implement a similar system for all its tuna products, which include the Products, that are sold in the United States, despite clearly having the capability to do so.

74.     Other tuna brands that sell their Products in California and the United States, such as Starkist Co., allow consumers to easily enter a number associated with a tuna product on their website and track the source of their specific batch of tuna, exhibiting that it is possible to provide consumers with more thorough and transparent tracking information relating to canned tuna products.

**F.     Defendant's "Dolphin Safe" Representations are False, Deceptive, and Misleading to Plaintiff and Other Reasonable Consumers**

75.     Plaintiff and other consumers reasonably believed that no dolphins are harmed or killed in the manufacturing of the Products based on Defendant's own dolphin safety and sustainability representations, including, but not limited to: Defendant's use of its own special "Dolphin Safe" logo on the Products (*see* **Exhibits 2-3**); labeling and advertising claims that the Products are "Dolphin Safe" (*see*

---

[187] *HOFER-KG*, 2002-2022 TRANSDATIX SOFTWARE GMBH, https://www.transdatix.com/en/Company/Partners/EDI/Hofer-KG.

[188] HOFER, *Check Your Product* (2022), https://www.check-your-product.com/de-AT/CodeInsert?productGroup=1.

[189] ALDI SOUTH GROUP, *Transparency in Supply Chains: Food*, https://cr.aldisouthgroup.com/en/responsibility/our-work-action/supply-chain/transparency-supply-chains-food#acc-805610803-fish-seafood.

[190]ALDI NORTH GROUP, *ALDI Transparency Code* (2022), https://transparenz-aldi--nord--de.translate.goog/?_x_tr_sl=de&_x_tr_tl=en&_x_tr_hl=en&_x_tr_pto=sc.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

**Exhibits 2-6,** *supra*); use of its own unique "Wild Caught" logo on the Products to perpetuate promises of sustainably sourced seafood; (*see* **Exhibit 2-5,** *supra)*; social media representations of its Products as sustainably sourced (*see* **Exhibit 6,** *supra*); highlighting its involvement in organizations that claim to promote sustainability and transparency in seafood sourcing; and promising sustainable fishing methods and sourcing on its website (*see* **Exhibits 4-5, 7- 8**, *supra*).

76.   Defendant's "Dolphin Safe" representations exceed the requirements of the DPCIA, and violates its own heightened standard because Defendant's tuna Products are sourced using unsustainable fishing methods that are known to harm and kill dolphins and other marine life, and thus, are not dolphin-safe. Defendant therefore deceives consumers by promising a higher dolphin-safe standard then what the DPCIA requires and then breaks that promise by utilizing unsustainable fishing methods known to harm and kill dolphins.

77.   When presented with the option of choosing between "Dolphin Safe" and dolphin unsafe tuna, American consumers overwhelmingly chose to purchase the former.[191] Indeed, dolphin safety is material and valuable to a consumers purchasing decision and in fact, studies on consumer behavior have found that "Dolphin Safe" labeling affects consumer behavior, and such labeling has contributed to an increase in the market share of canned tuna.[192] This research highlights the fact that consumers are willing to pay more in order to avoid personally contributing to the killing or harming of dolphins during tuna fishing. The price premium for "Dolphin Safe" tuna reflects consumer demand and the higher production costs of dolphin safety.[193]   In

---

[191] *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 761 (9th Cir. 2007) (noting that as a result of consumer choice between dolphin-safe and dolphin-unsafe tuna products, "foreign sellers who did not adjust their fishing methods were quickly forced out of the market").

[192] *See* Mario F. Teisl, et al., *Can Eco-Labels Tune a Market? Evidence from Dolphin-Safe Labeling*, J. Environ. Econ. Manag. (2002), https://www.sciencedirect.com/science/article/abs/pii/S0095069600911860.

[193] Mitchell, *supra* note 25.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

response to consumers' desire for sustainable products, companies like Defendant, have decided to manufacture, market, and sell purportedly sustainable products, such as its "Dolphin Safe" tuna Products, in an effort to gain market share.

78.   A consumption survey carried out by insights company GlobalScan in July of 2016 on behalf of the Marine Stewardship Council ("MSC") – which surveyed over 16,000 seafood consumers worldwide – found that sustainability was rated more favorably than price and brand when it comes to ocean preservation; nearly 72 percent of participants agree that shoppers should only purchase food from sustainable sources to ensure ocean longevity.[194] Nearly all of the households surveyed (85 percent) admitted to purchasing seafood on a regular basis, with 68 percent adamantly stating that consumers should be prepared to switch to more sustainable seafood moving forward.[195]  Consequently, manufacturers and distributors of "Dolphin Safe" tuna, such as Defendant, have taken advantage of this demand for sustainability sourced tuna by making sustainability representations as part of their "Dolphin Safe" marketing campaign, as detailed *supra*.

79.   Based on Defendant's own "Dolphin Safe" representations, Plaintiff and other reasonable consumers believe that the Products are manufactured using sustainable fishing practices that do not kill or injure dolphins. This is precisely the message that Defendant has consistently conveyed to the public in their widespread advertising and marketing campaign, which promises consumers something more than what the DPCIA requires. That means reasonable consumers believe that the Products do not contain tuna product harvested using fishing practices which kill or injure dolphins. This perception is also consistent with standard dictionary

---

[194] Madelyn Kearns, *New survey sees seafood consumers placing sustainability before price and brand*, SEAFOODSOURCE OFFICIAL MEDIA (2016), https://www.seafoodsource.com/news/foodservice-retail/new-survey-sees-seafood-consumers-placing-sustainability-before-price-and-brand.
[195] *Id*.

definitions, regulatory definitions, and the California legislature's interpretation of environmental advertising claims.

    a. **Dictionary—Safe.** The Merriam-Webster standard dictionary defines "safe" as "free from harm or risk."[196]

    b. **FTC Green Guides.** Notably, the FTC promulgated the Guides for the Use of Environmental Marketing Claims, codified at 16 C.F.R. 260.1, *et seq.* ("**Green Guides**"), to "help marketers avoid making environmental marketing claims that are unfair or deceptive" based on the FTC's "views on how reasonable consumers likely interpret [those] claims." *Id.* at § 260.1(a), (d). In its view, "[u]nqualified general environmental benefit claims . . . likely convey that the product . . . has specific and far-reaching environmental benefits and may convey that the item . . . has ***no negative environmental impact***." *Id.* at § 260.4(b) (providing "***Eco-Friendly***" as an example) (emphasis added).

    c. **California Legislature.** The California legislature codified the Green Guides to make it "unlawful for a person to make an untruthful, deceptive, or misleading ***environmental claim***, whether explicit or implied" (emphasis added). Cal. Bus. & Prof. Code § 17580.5. California viewed terms "on the label or container of a consumer good" like "environmental choice," "***ecologically friendly***," "***earth friendly***," "***environmentally friendly***," "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe," "environmentally lite," "green product," "***or any other like term***," to mean that the product "***is not harmful to***, or is beneficial to, ***the natural environment***." *Id.* at §§ 17580(a) (emphasis added); *see also id.* at § 17581 (criminalizing such deceptive labeling claims).

---

[196] *Safe*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/safe.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d. The Merriam-Webster standard dictionary defines "environment" as "the complex of physical, chemical, and biotic factors (such as climate, soil, and ***living things***) that act upon an ***organism*** or an ***ecological community*** and ultimately determine its form and ***survival.***" (emphasis added). As previously and subsequently outlined, this case concerns use of fishing methods that are known to kill or cause harm to dolphins. Dolphins are a vital part of the natural environment not only because they are living things but because they keep ecosystems in balance, disperse nutrients, and mix water in stratified oceans and rivers.[197] Thus, advertising, labeling, and representing the Products as sustainably sourced "Dolphin Safe" tuna while simultaneously using harmful fishing methods to harvest its Products, Defendant is violating California law.

80. **Other Courts Have Deemed Consumer Claims Regarding Similar Product Representations to Be Actionable.** Defendant is not the first company to engage in deceptive practices regarding its "Dolphin Safe" canned tuna products only to find itself embroiled in controversy. Some of the largest tuna suppliers in the world have already faced class action lawsuits claiming that they defrauded consumers by advertising their "Dolphin Safe" fishing methods and sustainable practices.[198] For example, in *Gardner v. StarKist Co*., 2020 U.S. Dist. LEXIS 56679 (N.D. Cal. 2020), the plaintiff brought suit against Starkist pursuant in part to Civil Code Section 1750, California's Consumers Legal Remedies Act, for violating its own heightened representations of "Dolphin Safe" tuna which exceeded the DPCIA requirements by using fishing methods known to kill or harm dolphins. The court denied Starkist's Rule 12(b)(6) motion, ruling the defendant's "Dolphin Safe" representations misled reasonable consumers since defendant's fishing techniques of purse seine and longline fishing were known to cause dolphin injuries and deaths. Like Starkist,

---

[197] Kiszka, *supra* note 18.
[198] Ebersole, *supra* note 127.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Aldi's "Dolphin Safe" representations exceed DPCIA requirements and are false and deceptive under California's consumer protection laws because the Products are sourced using the same fishing methods as in *Starkist* that are known to harm and kill dolphins.

81.     **Other Companies That Sell "Dolphin Safe" Tuna Use Safe and Sustainable Fishing Methods.** There are companies that manufacture tuna products that are truly dolphin-safe because they only use the pole and line fishing method for catching tuna. For example, Whole Foods 365 Everyday Value Brand[199] and American Tuna brand[200] only use the pole and line fishing method for its tuna products. The pole and line fishing involves catching one fish at a time which  allows unintended marine species that are accidently caught to be released in an easy and quick manner.[201] Pole and line fishing only accounts for eight percent of tuna caught today.[202] Although more labor intensive and expensive than other commercial fishing methods, it allows for truly safe and sustainable tuna sourcing.[203]

**G.     Defendant Misled Plaintiff and Other Reasonable Consumers Who Relied on the Material and False "Dolphin Safe" Representations to Their Detriment**

82.     **Material.** The false advertising claims were and are material to reasonable consumers, including Plaintiff, in deciding to purchase the Products.

---

[199] *See*, Whole Foods' website, available at, https://www.wholefoodsmarket.com/product/365-by-whole-foods-market-canned-wild-tuna-albacore-in-water-with-salt-added-100-pole-line-caught-5-oz-b074h55nkk.

[200] *See,* American Tuna's website, https://americantuna.com/sustainability/.

[201] *Pole and Line*, MARINE STEWARDSHIP COUNCIL, https://www.msc.org/what-we-are-doing/our-approach/fishing-methods-and-gear-types/pole-and-line.

[202] *In pole-and-line fishing, tuna are caught one-by-one using a hook attached to a line and pole*, INTERNATIONAL SEAFOOD SUSTAINABILITY FOUNDATION, https://www.iss-foundation.org/tuna-stocks-and-management/tuna-fishing/fishing-methods/pole-line/.

[203] *Id*.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

83.   **Reliance.** Plaintiff and reasonable consumers relied and rely on Defendant's false labeling and advertising claims that the Products are "Dolphin Safe" in making the decision to purchase the Products.

84.   **Consumers Lack Knowledge of Falsity.** At the time Plaintiff and reasonable consumers purchased the Products, they did not know, and had no reason to know, that the Products' "Dolphin Safe" label and advertising claims were, in fact, false, misleading, deceptive, and unlawful as set forth herein.

85.   **Misrepresentation/Omission.** The "Dolphin Safe" representations materially misrepresented the Products were manufactured using sustainable fishing practices that do not kill or injure dolphins, and Defendant failed to adequately inform reasonable consumers, including Plaintiff, that the Products were not in fact "Dolphin Safe" given the fishing methods used to source the tuna.

86.   **Defendant's Knowledge.** Defendant knew, or should have known, that the "Dolphin Safe" representation was false, misleading, deceptive, and unlawful, at the time that it advertised the Products using the "Dolphin Safe" representations, and Defendant intentionally and deliberately used the "Dolphin Safe" representations on the Products' labeling, packaging, and advertising to cause Plaintiff and similarly situated consumers to believe that the Products are made using fair and sustainable fishing practices that do not kill or cause harm to dolphins. The conspicuousness of the challenged representation on the Products' labels and repeated use of the challenged representation in advertisements demonstrate Defendant's awareness of the materiality of said representations and understanding that consumers prefer and are motivated to buy tuna products that contain tuna harvested by methods that do not harm or kill dolphins. Generally, manufacturers and marketers repeat marketing messages to emphasize and characterize a brand or product line. Similarly, they reserve the front primary display panel of labels on consumer products of similar dimensions for the most important and persuasive information that they believe will motivate consumers to buy the products. Defendant, as the manufacturer,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

manufactured the Products using harmful fishing practices. Defendant, as the manufacturer, had exclusive control over the "Dolphin Safe" label inclusion on the Products' labels and in their advertisements. Defendant is and was, at all times, statutorily required to ensure the manufacturing of its Products did not in fact harm, injure, or kill any dolphins in order to be consistent with its "Dolphin Safe" representations. Thus, Defendant knew, or should have known, at all relevant times, that the "Dolphin Safe" labeling and advertising was and is false and deceptive. Defendant further knew that reasonable consumers, including Plaintiff, were and are misled into buying the Products based on the mistaken belief that the challenged "Dolphin Safe" representation is true.

87. **Detriment.** Plaintiff and reasonable consumers would not have purchased the Products, or would have purchased the Products on different terms, if they had known the truth—that the "Dolphin Safe" representations are false, and the Products are sourced using fishing methods that kill and injure dolphins. Accordingly, based on Defendant's material misrepresentations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

## H. No Adequate Remedy at Law

88. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 to 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representation ("Dolphin Safe"), across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements related to representations and omissions made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).   Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.   Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the

FIRST AMENDED CLASS ACTION COMPLAINT

products from third-party retailers or provide adequate pre-lawsuit notice prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representation. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products Challenged Representation is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is unable at present to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of future Product sales, and quantities of future Product sales.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against non-California Defendants, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims would bar recovery for non-California members of the Class.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is the first pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine all available and unavailable remedies, including legal and equitable, for Plaintiff(s)'s individual claims and any certified class or subclass. Plaintiff(s) therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies exist for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

89. Plaintiff does not seek to impose additional or conflicting labeling, testing, or warning requirements as it relates to the "Dolphin Safe" claim; rather, Plaintiff seeks to cure Defendant's deceptive labeling of the Products as "Dolphin Safe," which is not mandated by the FDA. *See* 16 U.S.C. § 1385 (no provisions requiring the inclusion of a "Dolphin Safe" label claim on tuna products). The FDA has not promulgated regulations requiring environmental claims such as "Dolphin

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Safe" on canned tuna products, let alone one that would conflict with enjoining Defendant's misleading use of this claim. As such, Plaintiff is not seeking to impose labeling requirements that differ from any established by Congress or the FDA.

## VI.   <u>CLASS ALLEGATIONS</u>

90.   **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); and
> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").

("Nationwide Class" and "California Subclass," collectively, "Class").

91.   **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

92.   **Reservation of Rights to Amend Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

93.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

94.   **Numerosity:** Members of the Class are so numerous that individual joinder is impracticable. On information and belief, the Class consists of tens of thousands of purchasers (if not more) dispersed throughout California and the United States. Accordingly, it would be impracticable to join all members of the Class before the Court.

95.   The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

96.   **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

   a.   Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice in violation of California Civil Code Section 1750, *et seq.*;

   b.   Whether Defendant used deceptive representations in connection with the sale of the Products in violation of California Civil Code Section 1750, *et seq.*;

   c.   Whether Defendant represented the Products have characteristics that they do not have in violation of California Civil Code Section 1750, *et seq.*;

   d.   Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of California Civil Code Section 1750, *et seq.*;

   e.   Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code Section 17500, *et seq.*;

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Whether Defendant knew or by the exercise of reasonable care should have known its advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

f.  Whether Defendant made false and misleading representations in its advertising and labeling of the Products in violation of Business and Professions Code Section 17500, *et seq.*;

g.  Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

h.  Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

i.  Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.  Whether Defendant's conduct constitutes a breach of express warranty;

k.  Whether Defendant's conduct constitutes a breach of implied warranty;

l.  Whether Defendant was unjustly enriched by its deceptive conduct;

m. Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

n.  How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received?

97.  **Typicality**: Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Product. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims

arise from the same practices and course of conduct and are based on the same legal theories.

98. **Adequacy**: Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

99. **Superiority and Substantial Benefit**: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. A class action would be more efficient and manageable for at least the following reasons:

    a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys their ill-gotten gains;

    c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e. This action presents no difficulty that would impede their management by the Court as a class action, which is the best available means by which

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

100. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

101. **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

102. **Manageability.** The trial and litigation of Plaintiff's claims are manageable. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

103. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

## COUNT ONE

### Violation of California Consumers Legal Remedies Act,
### California Civil Code 1750, *et seq*.
### *(brought on behalf of the California Subclass)*

104. Plaintiff repeats and re-alleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

105. Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on her own behalf and on

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

behalf of all other persons similarly situated. Plaintiff seeks to represent the Class as defined in Paragraph 90.

106.  Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transaction with Plaintiff and the California Subclass which were intended to result in, and did result in, the sale of the Products:

>(5)    Representing    that    [Products]…characteristics,…uses    [and] benefits…which [they do] not have …

>(7) Representing that [Products] are of a particular standard, quality, or grade…if they are of another

>(9) Advertising [the Products] …with intent not to sell them as advertised.

107.  The Class consists of thousands of persons or more, the joinder of whom is impracticable.

108.  There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, as set forth hereinabove.

109.  The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

110.  The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Products; and (2) advertising, labeling, and packaging the Products with intent not to sell them as advertised.

111.  Defendant    fraudulently    deceived    Plaintiff    and    the    Class    by misrepresenting the Products as having characteristics which they do not have, e.g., labeling and advertising the Products as "Dolphin Safe" tuna beyond the requirements of the DPCIA. In doing so, Defendant intentionally misrepresented and concealed

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

112. Defendant knew or should have known, through the exercise of reasonable care, that the Products' labeling and advertising were misleading.

113. Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

114. Defendant's labeling and advertising of the Products were material factors in Plaintiff's decision to purchase the Products. Based on Defendant's labeling and advertising of the Products, Plaintiff reasonably believed that she was purchasing Products that were manufactured using methods that were safe for dolphins. In actuality, the Products were manufactured using methods that kill and injure dolphins. Had she known the truth of the matter, Plaintiff would not have purchased the Products.

115. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff and the Class paid for Products that were different from what they were reasonably expecting when they decided to make their respective purchases. Plaintiff and the Class would not have purchased the Products had they known the claims were false.

116. Defendant's false and misleading labeling and advertising should be enjoined due to its false, misleading and/or deceptive nature.

117. By letter dated February 11, 2022, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

118. Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of

FIRST AMENDED CLASS ACTION COMPLAINT

Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the label and advertising claim challenged herein.

119. Plaintiff shall be irreparably harmed if such an order is not granted. Plaintiff also seeks restitution.

## COUNT TWO

### Violation of California False Advertising Law,
### Business & Professions Code 17500, *et seq.*
### *(brought on behalf of the California Subclass)*

120. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

121. Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17500, *et seq.*, individually and on behalf of the Class.

122. California's False Advertising Law, California Business and Profession Code Section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

123. Defendant knowingly spread misleading claims regarding the Products as a means to mislead the public that the Products are manufactured in a manner that is safe for dolphins.

124. Defendant controlled the labeling, packaging, production, and advertising of the Products. Defendant knew or should have known, through the exercise of reasonable care, that its "Dolphin Safe" representations and omissions about the Products were untrue, deceptive, and misleading.

//

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

125.  Defendant's actions of advertising and displaying misleading claims and falsely labeling the Products "Dolphin Safe" on each Product label are highly likely to deceive consumers in regard to the actual nature of these products.

126.  Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

127.  Pursuant to Business & Professions Code Section 17535, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unlawful business practice. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant in amount to be determined by trial.

128.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff and the Class purchased the Products in reliance upon the claims by Defendant that the Products were "Dolphin Safe." Plaintiff would not have purchased the Products if she had known that the claims and advertising as described herein were false.

## COUNT THREE

**Violation of California Unfair Competition Law,**

**Business & Professions Code Section 17200, *et seq.***

***(brought on behalf of the California Subclass)***

129.  Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

130.  Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17200, *et seq*., on their own behalf and on behalf of the Class.

131.  The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

//

//

FIRST AMENDED CLASS ACTION COMPLAINT

**A.    "Unfair" Prong**

132.  Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.,* a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

133.  Defendant's actions of advertising and labeling the Products as being "Dolphin Safe" are false, misleading, and deceptive.

134.  Defendant's actions of falsely advertising its Products as "Dolphin Safe" cause injuries to consumers.

135.  Through false, misleading, and deceptive advertising and labeling of the Products, Defendant seeks to take advantage of consumer's desires for products that are dolphin safe, while reaping the financial benefits of manufacturing the Products in manner that kills and injures dolphins.

136.   When Defendant claims that the Products are "Dolphin Safe," it provides false promises to consumers, which reduces consumer choice. This also increases the cost to consumers because the unfair business practice allows Defendant to produce the Products more inexpensively, which in turn, stifles competition in the marketplace of manufacturers who incur additional costs in manufacturing a competing product that is truthfully advertised as "Dolphin Safe" because the tuna is sourced using fishing methods which do not kill or injure dolphins.

137.  Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

138.  Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. In doing so, the courts "weigh the utility of the Defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F. 3d 1152, 1169 (9th Cir. 2012).

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

139.  Defendant's false promise results in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

140.  Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

141.  Defendant's labeling and advertising of the Products is false, deceptive, misleading, and unreasonable, and constitutes an unfair business practice within the meaning of California Business & Professions Code Section 17200.

142.  There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the safety of dolphins in the manufacturing of the Products.

143.  All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

144.  Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and labeling of the Products. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

145.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products had she known that the Products were not created in a dolphin-safe manner, or certainly would not have paid a premium.

//

FIRST AMENDED CLASS ACTION COMPLAINT

## B.    "Fraudulent" Prong

146. California Business and Professions Code Section 17200, *et seq.* considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992).

147. Defendant's advertising and labeling of the Products as "Dolphin Safe" is likely to deceive members of the public into believing that the Products are actually dolphin-safe when they are manufactured using methods that kill and injure dolphins.

148. Defendant's advertising and labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

149. Defendant knew or should have known of its fraudulent conduct.

150. As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

151. There were reasonably available alternatives to further Defendant's legitimate business interests. Defendant could have advertised and labeled the Products without making the false and deceptive "Dolphin Safe" statements.

152. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

153. Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

154. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

the Products. Plaintiff would not have purchased the Products if she had known that the Products were not sold as advertised.

155. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the "Dolphin Safe" representation.

### C.   "Unlawful" Prong

156. California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

157. Defendant's advertising of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et seq.,* California Business and Professions Code Section 17500, *et seq.*

158. Defendant's packaging, labeling, and advertising of the Products as being "Dolphin Safe" are false, deceptive, misleading, unfair, unlawful, and unreasonable.

159. Defendant knew or should have known of its unlawful conduct.

160. **Violations of Bus. & Prof. Code 17580,** *et seq*. **(Environmental Advertising).** Section 17580.5 makes it "unlawful for a person to make an untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied," and defines environmental marketing claims consistent with the Green Guides. The Green Guides caution marketers that "[i]t is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit," and warns marketers that such claims, for example, lead consumers to believe that the seller's wares have no negative environmental impact. 16 C.F.R. § 260.4. Similarly, section 17580 also identifies several examples of environmental labeling claims that are interpreted to mean that the product will not harm the environment, including: "environmental choice," "ecologically friendly,"

"earth friendly," "environmentally friendly," "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe," "environmentally lite," "green product," and similar terms. Indeed, section 17581 not only criminalizes such deceptive marketing claims, but authorizes the Court to award monetary penalties. The Merriam-Webster standard dictionary defines "environment" as "the complex of physical, chemical, and biotic factors (such as climate, soil, and living things) that act upon an organism or an ecological community and ultimately determine its form and survival." As previously and subsequently outlined, this case concerns dolphin safety representations that exceed the DPCIA requirements. Yet, these representations are false because the fishing methods utilized by Defendant are unsustainable and known to kill or cause harm to dolphins. Dolphins are a vital part of the natural environment not only because they are living creatures but because they keep ecosystems in balance, disperse nutrients, and mix water in stratified oceans and rivers. Thus, in labeling and advertising its Products as "Dolphin Safe" while simultaneously using unsustainable fishing methods known to harm and kill dolphins to source the tuna in the Products, Defendant is violating California law.

161. As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

162. There were reasonably available alternatives to further Defendant's legitimate business interests. Defendant could have truthfully labeled and advertised the Products.

163. All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

164. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Plaintiff

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and the Class also seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

165.  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that Defendant deceived consumers into believing the Products were "Dolphin Safe."

## COUNT FOUR

### Breach of Express Warranty

### *(brought on behalf of the Class)*

166.  Plaintiff repeats and re-alleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

167. Defendant expressly warrants that the Products are "Dolphin Safe," meaning that the tuna was sourced from fishing methods that are safe for dolphins and do not kill or harm dolphins.  Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

168. By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the challenged "Dolphin Safe" representation.

169.  All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

170.  Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the "Dolphin Safe" advertising and label claims.

171.  As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT FIVE

### Breach of Implied Warranty

*(brought on behalf of the Class)*

172.  Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

173.  Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

174.  Defendant is a merchant with respect to the Products, as it manufactures, distributes, and sells the Products nationwide.

175.  In order to be merchantable, goods must conform to the promises or affirmations of fact made on the container or labeling.

176.  Defendant breached the implied warranty of merchantability to Plaintiff and the Class in that the labels of the Products promised and affirmed that the Products were "Dolphin Safe," meaning they were sourced using fishing methods which do not kill or injure dolphins.

177.  Contrary to the promise and affirmation of fact, the Products do not conform to the challenged "Dolphin Safe" representations and, therefore, Defendant breached its warranties about the Products and their qualities.

178.  As a direct and proximate result of Defendant's breach of its implied warranty, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

amount to be proven at trial.

179. Defendant did not exclude or modify the Products' implied warranty of merchantability.

180. Plaintiff and the Class are therefore entitled to recover all available remedies for said breach.

## COUNT SIX

### Unjust Enrichment

### (*brought on behalf of the Class*)

181. Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

182. Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendant.

183. The California Supreme Court has held that an unjust enrichment claim is a standalone cause of action. *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*, 61 Cal.4th 988, 1000 (2015).

184. By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive.

185. Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

186. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

187. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

188. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

selling the Product to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances constitutes unjust enrichment.

189.  The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

190.  Plaintiff and members of the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

a. **Certification**: For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief**: For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. **Injunction**: For an order enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement**: For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Attorneys' Fees & Costs**: For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

f.  **Pre/Post-Judgment Interest**: For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

g.  **All Just & Proper Relief**: For such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a jury trial on all triable issues.

DATED: November 7, 2022                    **CLARKSON LAW FIRM, P.C.**


                                           /s/ Bahar Sodaify
                                           Ryan J. Clarkson, Esq.
                                           Bahar Sodaify, Esq.
                                           Christina N. Mirzaie, Esq.

                                           *Attorneys for Plaintiff*

FIRST AMENDED CLASS ACTION COMPLAINT