ROBERT J. PARKS (SBN 103014)
rparks@parksandsolar.com
KEITH R. SOLAR (SBN 120741)
ksolar@parksandsolar.com
PARKS AND SOLAR LLP
501 West Broadway, Suite 1540
San Diego, CA  92101
Telephone:   619 501 2700
Fax:              619 501 2300

Attorneys for Defendant,
ALDI Inc., an Illinois corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH HENRIQUEZ, *individually and on behalf of all others similarly situated*, <br><br> *Plaintiff*, <br><br> v. <br><br> *ALDI INC., an Illinois corporation*, <br><br> *Defendant*. | Case No. 2:22-CV-06060-JLS-JEM <br><br> **DEFENDANT ALDI INC.'S** <br><br> **(1)  NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; AND** <br><br> **(2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** <br><br> DATE:              February 3, 2023 <br> TIME:              10:30 a.m. <br> COURTROOM:  8A <br> JUDGE:            Josephine L. Staton |

**TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 3, 2023, at 10:30 a.m., or as soon thereafter as the parties may be heard before the Honorable Josephine L. Staton, United States District Court, Central District of California, Defendant ALDI Inc., an Illinois corporation, will and hereby does move to dismiss with prejudice the First Amended Complaint of Plaintiff, Elizabeth Henriquez ("Plaintiff"), pursuant to Rules 8(a), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  As more fully set forth in the accompanying Memorandum of Points and Authorities, Plaintiff lacks standing under Article III of the United States Constitution, fails to state a claim upon which relief can be granted, and fails to plead her fraud-based claims with sufficient particularity.

This Motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities and Request for Judicial Notice filed concurrently herewith, the pleadings, exhibits herein, and upon such other argument as may be presented at the hearing.  This motion is made following the conference calls of counsel pursuant to L.R. 7-3 which initially took place on October 17, 2022 and again on November 28, 2022.

DATED:  November 28, 2022        PARKS & SOLAR, LLP


                                By:  */s/ Robert J. Parks*
                                    ROBERT J. PARKS
                                    KEITH R. SOLAR
                                    Attorneys for Defendant,
                                    *ALDI Inc.*

1

ROBERT J. PARKS (SBN 103014)
rparks@parksandsolar.com
KEITH R. SOLAR (SBN 120741)
ksolar@parksandsolar.com
PARKS AND SOLAR LLP
501 West Broadway, Suite 1540
San Diego, CA  92101
Telephone:  619 501 2700
Fax:            619 501 2300

Attorneys for Defendant,
ALDI Inc., an Illinois corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *ELIZABETH HENRIQUEZ, individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>*v.*<br><br>*ALDI INC., an Illinois corporation,*<br><br>*Defendant.* | Case No. 2:22-CV-06060-JLS-JEM<br><br>**DEFENDANT ALDI INC.'S**<br><br>**(1)  NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>DATE:            February 3, 2023<br>TIME:            10:30 a.m.<br>COURTROOM:  8A<br>JUDGE:          Josephine L. Staton |

**TO THE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 3, 2023, at 10:30 a.m., or as soon thereafter as the parties may be heard before the Honorable Josephine L. Staton, United States District Court, Central District of California, Defendant ALDI Inc., an Illinois corporation, will and hereby does move to dismiss with prejudice the First Amended Complaint of Plaintiff, Elizabeth Henriquez ("Plaintiff"), pursuant to Rules 8(a), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  As more fully set forth in the accompanying Memorandum of Points and Authorities, Plaintiff lacks standing under Article III of the United States Constitution, fails to state a claim upon which relief can be granted, and fails to plead her fraud-based claims with sufficient particularity.

This Motion is based upon this Notice of Motion and the attached Memorandum of Points and Authorities and Request for Judicial Notice filed concurrently herewith, the pleadings, exhibits herein, and upon such other argument as may be presented at the hearing.  This motion is made following the conference calls of counsel pursuant to L.R. 7-3 which initially took place on October 17, 2022 and again on November 28, 2022.

DATED:  November 28, 2022      PARKS & SOLAR, LLP

By:  */s/ Robert J. Parks*
      ROBERT J. PARKS
      KEITH R. SOLAR
      Attorneys for Defendant,
      *ALDI Inc.*

1

TABLE OF CONTENTS

Page

I.   STATEMENT OF ISSUES TO BE DECIDED.................................................2

II.   INTRODUCTION ........................................................................................2

III.   PLAINTIFF'S ALLEGATIONS..................................................................4

IV.   LEGAL STANDARD ..................................................................................5

V.   COMPREHENSIVE FEDERAL LAW GOVERNS DOLPHIN SAFE
LABELING..........................................................................................................7

   A.   FEDERAL STATUTORY FRAMEWORK.......................................7

   B.   FEDERAL LABELING REQUIREMENTS........................................8

   C.   FEDERAL ENFORCEMENT PROCEDURES ..................................9

      1.   Enforcement of the MMPA Generally ..........................9

      2.   Enforcement of the Dolphin Safe Labeling Standard..................10

VI.   THE DOLPHIN SAFE LOGO IS NOT A SUSTAINABILITY TOOL ..........11

VII.   ARGUMENT...............................................................................................12

   A.   PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED...............12

      1.   Plaintiff Fails to Identify a Heightened Promise by Aldi .............12

      2.   Plaintiff's Claims are Field Preempted Because Congress
Occupies the Field of "Dolphin Safe" Tuna Labeling................................16

      3.   Plaintiff's Claims Are Conflict Preempted...................................17

         a.   Plaintiff's Claims Undermine the DPCIA's Objective ......18

         b.   Plaintiff's Claims Undermine the DPCIA's Regime for
Monitoring and Enforcing Accurate Use of the Uniform Dolphin Safe Standard......19

   B.   THIS CASE SHOULD BE STAYED UNDER THE DOCTRINE OF
PRIMARY JURISDICTION. ...........................................................................20

   C.   PLAINTIFF LACKS ARTICLE III STANDING ..................................21

   D.   PLAINTIFF HAS FAILED TO PLAUSIBLY SUPPORT HER
GENERAL ALLEGATIONS OF FRAUD UNDER RULE 9(b) ..............................23

   E.   NO REASONABLE CONSUMER WOULD BE MISLED BY ALDI,S
LABELING ITS TUNA PRODUCTS AS DOLPHIN SAFE....................................24

VIII.   CONCLUSION .........................................................................................25

i

1

TABLE OF AUTHORITIES

2

**Cases**

3

*Armstrong v. Exceptional Child Center, Inc.*, 135 S.Ct. 1378, 1385 (2015) ........18, 20

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)............................................................6, 24

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) .............20, 21

5

*Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d at 933–35 ................................................21

6

*Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002)....16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)..................................................6

7

*Brown v. Madison Reed, Inc.*, No. 21-CV-01233-WHO, 2021 WL 3861457, at *12

8

  (N.D. Cal. Aug. 30, 2021) ........................................................................................24

*Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-281 (9th Cir. 1973)............................10

9

*Carter v. Oath Holdings, Inc.,* 2018 WL 3067985, at *2 (N.D. Cal. June 21, 2018) .24

10

*Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) ..............................................18

*City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 638-640 (1973) ...............19

11

*Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.2008) ............................20

12

*Colette v. CV Scis., Inc.*, 2020 WL 2739861, at *1 (C.D. Cal. May 22, 2020)...........21

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-373 (2000)...............16, 17

13

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ....................22

14

*Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981)...........................................10

*Eclectic Props. East, LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 996 (9th Cir.

15

  2014)........................................................................................................................6, 7

16

*Farina v. Nokia Inc.*, 625 F.3d 97, 122 (3d Cir. 2010).................................................19

*Fouke  v. Mandel*, 386 F. Supp. 1341, 1358 (D. Md. 1974).......................................19

17

*Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)............................................24

18

*Gardner v. StarKist Co.*, 2020 U.S. Dist. LEXIS 56679 (N.D. Cal. Mar. 31, 2020)

19

  ("Gardner II")...............................................................................................3, 12, 13, 14

*Gardner v. StarKist Co.,* 418 F. Supp.3d 443 (2019) ("Gardner I").............3, 4, 13, 14

20

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000) at 881..............................19

*Glass v. Glob. Widget, LLC*, 2020 WL 3174688, at *2 (E.D. Cal. June 15, 2020).....21

21

*Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)...............................24

22

*In re Ferrero Litigation*, 794 F.Supp.2d 1107, 1113 (S.D. Cal. 2011) ......................16

*In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008)..............................6

23

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)...............................23

24

*Kane v. Chobani*, LLC, 645 F. App'x 593, 594-95 (9th Cir. 2016)............................21

*Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009)..................................7

25

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).......................6

26

*Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1280 (C.D. Cal. 2016)...........22

*Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001)..............................6

27

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 61 (1992) ................................6, 21

28

*Marantette v. Abbot Laboratories*, 886 F.3d 112, 118 (2nd Cir. 2018) ..................... 20
*Moore v. Trader Joe's Co.*, 4 F. Supp. 4th 874 (9th Cir. 2021) ................................. 25
*Perez v. Nidek Co.*, 711 F.3d 1109, 1119-1120 (9th Cir. 2013) ................................ 19
*Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016) ................. 16, 17, 19
*Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 940 (N.D. Cal. 2014 ............................ 21
*Roberts v. N. Am. Van Lines, Inc.*, 394 F. Supp. 2d 1174, 1183
   (N.D. Cal. 2004) ........................................................................................... 16, 17
*Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ...................................................... 7
*Strahan v. Coxe*, 127 Fed.3d 155, 160 (1st Cir. 1997) ................................................. 9
*Syntek Semiconductor Co. v. Microchip Tech.*, 307 10 F.3d 775, 781 (9th Cir. 2002)
   (amended) ........................................................................................................... 21
*Tran v. Sioux Honey Ass'n*, 2017 WL 5587276, at *2 (C.D. Cal. Oct. 11, 2017) ....... 21
*Transunion LLC v. Ramirez*, 141 S.Ct. 2190, 2200 (2021) ........................................ 21
*Truxel v. General Mills Sales, Inc.,* No. 4:16-cv-04957-JSW, Dkt. No. 98, at 6 (N.D.
   Cal. Aug. 13, 2019) (Order on Motion to Dismiss) ........................................ 25
*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)................... 7, 23
*Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025 (8th Cir. 2014) ............................... 23
*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) .......................................................... 16, 17

**Rules**

Fed. R. Civ. P 8 ......................................................................................................... 23
Fed. R. Civ. P 8(a)(2) ............................................................................................... 6, 7
Fed. R. Civ. P. 9 ........................................................................................................ 23
Fed. R. Civ. P 9(b) ...................................................................... 2, 4, 7, 23, 24
Fed. R. Civ. P 12(b)(1) ........................................................................................ 6, 23
Fed. R. Civ. P 12(b)(6) ................................................................................................ 6
Fed. R. Civ. P 15(a)(1)(B) ........................................................................................... 3

**Regulations**

15 C.F.R. §904.1 ......................................................................................................... 9
50 C.F.R. §216.90 ................................................................................................ 9, 21
50 C.F.R. §§216.90-95 ......................................................................................... 9, 17
50 C.F.R. §216.91(a)(1), (3)(iii)(A) .......................................................................... 10
50 C.F.R. §216.91(a)(3)(iii)(A),(B) ........................................................................... 10
50 C.F.R. §§216.91(a)(4)-(5), 216.93 ....................................................................... 10
50 C.F.R. §§216.91-216.92 ................................................................................. 13, 22
50 C.F.R. §§216.91-95 ................................................................................................ 9
50 C.F.R. §216.92 ..................................................................................................... 19
50 C.F.R. §216.92(a) ................................................................................................. 10

ALDI'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

CASE NO. 2:22-CV-06060-JLS-JEM

50 C.F.R. §216.93 ................................................................................. 10, 19

50 C.F.R. §216.93 (c-g) ............................................................................. 24

50 C.F.R. §216.93(c)(1)(i), (2)(i), (3)(i) ................................................... 10

50 C.F.R. §216.93(d)(2) ............................................................................ 12

50 C.F.R. §216.93(d)(2)(i)-(ii), (e) .......................................................... 12

50 C.F.R. §216.93(f)(3) ............................................................................ 12

50 C.F.R. §216.93(g)(1)) .......................................................................... 24

50 C.F.R. §216.94 .................................................................................... 23

**Statutes**

15 U.S.C. §45 ........................................................................................... 10

15 U.S.C. §45(a) ....................................................................................... 10

15 U.S.C. §45(a)(2) ................................................................................... 10

16 U.S.C. §1361 .......................................................................................... 7

16 U.S.C. §1361(5)-(6) ................................................................................ 7

16 U.S.C. §1377(a) ................................................................................. 9, 19

16 U.S.C. §1377(b) ...................................................................................... 9

16 U.S.C. §1385 ........................................................................................ 25

16 U.S.C. §1385(b)(3) ............................................................................... 17

16 U.S.C. §1385(d) .............................................................................. 16, 18

16 U.S.C. §1385(d)(1) ............................................................................... 10

16 U.S.C. §1385(e) .............................................................................. 10, 19

16 U.S.C. §1385(f)(6) ............................................................................... 11

16 U.S.C. §1385(h) ................................................................................... 16

16 U.S.C. §1739(a) ...................................................................................... 9

16 U.S.C. §1826(g) .................................................................................... 19

16 U.S.C. §1826g(a)-(c) ............................................................................ 10

16 U.S.C. §1826g(c)(2) ............................................................................. 10

16 U.S.C. §1857(1)(I) ................................................................................ 10

16 U.S.C. §1857(1)(L) .............................................................................. 10

16 U.S.C. §1858 ........................................................................................ 10

16 U.S.C. §1858-1861 .............................................................................. 19

16 U.S.C. §1859 ........................................................................................ 10

16 U.S.C. §1860 ........................................................................................ 10

16 U.S.C. §1861 ........................................................................................ 10

ALDI'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

CASE NO. 2:22-CV-06060-JLS-JEM

**Other Authorities**

104 Fed. Reg. 34408-34410 ........................................................................... 17

*Dolphin Protection Consumer Information Act:  Hearing on S. 2044 Before the S. Comm. on Com., Sci., & Transp.*, 101st Cong. 15-16 (1990) (statement of S. J. Biden, Sponsor) ........................................................................... 21

*Dolphin Protection Consumer Information Act: Hearing on S. 2044 Before the S. Comm. on Com., Sci., & Transp.*, 101st Cong. 13-14 (1990) .................................. 21

*First Written Submission of the United States of America* (May 27, 2019), Measures Concerning the Importation, Marketing and Sale of Tuna and Tuna Products: Recourse to Article 21.5 of the DSU by Mexico (DS381), ¶ 53 ............................ 13

*Labeling of Tuna Products: Hearing on H.R. 2926 and H.R. 2948 Before the H. Comm. on Energy & Com.*, 101st Cong. 13-14, 18 (1990) ...................................... 21

*Labeling of Tuna Products: Hearing on H.R. 2926 and H.R. 2948 Before the H. Comm. on Energy & Com.*, 101st Cong. 17-18 (1990) ........................................... 21

*Modifying Fishing Gear Reduces Shark Bycatch in the Pacific*, NOAA, https://www.fisheries.noaa.gov/feature-story/modifying-fishing-gear-reduces-shark-bycatch-pacific (August 16, 2022) .................................................................. 16

*NOAA Fisheries Rejects Technology to Protect Threatened and Endangered Sea Turtles*, OCEANA: Protecting the World's Oceans, https://oceana.org/press-releases/noaa-fisheries-rejects-technology-protect-threatened-and-endangered-sea/ (October 15, 2009) ........................................................................................... 16

*Sea Turtles and Circle Hooks in the NYT*, OCEANA: Protecting the World's Oceans, https://usa.oceana.org/blog/sea-turtles-and-circle-hooks-nyt/, (February 17, 2011) ........................................................................................................................ 16

WTO Appellate Body Report, United States – Measures Concerning the Importation, Marketing and Sale of Tuna and Tuna Products, WTO Doc. WT/DS381/AB/R (16 May 2012) ........................................................................................................ 19

Defendant, ALDI Inc., an Illinois corporation ("Aldi"), respectfully submits this memorandum of points and authorities in support of its motion to dismiss the First Amended Complaint ("FAC") of Plaintiff, Elizabeth Henriquez ("Plaintiff").

## I.  STATEMENT OF ISSUES TO BE DECIDED

(1)   Are Plaintiff's state-law consumer protection claims  preempted by federal laws governing the use of Dolphin Safe labels?

(2)   Should the Court stay this matter under the doctrine of primary jurisdiction in favor of the federal agencies established to enforce the Marine Mammal Protection Act ("MMPA")?

(3)   Does the Court lack subject matter jurisdiction because Plaintiff has failed to establish injury under Article III of the United States Constitution?

(4)   Does Plaintiff fail to plead her fraud claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure?[1]

## II.   INTRODUCTION

Aldi sells tuna with a Dolphin Safe label in accordance with and reliance on the Dolphin Protection Consumer Information Act ("DPCIA"), which *comprehensively* governs the requirements for the use of that term on tuna product labels and makes it unlawful to claim a tuna product is Dolphin Safe if it contains tuna harvested in a manner that does not comply with DPCIA requirements.  16 U.S.C. §1385.  Plaintiff filed a Class Action Complaint against Aldi on August 25, 2022, and, prior to Defendant's filing of a responsive pleading, Plaintiff filed the FAC on November 7, 2022.  Plaintiff's FAC essentially is an attack on Aldi's use of a Dolphin Safe logo, authorized by the DPCIA, on its Northern Catch Light Tuna in Water and Northern Catch Solid White Tuna Albacore in Water (sometimes hereinafter the "Product(s)").  Plaintiff alleges that the methods Aldi's suppliers used to harvest tuna are known to kill and harm dolphins and therefore the Dolphin Safe logo is deceptive and

---

[1] All future references herein to a "Rule" or the "Rules" shall be to the Federal Rules of Civil Procedure.

misleading.  Plaintiff makes no allegation that the Product she purchased with a Dolphin Safe logo fails to comply with DPCIA requirements.  The FAC did not and could not allege a heightened promise or standard or a long-term, pervasive advertising campaign by Aldi as was dispositive in Gardner I and Gardner II, *infra*.

In the FAC, Plaintiff tries to manufacture a heightened promise by alleging that, through the mere use of the Dolphin Safe logo on Aldi's Products, Aldi is making sustainability claims about alleged impacts of certain tuna fishing gear on marine mammal populations or human rights in the commercial fishing industry, generally.  However, the FAC does not plausibly allege Aldi's use of the Dolphin Safe logo conveys any type of sustainability claim or heightened Dolphin Safe promises, or that Aldi otherwise engaged in any long-term, pervasive advertising campaign concerning Dolphin Safe tuna.  Plaintiff's overexpansive stretch of the label's meaning is not reasonable.  Nowhere does the FAC allege that Aldi made any statements implying a broader meaning about its Dolphin Safe labeled canned tuna than what the DPCIA intends, or that Plaintiff relied on any statement other than the words "Dolphin Safe."

Moreover, Plaintiff fails to allege that she ever filed a complaint about Aldi's tuna products with either of the primary agencies responsible for enforcement of the law, the Federal Trade Commission ("FTC") or the National Oceanic and Atmospheric Administration ("NOAA").

Based on her subjective personal concerns about tuna fishing practices generally, Plaintiff tries to plead violations of California consumer protection statutes and common law (collectively the "State Law Claims").[2]  Despite attempts to shore up her claims with allegations that Aldi made heightened promises of Dolphin Safe

---

[2] The State Law Claims are: (1) violation of the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*; (2) violation of the False Advertising Law, Cal. Bus. & Prof. Code §17500, *et seq.*; (3) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*; (4) breach of express warranty; (5) breach of implied warranty; and (6) unjust enrichment.  FAC ¶¶ 104-190.

practices that exceed DPCIA requirements, Plaintiff's claims remain an attack on the federally sanctioned logo Congress approved years ago.  This contrasts starkly to the facts alleged in Gardner I, *infra*, where defendant, StarKist, was alleged to have its own Dolphin Safe policy, which pre-dated the DPCIA, and to have made specific promises under state law about its intended meaning of Dolphin Safe, which exceeded the requirements of the DPCIA.  The FAC should be dismissed with prejudice, without leave to amend for the following reasons:

First, the State Law Claims are preempted as Congress intended that the DPCIA *exclusively* govern the meaning and use of the Dolphin Safe label.

Second, the DPCIA does not permit a private right of action, and this matter should be stayed under the primary jurisdiction doctrine.

Third, in the FAC, Plaintiff still fails to plead a concrete injury to her, and thus she does not have standing under Article III of the United States Constitution.

Fourth, Plaintiff's State Law Claims sound in fraud, but Plaintiff has failed to plead those claims with the particularity Rule 9(b) requires.

## III.   PLAINTIFF'S ALLEGATIONS

Plaintiff, a resident of California, alleges that she was deceived by Dolphin Safe labels on certain Aldi tuna products.  FAC ¶¶ 9 and 10.  Plaintiff alleges that Aldi makes misleading Dolphin Safe promises and representations that exceed DPCIA requirements since the Products were sourced using longline and purse seine fishing methods that kill and injure dolphins instead of being caught using the pole-and-line fishing method, which only accounts for eight percent of tuna caught today.  FAC ¶¶ 48, 52, 53, 54 and 59.  Plaintiff repeats some variant of this generalized grievance throughout the FAC.  S*ee* FAC ¶¶ 3, 9, 39, 45, 48, 52-54, 60, 80 and 147.

Plaintiff alleges that Aldi engaged in an "extensive marketing campaign premised on its dolphin safety and sustainability promises that exceed DPCIA requirements."  FAC ¶33.  In support, the FAC lists the only alleged marketing Plaintiff could find: 1) Aldi's use of its own Dolphin Safe label on its canned tuna

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO ALDI'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT                                    CASE NO. 2:22-CV-06060-JLS-JEM

products and packaging; 2) the use of the words "Wild Caught" on Aldi's canned tuna products with no reference or connection to Dolphin Safe; 3) the use of the words "sustainable" or "sourcing responsibly" on Aldi's website and social media with no reference or connection to Dolphin Safe; and 4) Aldi's involvement with the International Seafood Sustainability Foundation ("ISSF"), Seafood Task Force ("STF") and Ocean Disclosure Project ("ODP") with no connection to the Dolphin Safe label.  FAC ¶¶ 3, 33.

More telling, and ultimately fatal to Plaintiff's FAC, is what Plaintiff does ***not*** allege.  The FAC fails to allege any form of a heightened promise made by Aldi to or for consumers regarding Dolphin Safe.  Specifically, the FAC does not allege that: (1) any tuna product *Aldi sold* contained tuna caught using purse seine nets intentionally deployed on or used to encircle dolphins; (2) any dolphins were killed or seriously injured in the sets or gear deployments in which the tuna *Aldi sold* were caught; (3) Aldi violated the DPCIA in any way; (4) Aldi has included any website information or explanations or issued any press releases about how Aldi markets tuna it sold with the Dolphin Safe logo on the product packaging; (5) Aldi has promised that it will not purchase any tuna caught in association with dolphins or refuse to purchase tuna caught with gill or drift nets; (6) Aldi has promised its tuna products are 100% Dolphin Safe, (7) Aldi has any Dolphin Safe policy; (8) Aldi promises only Dolphin Safe tuna will be acceptable; (9) Dolphin Safe tuna is a part of Aldi's sustainability objectives; or (10) Aldi made any statement about any protection afforded dolphins.  Despite attempts to conflate sustainability with the use of the Dolphin Safe label, Plaintiff's FAC boils down to critiques of Aldi's use of a federally permitted Dolphin Safe logo on its canned tuna products and pictures of those products that include the words Dolphin Safe, without more, on its website.

## IV.   LEGAL STANDARD

Under Rule 12(b)(6), a district court must dismiss a cause of action if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facial plausibility is met when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly, supra,* at 570. *Ashcroft v. Iqbal, supra,* at 678. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly, supra,* at 555, 570.

In deciding a motion to dismiss for failure to state a claim, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).

Courts may consider the complaint, exhibits and other "material which [are] properly submitted as part of the complaint," and judicially noticed documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001).

Additionally, as to Article III standing, "Federal Courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Without "injury in fact" that is "fairly traceable to the challenged actions of the defendant[,]" Article III standing is lacking, and a complaint must be dismissed under Rule 12(b)(1). *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 61 (1992).

Rule 8(a)(2) requires only a general pleading standard. However, the Ninth Circuit has established two principles that apply in assessing the sufficiency of a pleading under Rule 8(a)(2). First, allegations that simply recite the elements of a cause of action are not entitled to a presumption of truth. *Eclectic Props. East, LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 996 (9th Cir. 2014). Second, "the factual

allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011)). Moreover, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation." *Eclectic Props. East, LLC,* 751 F.3d at 996. Rather, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Id.* at 996-97.

Finally, claims grounded in fraud must satisfy Rule 9(b)'s heightened pleading standard. When a plaintiff alleges fraud or mistake, the plaintiff must "set forth more than the neutral facts necessary to identify the transaction." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Specifically, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co., supra*, at 1124.

## V.   COMPREHENSIVE FEDERAL LAW GOVERNS DOLPHIN SAFE LABELING

### A.   FEDERAL STATUTORY FRAMEWORK

The federal government has regulated protection of marine mammals for fifty (50) years. In 1972, Congress enacted the MMPA, which sets forth a comprehensive regulatory regime governing the commercial fishing industry. 16 U.S.C. §1361 *et seq*. Congress's "primary objective" in enacting the MMPA was to maintain an "optimum sustainable population" of marine mammals, while recognizing their great "international significance" and importance in ensuring the "continuing availability of [marine mammals and products, and other animal products] which move in interstate commerce." 16 U.S.C. §1361(5)-(6). The MMPA declared as Congressional policy that international arrangements were necessary for a *uniform*

1  system of rules and enforcement to conserve marine mammals and govern interstate

2  commerce.

3    In 1990, Congress added the DPCIA to the MMPA in response to growing

4  concern about dolphin mortalities in the Eastern Tropical Pacific Ocean ("ETP") and

5  to promote Dolphin Safe labeling by setting clear requirements for such labeling

6  within the *exclusive province* of the Department of Commerce ("DOC") and its

7  member agencies, including NOAA.  The DPCIA added certification, tracking and

8  verification procedures for tuna labeled Dolphin Safe, and its accompanying

9  regulations explicitly establish, regulate and enforce uniform requirements to put a

10  Dolphin Safe label on tuna products. *See generally* 16 U.S.C. §1385(d); 50 C.F.R.

11  §216.90 *et seq*.  In enacting the DPCIA, Congress balanced competing interests of

12  domestic environmental groups, the United States' commercial food industry,

13  international trade partners and consumer desire to be informed about interactions

14  with marine mammals in tuna fishing.  The Secretary of Commerce (the "Secretary")

15  delegated regulatory authority to NOAA and its constituent agency, the National

16  Marine Fisheries Service ("NMFS"), 50 C.F.R. §216.90-95; 15 C.F.R. §904.1, and

17  the Secretary and NOAA have implemented and enforced a mandated *uniform*

18  certification program for Dolphin Safe labeling of tuna products for the last 32 years.

19    The federal statutory framework is exceedingly thorough and successful.

20  Voluntary compliance with these programs to meet Dolphin Safe labeling standards

21  has reduced dolphin mortality from 133,000 per year to about 1,000 per year, a

22  remarkable 99% reduction.

23    **B.**  **FEDERAL LABELING REQUIREMENTS**

24    Under federal law, tuna may be labeled Dolphin Safe if the fishing practices

25  are documented as meeting certain specific federal requirements.  50 C.F.R. §216.91-

26  95.  Depending on the ocean where the set occurred, tuna caught using the purse

27  seine or longline fishing method may be labeled Dolphin Safe if it is certified that

28  "[n]o purse seine net or other fishing gear was intentionally deployed on or used to

- 8 -

encircle dolphins during the fishing trip in which the tuna were caught, and that no dolphins were killed or seriously injured in the sets or other gear deployments in which the tuna were caught," 50 C.F.R. §216.91(a)(1), (3)(iii)(A).

The certification requirements are thorough and complex. For example, for tuna caught in the ETP by a vessel using the purse seine method, both the captain of the vessel and the on-board observer must certify in writing that the federal requirements were followed. 50 C.F.R. §§216.92(a). For tuna caught outside the ETP by a vessel using the purse seine method, vessel captains must certify in writing that the federal requirements were followed and that they "completed the NMFS Tuna Tracking and Verification Program dolphin-safe captain's training course." 50 C.F.R. §216.91(a)(3)(iii)(A),(B).

Under the DPCIA, all tuna designated as Dolphin Safe, whether caught within or outside the ETP, must be stored separately from tuna caught in non-Dolphin Safe sets from the moment of capture through unloading. 50 C.F.R. §216.93(c)(1)(i), (2)(i), (3)(i). Tuna caught and designated as Dolphin Safe also requires "chain of custody" record-keeping to allow NMFS to trace any non-Dolphin Safe tuna to storage facilities and to ensure it was kept physically separate from Dolphin Safe tuna. 50 C.F.R. §§216.91(a)(4)-(5), 216.93.

### C.   FEDERAL ENFORCEMENT PROCEDURES

### 1.   Enforcement of the MMPA Generally

The MMPA expressly states that "[e]xcept as otherwise provided in this subchapter, the Secretary [of Commerce] shall enforce the provisions of this subchapter." 16 U.S.C. §1377(a). The Secretary's authority to enforce the MMPA, including the DPCIA, is exclusive; ***there is no private right of action***. *Strahan v. Coxe*, 127 Fed.3d 155, 160 (1st Cir. 1997).

In addition to designating the Secretary to enforce the MMPA, Congress gave the Secretary the authority to deputize officers and employees of a State to "function as Federal law enforcement agents" strictly for the purpose of policing the MMPA.

16 U.S.C. §1377(b).  Except as so authorized, a State is prohibited from enforcing, or attempting to enforce, any state law or regulation concerning marine mammals.  16 U.S.C. §1739(a).  Through this enforcement scheme, Congress made clear that dolphin protection and the adoption of uniform Dolphin Safe labeling standards are exclusively matters of federal law.

### 2.  Enforcement of the Dolphin Safe Labeling Standard

Congress chose to enforce the DPCIA through two exclusive avenues.  First, Section 1385(d)(1) makes it a violation of the Federal Trade Commission Act (the "FTCA"), 15 U.S.C. §45, for any tuna producer, importer, exporter, distributor, or seller to "falsely claim[] or suggest that the tuna contained in the product were harvested using a method of fishing that is not harmful to dolphins."  16 U.S.C. §1385(d)(1).  Section 45(a)(1) of the FTCA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  15 U.S.C. §45(a).  Under the FTCA, there is no private right of action; the FTC brings enforcement actions.  15 U.S.C. §45(a)(2).  *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981); *Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280-281 (9th Cir. 1973).

Second, the DPCIA states the Secretary "shall enforce" conservation laws, including the DPCIA and MMPA.  16 U.S.C. §1385(e); 1826g(a)-(c), 1858-1861.  NOAA has authority to issue injunctions and "assess civil penalties, impose permit sanctions, issue written warnings, and/or seize and forfeit property in response to violations."  15 C.F.R. §§904.1(c).  The federal government has tasked NOAA with establishing a tracking and verification program, which requires participants in the commercial fishing industry to maintain detailed Dolphin Safe documentation at every stage of the supply chain, requires such documentation to be provided to the U.S. government prior to Dolphin Safe tuna's importation into the United States, and authorizes NOAA to conduct periodic audits and spot checks.  50 C.F.R. §216.93(f)(3); 16 U.S.C. §1385(f)(6).  U.S. tuna processors are required to submit

- 10 -

monthly reports to NOAA for all tuna received at their processing facilities. 50 C.F.R. §216.93(d)(2)[3]  NOAA can seize as evidence, re-export, destroy, or confiscate tuna products found to be wrongly labeled as Dolphin Safe.  NOAA can assess sanctions for selling or exporting tuna products falsely labeled Dolphin Safe against any producer, importer, exporter, distributor, or seller subject to the jurisdiction of the United States.  S*ee First Written Submission of the United States of America* (May 27, 2019), Measures Concerning the Importation, Marketing and Sale of Tuna and Tuna Products:  Recourse to Article 21.5 of the DSU by Mexico (DS381), ¶ 53.  Tuna imported into the United States, in compliance with this statutory certification program, may be labeled Dolphin Safe.  50 C.F.R. §§216.91-216.92.

## VI.    THE DOLPHIN SAFE LOGO IS NOT A SUSTAINABILITY TOOL

Sustainability is a complex and complicated topic that defies attempts to encapsulate its meaning within one standard definition.  Scientists, NGOs and environmental groups have varying arguments as to what the nebulous term may mean.  Even the FTC has explicitly declined to define the term "sustainable."  FTC, Green Guides, Statement of Basis and Purpose, at 258 (Oct. 1, 2012), https://bit.ly/2TQ7GL9.

Although Congress had a sustainability intent in enacting the MMPA, Congress did not enact a total moratorium on the "taking" or importation of marine mammals through the MMPA, but instead specifically created an exemption to the moratorium for commercial fishing operations, setting quotas or limits on the number of "takes" per year allowed.  H.R. 97-228, reprinted at 1981 U.S.C.C.A.N.  1458.  For example, as of 1980, the Secretary set a quota of 20,500 dolphin takes per year, as Congress deemed this a "sustainable" number of mortalities without harming the population as a whole.  *Id.*

---

[3] These reports contain the species, condition, weight, ocean area of capture, catching vessel, gear type, trip dates, carrier name, unloading dates, location of unloading and, if the tuna products are designated as Dolphin Safe, the required certifications for each shipment of tuna.  50 C.F.R. §216.93(d)(2)(i)-(ii), (e).

In stark contrast, the DPCIA purely is a labeling measure, with a complex series of federal enforcement and governance mechanisms. The DPCIA did not place a moratorium on fishing methods, bycatch, or marine mammal mortalities. It was not drafted with the intent to "maintain optimum sustainable populations" and did not place a moratorium on tuna importation. Instead, the Dolphin Safe label was intended to provide a clear "standard for what 'Dolphin Safe' means and an enforcement mechanism so consumers can be sure that when they look on the marketing shelf and a tuna can says 'Dolphin Safe,' in fact that is true." 136 Cong. Rec. S14953-03, S14973 (1990) (statement of Sen. Biden). The Dolphin Safe logo, at its core, is not a sustainability measure.

## VII. ARGUMENT

### A. PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED

Plaintiff alleges that she "does not seek to impose additional or conflicting labeling, testing, or warning requirements as it relates to the 'Dolphin Safe' claim; rather, Plaintiff seeks to cure [Aldi's] deceptive labeling of the Products as 'Dolphin Safe,' which is not mandated by the FDA." FAC ¶89. However, Plaintiff plainly mounts a direct challenge to the DPCIA's uniform "Dolphin Safe" labeling standard, arguing that its provisions only "create a minimum set of requirements for use of the dolphin-safe label, and do not create a substantive right for use of any such label, regardless of any other laws or regulations." FAC ¶ 30. This would nullify the DPCIA and create a patchwork of state-by-state Dolphin Safe labeling rules. However, the DPCIA field and conflict preempts Plaintiff's State Law Claims.

#### 1. Plaintiff Fails to Identify a Heightened Promise by Aldi

Plaintiff asserts that, in *Gardner v. StarKist Co.*, 2020 U.S. Dist. LEXIS 56679 (N.D. Cal. Mar. 31, 2020) ("Gardner II"), the court denied a motion to dismiss on preemption grounds and ruled that "the defendant's 'Dolphin Safe' representations misled reasonable consumers since [StarKist's] fishing techniques of purse seine and longline fishing were known to cause dolphin injuries and deaths." FAC ¶ 80. In

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO ALDI'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT                                          CASE NO. 2:22-CV-06060-JLS-JEM

1    fact, the court found that "plaintiffs allege that StarKist misled consumers by

2    promising a dolphin-safety level *higher than the DPCIA requirements* while at the

3    same time employing fishing methods widely known to kill and harm substantial

4    numbers of dolphins."  Gardner II, at *19.

5          Moreover, Gardner II relied on the reasoning in a prior order in the same case,

6    *Gardner v. StarKist Co.,* 418 F. Supp.3d 443 (2019) ("Gardner I"), where the court

7    described the  nature of this alleged higher promise.  Specifically, the court found that

8    the Gardner I plaintiffs sufficiently pleaded that StarKist held itself to a higher

9    promise by offering factual allegations of a "long-term, pervasive advertising

10   campaign" beginning as early as 1990, where StarKist issued a statement to

11   consumers that it was committed to "[p]roviding consumers with sustainable and

12   dolphin safe tuna," that it does "not and will not utilize tuna caught in a manner that

13   harms dolphins," and that "StarKist also reiterates its dolphin-safe pledge in multiple

14   social media posts till this day."  Gardner I, at 456 - 457.  Additionally, the plaintiffs

15   alleged StarKist "was the first major tuna company" to announce its own "Dolphin

16   Safe Policy," which in part stated it "continues its practice of refusing to purchase

17   tuna caught with gill or drift nets which are known to be dangerous to many forms of

18   marine life." *Id*. at 456.  And they alleged StarKist encouraged consumers to view its

19   Dolphin Safe Policy on its products and touted its unique Dolphin Safe Policy

20   through news conferences, in press releases, on its website, and on social media.  *Id.*

21         The court explained that in Gardner I plaintiffs "contend[ed] that while the

22   DPCIA set the floor for what a 'dolphin-safe' promise must mean, the federal

23   regulations 'do not prevent manufacturers of tuna products from making their own,

24   albeit *more stringent*, dolphin-safe promises to consumers,'" and "claim[ed] that

25   StarKist has set itself to a *higher standard* because it promises consumers that its

26   tuna products are *100% dolphin safe*." 418 F. Supp.3d at 455 (emphasis added).

27   Based upon the above factors, the court determined plaintiffs' complaint "sufficiently

28   allege[d] that they believed, as consumers, that StarKist set itself to a *high dolphin-*

*safe standard*," 418 F. Supp. 3d at 456 (emphasis added); and, it was these allegations, which went far beyond use of the words "Dolphin Safe" on a product label, that were found "sufficient at the pleading stage to allege that StarKist set itself to a *higher dolphin-safe standard* that led consumers to believe *no dolphins* were harmed in the making of their tuna products." *Id*. (emphasis added).  StarKist's argument that DPCIA preempted the state law claims in that action was rejected expressly because "the plaintiffs' state law claims are not premised on DPCIA violations, but on how StarKist fraudulently advertised its own *heightened dolphin-safe standard,*" and so the relevant issue was "not whether the DPCIA preempts plaintiff's state law claims but whether the FTCA does." *Id*. at 459 (emphasis added).  This took Gardner I from a case about DPCIA compliance to a case about whether StarKist knowingly violated its own heightened Dolphin Safe promises in violation of the FTCA.

The FAC tries to fit within the reasoning of Gardner I and Gardner II, but only manages conclusory allegations of a "heightened" Dolphin Safe promise by Aldi.  The FAC is devoid of allegations regarding a long-term, pervasive advertising campaign of any kind, an Aldi Dolphin Safe policy, Aldi labels directing consumers to its website, statements that Aldi's tuna Products are 100% Dolphin Safe, or news conferences, press releases, social media posts, and website statements about Dolphin Safe pledges or commitments.  Without more, the FAC essentially assails Aldi's use of the DPCIA-permitted Dolphin Safe logo and requests injunctive relief.

Plaintiff identifies six ways in which Aldi purportedly made a heightened Dolphin Safe promise.  First, Plaintiff alleges Aldi's use of the federally permitted alternative Dolphin Safe logo was in itself a heightened promise.  16 U.S.C. §1385(d)(3)(c).  The FAC identifies two instances wherein Aldi has ever stated the words "Dolphin Safe" – the Dolphin Safe logo on the Products and the Product's "Description" online, which lists "dolphin safe" in addition to other attributes.  FAC ¶¶ 33, 34.  Plaintiff has not identified *a single other instance* where Aldi has ever

1    stated the words "dolphin safe," or otherwise made a claim about dolphin safety.

2        Second, Plaintiff asserts Aldi "advertising that "the fishing methods used to

3    source the tuna in the Products, purse seine (free school) or longline, pole and line,

4    are sustainable and 'Dolphin Safe.'"  FAC ¶ 3.  To substantiate this claim, Plaintiff

5    provided pictures of the Products' cans, where the back of the can lists the scientific

6    name for the species of tuna, the area of the ocean it was caught in, and the fishing

7    method.  However, Plaintiff does not identify a single statement connecting any of

8    that information to a Dolphin Safe promise, heightened or otherwise.

9        Third, Fourth and Fifth, Plaintiff points to claims regarding "sustainability,"

10   "responsible sourcing" or "wild caught."  However, her allegations conflate two

11   related but distinct issues: environmental sustainability efforts and the Dolphin Safe

12   label.  Plaintiff has not identified a single "sustainability" or "responsible sourcing"

13   representation on the tuna Product labels, in any Aldi point of purchase materials, or

14   on Aldi's webpage displaying the Products or their details that relates the words

15   Dolphin Safe to "sustainability," "responsible sourcing" or "wild caught."

16       Sixth, Plaintiff alleges Aldi's involvement in ISSF, STF and the ODP, but

17   makes zero connection to the Dolphin Safe logo.

18       Simply put, unlike in *Gardner,* Plaintiff does not allege Aldi discussed dolphin

19   safety in any manner apart from using a Dolphin Safe label or the mere words

20   "Dolphin Safe."  Plaintiff's allegations still boil down to the same central issue -

21   whether the mere inclusion of the words "Dolphin Safe" on a product label can create

22   some heightened promise to consumers under state law that goes above and beyond

23   the labeling requirements of the DPCIA.

24       The requirements for the use of a Dolphin Safe label are set forth in the DPCIA

25   and its implementing regulations.  16 U.S.C. §1385(d); 50 C.F.R. §216.90-95; 104

26   Fed. Reg. 34408-34410.  Any improper use of a Dolphin Safe label is subject to

27   enforcement and remedy by a federal agency, such as NOAA and the FTC.  Allowing

28   Plaintiff to attack Aldi's use of a federally permitted Dolphin Safe logo under state

- 15 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO ALDI'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT                                    CASE NO. 2:22-CV-06060-JLS-JEM

1   law, when Aldi has made no other, "higher" promises, circumvents Congress' intent

2   to establish uniform regulatory standards for Dolphin Safe labeling.

3       **2.      Plaintiff's Claims are Field Preempted Because Congress Occupies**

4                **the Field of "Dolphin Safe" Tuna Labeling**

5       Preemption may be implied where a state law is asserted in an area or field

6   fully occupied by federal regulation.  *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103

7   (9th Cir. 2016).  Field preemption is found where (1) the Congressional "regulatory

8   framework is so pervasive" or "occupies the field" such that there is no room for state

9   regulation, or (2) where the "federal interest [is] so dominant that the federal system

10  will be assumed to preclude enforcement of state laws on the same subject."  *Id.* at

11  1103-1104; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-373 (2000);

12  *see also Bank of Am. v. City & Cnty. of San Francisco,* 309 F.3d 551, 558 (9th Cir.

13  2002); *In re Ferrero Litigation*, 794 F.Supp.2d 1107, 1113 (S.D. Cal. 2011).  In field

14  preemption cases, congressional intent is the touchstone inquiry.  *Wyeth v. Levine*,

15  555 U.S. 555, 565 (2009).

16      As referenced in Part V.A., *supra,* by enacting the DPCIA, Congress created a

17  uniform national standard for labeling tuna products as Dolphin Safe to provide a

18  uniform consumer understanding.  See 16 U.S.C. §§ 1385(d), 1385(h); 50 C.F.R. §§

19  216.91, 216.92, 216.93.  These laws "comprise the comprehensive and pervasive

20  federal regulation of" Dolphin Safe labeling of tuna products.  *Roberts v. N. Am. Van*

21  *Lines, Inc.*, 394 F. Supp. 2d 1174, 1183 (N.D. Cal. 2004).  "In light of the breadth of

22  the federal regulation in this area, it is reasonable to infer that Congress left no room

23  for the States to supplement it."  *Id.* (citing *Bank of Am.,* 309 F.3d 558).  Moreover,

24  the DPCIA requires the Secretary to consider international implications of Dolphin

25  Safe labeling which the World Trade Organization ("WTO") has noted occupy the

26  entire field of labeling tuna as Dolphin Safe.  *See* WTO Appellate Body Report,

27  United States – Measures Concerning the Importation, Marketing and Sale of Tuna

28  and Tuna Products, WTO Doc. WT/DS381/AB/R (16 May 2012).

In the FAC, however, Plaintiff seeks to prohibit, on state law grounds, Dolphin Safe labeling of tuna caught by vessels deploying purse seine nets or longlines, regardless of compliance with the extensive federal requirements for Dolphin Safe labeling.  By attempting to use state law to impose Dolphin Safe labeling requirements that are more strict or vary from the federal requirements, the FAC encroaches into each and every policy that Congress carefully balanced in creating a federal regulatory framework that fully and comprehensively set the standards for Dolphin Safe labeling in the tuna industry and for consumers.  Thus, "allowing Plaintiffs' claims to proceed would . . . compromise the uniformity and certainty of the national scheme" and "create a new scheme of potential liability." *Roberts*, 394 F. Supp. 2d at 1183.  This would allow states, rather than the federal government, to set the floor for what a Dolphin Safe label means, removing the critical certainty the DPCIA creates.  This is "exactly what Congress was trying to avoid by entering this field." *Id.*  Plaintiff's State Law Claims are field preempted.

### 3.    Plaintiff's Claims Are Conflict Preempted

Preemption may be implied where state law is asserted in an area or field where it conflicts with federal law.  *Puente Arizona, supra, at* 1103.  Conflict preemption is found where state law (1) "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," or (2) "it is impossible to comply with both federal and state law." *Id.*  Congressional intent is paramount.  *See Wyeth, supra, at* 565; *see also Crosby*, 530 U.S. at 373.  In enacting the DPCIA, Congress found that "consumers would like to know if the tuna they purchase is falsely labeled as to the effect of the harvesting of the tuna on dolphins." 16 U.S.C. § 1385(b)(3).  The legislative history confirms the Congressional intent for the DPCIA to create a uniform Dolphin Safe standard.  *Dolphin Protection Consumer Information Act: Hearing on S. 2044 Before the S. Comm. on Com., Sci., & Transp.*, 101st Cong. 13-16 (1990); (statements of S. J. Biden and Rep. B. Boxer, Sponsors); *Labeling of Tuna Products: Hearing on H.R. 2926 and H.R. 2948 Before the H.*

- 17 -

*Comm. on Energy & Com.*, 101st Cong. 13-14, 17-18 (1990).  The DPCIA implementing regulations confirm that Congress intended the DPCIA to "govern[] the requirements for using . . . an alternative mark [other than the official DOC logo] . . . to label tuna or tuna products offered for sale in . . . the United States using the term dolphin-safe."  50 C.F.R. §216.90.  Plaintiff's assertion of state law conflicts with federal law because it stands as an obstacle to the DPCIA's objectives of (a) setting a uniform definition of Dolphin Safe in tuna labeling, and (b) creating a specific regime to monitor and enforce labeling to ensure consistency with that definition.

### a.  Plaintiff's Claims Undermine the DPCIA's Objective

The DPCIA and implementing regulations have a complex set of rules for the labeling of tuna as Dolphin Safe.  See Section V.B., *supra*.  This "comprehensive framework" of "precisely-detailed" requirements for Dolphin Safe labeling shows the uniform Dolphin Safe standard intended by Congress with the DPCIA.  *Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010); *see also, Armstrong v. Exceptional Child Ctr., Inc.,* 135 S. Ct. 1378, 1385 (2015).  Plaintiff's State Law Claims attempt to set a new standard for Dolphin Safe labeling that would undermine this uniformity.  Plaintiff alleges that use of purse seine and longline fishing methods is never Dolphin Safe and that state law imposes obligations on tuna sellers different than and in addition to those the DPCIA contemplates, and prohibits using a Dolphin Safe mark even where the DPCIA allows it.  This directly conflicts with Congress' express *permission* to label tuna caught using purse seine and longline fishing methods as Dolphin Safe.  16 U.S.C. §1385(d); 50 C.F.R. §216.91-216.92.

Plaintiff's demand that Aldi meet conflicting state law standards for Dolphin Safe compliance is conflict preempted.  See 50 C.F.R. § 216.90.  This is precisely the dynamic the FTC explained a decade ago in rejecting a Dolphin Safe enforcement action based on a hypothetical "gap between what consumers understand 'dolphin-safe' to mean and what 'dolphin-safe' means as defined in the relevant statutes."  See Request for Judicial Notice Ex. [1] (FTC-FOIA0000009-10) (FTC would not take

1  action against marketers complying with existing comprehensive regulatory

2  framework regarding dolphin-safe claims to avoid imposing potentially inconsistent,

3  duplicative requirements).  Whether Plaintiff intended to challenge the adequacy of

4  the federal Dolphin Safe labeling standard, "the inescapable effect of [her] complaint

5  is to do so."  *Farina v. Nokia Inc.*, 625 F.3d 97, 122 (3d Cir. 2010).[4]

6        **b.**    **Plaintiff's Claims Undermine the DPCIA's Regime for Monitoring**

7               **and Enforcing Accurate Use of the Uniform Dolphin Safe Standard**

8        Plaintiff's State Law Claims would also "stand as an obstacle" to Congress'

9  comprehensive enforcement scheme under the DPCIA with respect to the Dolphin

10  Safe logo and are therefore conflict preempted.  To allow a private party to pursue

11  claims based on a violation of the DPCIA, ***which intentionally omits a private right***

12  ***of action***, would permit "an obstacle to the accomplishment and execution of the full

13  purposes and objectives of Congress."  *Puente Arizona, supra,* at 1103.  *See e.g.*

14  *Perez v. Nidek Co.*, 711 F.3d 1109, 1119-1120 (9th Cir. 2013).

15        The Secretary has the discretion to enforce the Dolphin Safe rules.  16 U.S.C.

16  §1385(e); 1826(g); 1858-1861.  Exercising that discretion, the Secretary has

17  promulgated specific enforcement regulations.  *See e.g.,* 50 C.F.R. §216.94.

18  Administrative remedies delegated to the Secretary, along with the absence of a

19  private right of action, reflects Congress' intent for ***exclusive enforcement by the***

20  ***Secretary***.  *Fouke  v. Mandel*, 386 F. Supp. 1341, 1358 (D. Md. 1974).

21        Under the DPCIA, the federal government tasked NOAA with establishing a

22  tracking and verification program, *see* Part V.C.2, *supra*, with which Aldi's suppliers

23  must comply.   Plaintiff disputes the efficacy of these tracking requirements, with

24  allegations that "commercial fishermen are incentivized to underreport bycatch," and

25  that "[t]his lack of transparency, combined with the self-policing nature of the

---

[4] Imposing a different, more protective, standard through state law would be conflict
preempted if it stands as an obstacle to a deliberate federal standard.  *Geier v. Am.
Honda Motor Co.*, 529 U.S. 861, 881 (2000) at 881; *see also City of Burbank v.
Lockheed Air Terminal*, 411 U.S. 624, 638-640 (1973).

industry allows major tuna producers and distributors like [Aldi] to reap the benefits of harmful fishing practices[.]" FAC at ¶¶ 64-65.  Plaintiff asserts that Aldi's tuna is not Dolphin Safe under state law because of a purported inability to trace the source of Aldi tuna.  FAC at ¶ 72.  But this is analogous to "state law challenges to the [dolphin safe] certification determination itself," which are conflict preempted by the federal government's enforcement scheme.  *Marantette v. Abbot Laboratories*, 886 F.3d 112, 118 (2nd Cir. 2018).

Plaintiff's proper recourse for her concerns about potential violations of the DPCIA with respect to Aldi's use of its Dolphin Safe logo is to file an administrative complaint with the FTC or NOAA.  Plaintiff cannot circumvent a complex, uniform enforcement framework authorizing administrative remedies.  *See, e.g., Armstrong v. Exceptional Child Center, Inc.*, 135 S.Ct. 1378, 1385 (2015).

## B.   THIS CASE SHOULD BE STAYED UNDER THE DOCTRINE OF PRIMARY JURISDICTION.

Plaintiff's case also should be dismissed (or at least stayed) because the FTC and NOAA, not the courts, are the proper enforcement authorities. These agencies have the sole authority to enforce the DPCIA and the expertise to understand and interpret the complex requirements of the statute and its regulations.  "Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (citation omitted).  The primary jurisdiction doctrine allows courts to stay proceedings or dismiss them without prejudice pending the administrative agency's resolution of an issue within its special competence.  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.2008).

Courts consider four factors in determining whether to apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by

- 20 -

Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 940 (N.D. Cal. 2014. *Syntek Semiconductor Co. v. Microchip Tech.*, 307 10 F.3d 775, 781 (9th Cir. 2002) (amended); accord *Astiana*, 783 F.3d at 760. Applying these factors, numerous courts have stayed or dismissed false advertising cases where enforcement of the underlying statute was specifically delegated to a federal agency. *See, e.g., Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d at 933–35; *Glass v. Glob. Widget, LLC*, 2020 WL 3174688, at *2 (E.D. Cal. June 15, 2020); *Colette v. CV Scis., Inc.*, 2020 WL 2739861, at *1 (C.D. Cal. May 22, 2020); *Tran v. Sioux Honey Ass'n*, 2017 WL 5587276, at *2 (C.D. Cal. Oct. 11, 2017); *Kane v. Chobani*, LLC, 645 F. App'x 593, 594-95 (9th Cir. 2016). Here, Plaintiff has not filed a consumer complaint with the FTC or wrote to NOAA seeking verification of compliance. She should be required to pursue these remedies before seeking relief in court.

## C. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff lacks Article III standing because she fails to allege any injury traceable to Aldi. "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered concrete harm. No concrete harm, no standing." *Transunion LLC v. Ramirez*, 141 S.Ct. 2190, 2200 (2021). Three elements are required to establish Article III standing: 1) Plaintiff must have suffered an injury in fact – "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; 2) the injury must be fairly traceable to the challenged action of the defendant; and 3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

Plaintiff has the burden of establishing a concrete injury in fact sufficient for Article III standing. *Id.* The Ninth Circuit has established that mere "allegations of

*possible* [] injury are not sufficient[]" to confer Article III standing. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (emphasis added).

Here, Plaintiff does not allege that any Aldi tuna Plaintiff purchased came from a vessel that either deployed a net that encircled or that killed or seriously injured any dolphin. The FAC merely alleges that Aldi canned tuna Products were labeled Dolphin Safe, purse seine or longline fishing methods were used to catch some of the canned tuna that Aldi sold, and such federally permitted fishing methods *possibly* can be deployed in ways known to kill or seriously injure dolphins, and thus all tuna Aldi sold is allegedly non-Dolphin Safe, despite the federally authorized Dolphin Safe label. FAC at ¶¶ 44, 47, 48, 52, 53, 60, 76, 85 and 147.

However, no such allegations in Plaintiff's FAC allege any concrete injury to Plaintiff. *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1280 (C.D. Cal. 2016). As referenced at Part VII.A.1., *supra*, there is no plausible allegation of a heightened Dolphin Safe standard or a long-standing, pervasive advertising campaign upon which to base an injury. There is no concrete injury to Plaintiff that arises from the mere speculative *possibility* that dolphins could have been harmed or seriously injured through use of purse seine or longline fishing methods. Plaintiff's general allegations that incidental bycatch results in 300,000 dolphin and whale mortalities each year, that 281 false killer whales were killed in 2009, and that Risso's dolphins, bottlenose dolphins and false killer whales "often" are entangled in fishing gear, *see* FAC ¶¶ 50, 61-62, are measures of the worldwide fishing industry and not even *speculative* criticism that an Aldi supplier caught tuna in a manner resulting in bycatch, much less resulting in serious harm or mortality to a dolphin.

Plaintiff lacks standing to bring this case based on mere allegations of the possibility of dolphins harmed by Aldi's suppliers. Plaintiff's State Law Claims should be dismissed accordingly pursuant to Rule 12(b)(1).

/ / / /

/ / / /

- 22 -

1

2

### D. PLAINTIFF HAS FAILED TO PLAUSIBLY SUPPORT HER GENERAL ALLEGATIONS OF FRAUD UNDER RULE 9(b)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Plaintiff alleges that Aldi misled consumers by falsely labeling tuna it sold as Dolphin Safe.  FAC ¶¶ 4, 9, 10, 32, 60, 80, 85 and 147.  Plaintiff's State Law Claims, however couched, rely on this core factual allegation and thus are subject to the heightened pleading standard under Rule 9(b).  Fed. R. Civ. P. 9; see also *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).  Rule 9(b) requires Plaintiff to plead the "who, what, when, [and] where" of alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Plaintiff's conclusory allegations do not satisfy the general pleading requirements of Rule 8, much less the strictures of Rule 9(b).  For example, Plaintiff makes only conclusory allegations that "commercial fishermen are incentivized to underreport bycatch, which is facilitated by rampant lack of accountability and widespread unreliable reporting on bycatch" and "there are too few unbiased reporters onboard fishing vessels to get an accurate metric of annual bycatch."  FAC at ¶ 64.  These conclusory allegations are unsupported by any actual facts, only an alleged speculative "lack of transparency, combined with the self-policing nature of the [tuna] industry."  FAC at ¶ 65.

18

19

20

21

22

23

Moreover, the FAC does not plead specifically with whom Aldi allegedly engaged in fraudulent or unlawful activity, when it allegedly committed such acts, where such alleged acts took place or why.  Most notably, Plaintiff must plead that the label statements on specific Aldi tuna she purchased are false, and the FAC fails to do so[5].  Plaintiff must also identify the allegedly false statements that she "actually

24

25

26

27

28

[5] In a similar context, the Eighth Circuit affirmed the district court's dismissal of plaintiffs' complaint in *Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025 (8th Cir. 2014).  In *Wallace*, the Eighth Circuit held that plaintiffs lacked Article III standing because "it 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect.'"  *Id.* at 1030.  Here, Plaintiff does not allege that Aldi failed to comply with federal labeling requirements,

1  saw and relied upon in deciding to purchase" Aldi products.  *Brown v. Madison Reed,*

2  *Inc.*, No. 21-CV-01233-WHO, 2021 WL 3861457, at *12 (N.D. Cal. Aug. 30, 2021).

3  The FAC alleges that "Plaintiff relied upon Defendant's 'Dolphin Safe' promises and

4  representations on the Product's labeling, packaging, and advertising."  FAC ¶ 9.

5  But, unlike *Gardner, supra*, there are no plausible allegations about a long-term,

6  pervasive advertising campaign.  Similarly, Plaintiff does not allege visiting Aldi's

7  website, much less relying on representations there (or elsewhere) about Aldi's

8  sustainability practices and membership in the ISSF, STF or ODP.  The FAC fails to

9  meet Rule 9(b)'s heightened pleading standard and should be dismissed with

10  prejudice.  *Brown*, 2021 WL 3861457, at *12.

11      **E.**    **NO REASONABLE CONSUMER WOULD BE MISLED BY**

12            **ALDI'S LABELING ITS TUNA PRODUCTS AS DOLPHIN SAFE**

13      The gravamen of Plaintiff's FAC is that Aldi misled consumers into believing

14  that she was purchasing Dolphin Safe tuna products, when they were not.  To state

15  such a claim, Plaintiff must allege that the allegedly misleading statements were

16  likely to deceive a reasonable consumer.  *See Freeman v. Time, Inc.,* 68 F.3d 285,

17  289 (9th Cir. 1995).  If the alleged misrepresentation would not mislead a reasonable

18  consumer, then the allegation may be dismissed on a motion to dismiss.  *See id.* at

19  289-90; *see also Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

20      Plaintiff relies only on conclusory attacks on the federal regulatory scheme and

21  generalized allegations of possible harm from lawful fishing methods Plaintiff deems

22  undesirable.  Such "[t]hreadbare recitals of the elements of a cause of action,

23  supported by mere conclusory statements, do not suffice."  *Carter v. Oath Holdings,*

24  *Inc.,* 2018 WL 3067985, at *2 (N.D. Cal. June 21, 2018) (quoting *Iqbal*, 556 U.S. at

25  678).

---

28  that ship captains made misrepresentations as to any specific tuna catches, or that any
dolphins were killed or injured with respect to the tuna that Plaintiff bought.

Citing the precise statutory definition permitting use of an alternative Dolphin Safe logo[6], Plaintiff nonetheless alleges that Aldi's Dolphin Safe label is false and deceptive because it is not the official DOC logo, and as a result, Plaintiff alleges that Aldi misled Plaintiff, who allegedly relied on the Dolphin Safe label.  FAC at ¶¶ 26, 29, 33 and 83.

Plaintiff does not allege, nor can she, that a reasonable consumer is likely to be deceived by Aldi's Dolphin Safe labels, which comply with federal law.  *See Truxel v. General Mills Sales, Inc.,* No. 4:16-cv-04957-JSW, Dkt. No. 98, at 6 (N.D. Cal. Aug. 13, 2019) (Order on Motion to Dismiss) (reasonable consumer standard requires probability a significant portion of the public could be misled); *Moore v. Trader Joe's Co.*, 4 F. Supp. 4th 874 (9th Cir. 2021).  For this reason, too, Plaintiffs State Law Claims should be dismissed.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff's FAC should be dismissed in its entirety, with prejudice and without leave to amend.

DATED:  November 28, 2022       PARKS & SOLAR, LLP

By: */s/ Robert J. Parks*
ROBERT J. PARKS
KEITH R. SOLAR
Attorneys for Defendant,
*ALDI Inc.*

---

[6] 16 U.S. Code §1385 permits an alternative Dolphin Safe logo where: (1) no dolphins were killed or seriously injured in the sets or other gear deployments in which the tuna were caught; (2) the label is supported by a tracking and verification program which is comparable in effectiveness to the program established under subsection (f); and (3) the label complies with all applicable FTC labeling, marketing, and advertising laws and regulations, including any guidelines for environmental labeling.

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        I certify that on November 28, 2022, I filed the foregoing NOTICE OF

4   MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED

5   COMPLAINT, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

6   OF DEFENDANT'S MOTION TO DISMISS, REQUEST FOR JUDICIAL NOTICE

7   AND PROPOSED ORDER with the Clerk of the Court for the United States District

8   Court, Central District of California by using the Court's CM/ECF system, which will

9   send notifications of such filing to all counsel of record.

10

11   DATED:  November 28, 2022        PARKS & SOLAR, LLP

12

13                              By:  */s/ Robert J. Parks*  _____

14                                   ROBERT J. PARKS
                                     Attorney for Defendant
15                                   *ALDI Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -